1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    NORTHERN DISTRICT OF CALIFORNIA
10                        San Francisco Division

| | |
|---|---|
| 11   TIMOTHY BOSTWICK, et al., | Case No. 21-cv-02560-LB |
| 12               Plaintiffs, | **ORDER DENYING SUMMARY** |
| 13         v. | **JUDGMENT** |
| 14   SN SERVICING CORPORATION, et al., | Re: ECF No. 95 |
| 15               Defendants. | |

16

17                              **INTRODUCTION**

18        In 2017, the plaintiffs — Timothy Bostwick and Michele Nessier, San Francisco residents who

19  own a second property in Truckee, California — defaulted on a 2013 mortgage refinance loan

20  secured by the property.[1] Defendant Seterus, Inc. (a previous loan servicer) allegedly sent

21  confusing letters to the plaintiffs in December 2018, causing Mr. Bostwick to declare bankruptcy

22  in January 2019 to avoid foreclosure. Defendant SN Servicing (the current loan servicer) allegedly

23  sent a deceptive reinstatement quote to the plaintiffs in December 2020, causing Ms. Nessier to

24  declare bankruptcy later that month to avoid foreclosure. The plaintiffs also sued U.S. Bank (the

25

26

27  _____

[1] Deed of Trust, Ex. 1 to Req. for Jud. Notice – ECF No. 96 at 5–25; Letter from Seterus, Ex. 3 to Loll
28  Decl. – ECF No. 95-1 at 23–30. Citations refer to material in the Electronic Case File (ECF); pinpoint
    citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

beneficiary of the loan). They claim abusive debt-collection practices in violation of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788–1788.33.[2]

The defendants moved for summary judgment on the grounds that the mortgage loan is not a "consumer debt" within the meaning of the Rosenthal Act because it is an investment property used for third-party rentals, and in any case, Seterus's letters were not confusing or misleading.[3] The court denies summary judgment because there are genuine disputes about whether the loan was "primarily for personal, family or household purposes," Cal. Civ. Code § 1788.2(f), and whether the least sophisticated debtor would likely be misled by Seterus's letters.

## STATEMENT

### 1. The Refinance Loan and the Plaintiffs' Use of the Property

In 1999, the plaintiffs purchased their second residential property in Truckee, California. Ms. Nessier declares that it was purchased "as a vacation home for [their] family."[4] Their "intention has always been and remains to be to hold the [p]roperty as a vacation home and eventually to retire there."[5]

In June 2013, the plaintiffs refinanced the mortgage with a $403,350 mortgage loan secured by a first deed of trust on the property.[6] Ms. Nessier declares that "[a]t the time [the plaintiffs] obtained the refinance loan, [they] intended to continue using the [p]roperty as a vacation home."[7]

The loan application said that the property would be an investment property as opposed to a primary or secondary residence.[8] The plaintiffs signed the application under an acknowledgement

---

[2] Fourth Am. Compl. (4AC) – ECF No. 54; Bankr. Pet., Ex. 5 to Req. for Jud. Notice – ECF No. 96 at 50–102; Proposed Combined Plan of Reorganization, Ex. 2 to Req. for Jud. Notice – ECF No. 96 at 40.

[3] Mot. – ECF No. 95; Joinder – ECF No. 99; U.S. Bank & SN Servicing's Reply – ECF No. 106 at 2.

[4] Nessier Decl. – ECF No. 105-3 at 2 (¶ 2).

[5] Id. at 3 (¶ 9).

[6] Loan Appl., Ex. 1 to Simpers Decl. – ECF No. 111 at 4–7; Deed of Trust, Ex. 1 to Req. for Jud. Notice – ECF No. 96 at 5–25.

[7] Nessier Decl. – ECF No. 105-3 at 2 (¶¶ 3, 5).

[8] Loan Appl., Ex. 1 to Simpers Decl. – ECF No. 111 at 4.

United States District Court
Northern District of California

stating that "the property will be occupied as indicated in this application."[9] At the time of the loan application, the plaintiffs also signed a "Schedule of Real Estate Owned" that listed the Truckee property as a rental property to be rented 100% of the time. The rental income was listed as $0.[10] And the deed of trust for the Truckee property included a 1-4 Family Rider that (1) deleted the deed's requirement that the plaintiffs use the Truckee property as their principal residence, (2) required the plaintiffs to obtain rent-loss insurance, and (3) assigned the plaintiffs' leases and rents to the lender in the event of default.[11]

Ms. Nessier declares that she "did not fill out any part of the [loan] application [herself] other than to sign [it]" several months after her phone call with a Bank of America employee. Similarly, she signed the Schedule of Real Estate Owned but did not fill it out.[12]

From 1999 until "approximately mid-2014," the plaintiffs used the Truckee property "almost entirely as a vacation home for [their] family." After that, they began renting the property. According to Ms. Nessier, they rented it "for about half of the year to supplement the costs of owning and maintaining [it]." They had "no choice" but to do so because they had "incurred financial difficulties with [their] business that left [them] with almost no income for several years."[13]

They rented the property "during most of the years 2015 and 2016."[14] (Ms. Nessier testified that they rented the property for the entirety of 2016.[15] In their tax returns for these two years, the plaintiffs claimed the property as rental real estate with 365 "fair rental days" and zero "personal use days."[16]) In 2017, they personally used the property for "approximately one third of the year." In 2018 and 2019, they again rented the property to tenants.[17] (Ms. Nessier testified that in 2018,

---

[9] *Id.* at 6.

[10] Schedule of Real Estate Owned, Ex. 1 to Loll Decl. – ECF No. 95-1 at 6.

[11] Deed of Trust, Ex. 1 to Req. for Jud. Notice – ECF No. 96 at 20.

[12] Nessier Decl. – ECF No. 105-3 at 2 (¶ 4).

[13] *Id.* (¶ 6).

[14] *Id.* at 2–3 (¶ 7).

[15] Nessier Dep., Ex. 2 to Hensley Decl. – ECF No. 95-4 at 87 (p. 41:7–10).

[16] Tax Returns, Ex. 1 to Hensley Decl. – ECF No. 95-4 at 5, 16.

[17] Nessier Decl. – ECF No. 105-3 at 2–3 (¶ 7).

United States District Court
Northern District of California

they rented the property for the entire year.[18] And the plaintiffs' tax returns indicate 365 "fair rental days" and zero "personal use days" for 2018 and 2019.[19]) In 2020, they personally used the property for all but sixty-four days of the year, and in 2021 and 2022, they rented the property for sixty percent of the year.[20] (For 2021, their tax returns indicate 219 rental days and zero personal use days.[21]) Overall, in their twenty-three years of owning the property, the plaintiffs have personally used it "approximately [seventy-five percent] of the time."[22]

According to Ms. Nessier, the plaintiffs have never "even come close to covering [their] costs by renting out the [p]roperty."[23] In his bankruptcy petition, Mr. Bostwick claimed $25,200 in rental income in 2017 and $22,800 in 2018.[24] Between September 2020 and March 2022, the plaintiffs received about $95,000 by renting the property through Airbnb.[25] And in an April 9, 2021, bankruptcy court filing, Ms. Nessier listed gross monthly rental income of $4,750 and net monthly income of $1,143.37.[26]

In the plaintiffs' bankruptcy proceedings, they characterized the Truckee property. In her Chapter 11 Plan of Reorganization and Disclosure Statement, filed on April 9, 2021, Ms. Nessier attached an "Investment Property Analysis" that listed the Truckee property.[27] In her monthly operating report for December 2020, she listed the San Francisco property as a "residential" property and the Truckee property as a "rental or commercial" property.[28] And in Mr. Bostwick's bankruptcy petition, he claimed the homestead exemption for the San Francisco property but not

---

[18] Nessier Dep., Ex. 2 to Hensley Decl. – ECF No. 95-4 at 87 (p. 41:7–10).

[19] Tax Returns, Ex. 1 to Hensley Decl. – ECF No. 95-4 at 23, 27.

[20] Nessier Decl. – ECF No. 105-3 at 2–3 (¶ 7).

[21] Tax Returns, Ex. 1 to Hensley Decl. – ECF No. 95-4 at 55.

[22] Nessier Decl. – ECF No. 105-3 at 3 (¶ 7).

[23] Id. (¶ 8).

[24] Bankr. Pet., Ex. 5 to Req. for Jud. Notice – ECF No. 96 at 86.

[25] Airbnb Records, Ex. 1 to Korosi Decl. – ECF No. 95-2 at 12–13.

[26] Proposed Combined Plan of Reorganization, Ex. 2 to Req. for Jud. Notice – ECF No. 96 at 44.

[27] Id.

[28] Monthly Operating Report, Ex. 7 to Req. for Jud. Notice – ECF No. 96 at 114.

United States District Court
Northern District of California

1    the Truckee property (meaning, he claimed that the San Francisco property was his principal

2    residence).[29] Cal. Civ. Proc. Code § 704.710(c).

3

4    **2. The Plaintiffs' Default and Interactions with the Defendants**

5        Seterus became the loan servicer in May 2016.[30] As of July 24, 2017, the plaintiffs had

6    defaulted on the loan.[31]

7        In a letter dated December 12, 2018, Seterus (1) notified the plaintiffs that effective January 7,

8    2019, SN Servicing would be the new loan servicer and that payments due on or after that date

9    must be sent to SN Servicing at an identified address and (2) said that the documentation for any

10    pending loss-mitigation requests would be forwarded to SN Servicing, SN Servicing would notify

11    the plaintiffs of its decision, and the servicing transfer "may extend the time needed for a final

12    decision."[32] Then, in a letter dated December 17, 2018, Seterus (1) told the plaintiffs that it had

13    denied their loss-mitigation request and they had thirty days to appeal and (2) told them that

14    "monthly payments must be directed to Seterus," Seterus "may continue with collection efforts"

15    given that the loan was in default, and the plaintiffs may have certain options available "to avoid

16    foreclosure."[33]

17        Mr. Bostwick testified that these letters caused him confusion: the plaintiffs had only "a few

18    days before [the property was] going to be sold," the servicer change was happening "in the

19    middle of a foreclosure" and "in the middle of the holiday season," and "[i]t was not clear to [him]

20    at all who[] [he] should be speaking with about a refinance."[34] Mr. Bostwick also testified that the

21

22

23    ───────────────

[29] Bankr. Pet., Ex. 5 to Req. for Jud. Notice – ECF No. 96 at 66.

24    [30] Transfer of Servicing Notice, Ex. 2 to Loll Decl. – ECF No. 95-1 at 12–13.

25    [31] Letter from Seterus, Ex. 3 to Loll Decl. – ECF No. 95-1 at 23–30; Notices of Trustee's Sale, Ex. 1 to
     Hensley Decl. – ECF No. 95-4 at 68–73 (two notices of public sale due to default, dated December 3,
26    2018, and November 16, 2020).

27    [32] Notice of Servicing Transfer, Ex. 9 to Loll Decl. – ECF No. 95-1 at 59–60.

     [33] Letter from Seterus, Ex. 10 to Loll Decl. – ECF No. 95-1 at 62–65.

28    [34] Bostwick Dep., Ex. 1 to Shapero Decl. – ECF No. 105-1 at 6–7 (pp. 89:16–90:14).

United States District Court
Northern District of California

1    first letter "ma[de] a commitment" that SN Servicing would notify the plaintiffs of its "decision

2    about the [refinance]," but he does not recall receiving any notification from SN Servicing.[35]

3         Ms. Nessier testified that she never read the two letters or had "interaction with Seterus or SN

4    Servicing" because Mr. Bostwick "took care of all that interaction."[36] But she had an

5    understanding of the letters based on her "ongoing dialogue" with Mr. Bostwick "about the

6    situation." To Ms. Nessier, "[t]he situation was very confusing."[37]

7         According to Mr. Bostwick, the two letters also left the plaintiffs "in limbo without any

8    options" to keep the Truckee property — except to declare bankruptcy.[38] Mr. Bostwick filed for

9    bankruptcy in January 2019 to stop the foreclosure.[39] The bankruptcy "devastated [the plaintiffs']

10   financial position" because they "have been unable to raise capital for [their] new company,"

11   unable to obtain Small Business Administration loans, and unable to refinance their "personal

12   property" when interest rates were low.[40]

13

14   **3.   Relevant Procedural History**

15        The operative complaint names three defendants (Seterus, SN Servicing, and U.S. Bank) and

16   has one claim: unfair debt-collection practices in violation of the Rosenthal Act, Cal. Civ.

17   Code §§ 1788–1788.33.[41] Specifically, the operative complaint claims that the defendants violated

18   certain provisions of the federal Fair Debt Collection Practices Act (which are incorporated into

19   the Rosenthal Act) in connection with their debt collection: 15 U.S.C. §§ 1692d (harassment,

20

21

22

23   ───────────────
     [35] *Id.* at 7 (pp. 91:12–92:15).

24   [36] Nessier Dep., Ex. 2 to Hensley Decl. – ECF No. 95-4 at 83–84 (pp. 24:18–24, 26:1–10).

     [37] *Id.* at 84 (p. 26:11–25).

25
     [38] Bostwick Dep., Ex. 1 to Shapero Decl. – ECF No. 105-1 at 8 (pp. 102:3–104:2).

26   [39] Bankr. Pet., Ex. 5 to Req. for Jud. Notice – ECF No. 96 at 50; Nessier Dep., Ex. 2 to Hensley Decl.
     – ECF No. 95-4 at 87 (p. 41:17–19).

27   [40] Bostwick Dep., Ex. 1 to Shapero Decl. – ECF No. 105-1 at 8 (p. 104:3–16).

28   [41] 4AC – ECF No. 54.

United States District Court
Northern District of California

oppression, or abuse), 1692e (false, deceptive, or misleading representations or means), and 1692f (unfair or unconscionable means).[42]

The court has diversity jurisdiction under 28 U.S.C. § 1332.[43] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[44] The court held a hearing on December 22, 2022.

## STANDARD OF REVIEW

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other

---

[42] *Id.* at 34–35 (¶ 43).

[43] Notice of Removal – ECF No. 1 at 2–3 (¶¶ 7–8).

[44] Consents – ECF Nos. 11, 12, 14, 19.

United States District Court
Northern District of California

1    than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

2        If the moving party meets its initial burden, then the burden shifts to the nonmoving party to

3    produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving

4    party carries its initial burden, the adverse party may not rest upon the mere allegations or denials

5    of the adverse party's pleading, but must provide affidavits or other sources of evidence that set

6    forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at

7    1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of

8    material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

9        In ruling on a motion for summary judgment, the court does not make credibility

10   determinations or weigh conflicting evidence. Instead, it views the evidence in the light most

11   favorable to the non-moving party and draws all factual inferences in the non-moving party's

12   favor. *E.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986);

13   *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

14

15                                            **ANALYSIS**

16   **1.   Request for Judicial Notice and Evidentiary Objections**

17       The court takes judicial notice of the public records attached to Seterus's unopposed request

18   for judicial notice but not disputed facts in them.[45] *Lee v. City of Los Angeles*, 250 F.3d 668, 689

19   (9th Cir. 2001) (public records generally); *Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C

20   08-3818 PJH, 2008 WL 4938162, at *2–3 (N.D. Cal. Nov. 17, 2008) (recorded deeds of trust);

21   *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015)

22   (government websites).

23       Citing the hearsay exception for business records, the plaintiffs raise the following evidentiary

24   objection: "the entirety of the Declaration of AJ Loll is inadmissible hearsay as it relies entirely on

25   records of Seterus which are not authenticated by Mr. Loll," and Mr. Loll "cannot[] attest to the

26   record keeping activity of Seterus, as [he] does not appear to ever have been an employee of

27

28   ───────────────
     [45] Req. for Jud. Notice & Exs. – ECF No. 96.

Seterus."[46] Seterus interprets this argument as not "levy[ing] any challenge to the [exhibits'] authenticity."[47] Mr. Loll declares that he is "an employee of . . . Mr. Cooper," which is "the successor loan servicer by merger with defendant Seterus."[48] He further declares:

> [Mr. Cooper] relies on the business records of Seterus, Inc. in the servicing of loans that were previously serviced by Seterus, Inc. The information set forth in this declaration was assembled with the assistance of counsel, based on a review of Seterus' records on which [Mr. Cooper] relies in servicing loans that were previously serviced by Seterus, Inc., and from personnel in the appropriate offices and departments of the aforesaid entities. The matters stated herein are true and correct to the best of my knowledge and belief, based upon records and information available at this time.[49]

The objection is that the exhibits are inadmissible hearsay because they do not qualify for the business-records exception due to Mr. Loll's allegedly not being a "custodian or [other] qualified witness" within the meaning of Federal Rule of Evidence 803(6)(D). But Mr. Loll is a qualified witness under that rule. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system.").

Seterus argues that the plaintiffs' representations in bankruptcy court (that the Truckee property is a rental property and the San Francisco property is their primary residence) are "a basis for judicial estoppel."[50] Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). It applies only when the party "succeeded in persuading a court to accept that party's earlier position." *Id.* at 782 (cleaned up). Seterus has not shown that the bankruptcy court accepted the plaintiffs' representations. In any case, the position that the Truckee property is (for now) a rental property is

---

[46] Opp'n – ECF No. 105 at 6.

[47] Reply – ECF No. 107 at 11.

[48] Loll Decl. – ECF No. 95-1 at 2 (¶ 2).

[49] *Id.* (¶ 3).

[50] Mot. – ECF No. 95 at 17.

1    not clearly inconsistent with the position that the property is primarily for personal, household, or

2    family purposes, because (as explained below) the plaintiffs intend to retire to the property.

3        In its reply brief, Seterus also argues that the plaintiffs "are judicially estopped from relying on

4    any evidence concerning the use of the [Truckee] [p]roperty, after loan origination, to establish the

5    character of the debt," because of positions the plaintiffs took in opposition to an earlier motion to

6    dismiss.[51] The court "need not consider arguments raised for the first time in a reply brief."

7    *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). In any event, the court can decide the

8    motion without reference to the evidence about how the property has been used after loan

9    origination.

10

11   **2.   Whether There are Genuine Disputes of Material Fact**

12       **2.1   Whether the Refinance Loan is a "Consumer Debt" Under the Rosenthal Act**

13       The defendants contend that because the 2013 refinance loan was for a rental property, it does

14   not qualify as a "consumer debt" under the Rosenthal Act because "it was not incurred 'primarily

15   for personal, family, or household purposes.'"[52]

16       The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or

17   deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in

18   entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). Under the Act, consumer debts

19   are those obtained "primarily for personal, family, or household purposes." *Id.* § 1788.2(e)–(f).

20       The issue here is when a mortgage loan for a second residence is a consumer debt. Mortgage

21   loans generally can be consumer debts. *Castillo v. Nationstar Mortg., LLC*, No. 15-cv-01743-BLF,

22   2016 WL 6873526, at *5 (N.D. Cal. Nov. 22, 2016). But whether a mortgage loan for a second

23   residence is a consumer debt goes back to whether the loan was for "a 'personal, family, or

24   household purpose.'" *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 297 (2018) (quoting §

25   1788.2(e)). There is authority for the proposition that a loan for a rental property might not

26

27   ---
     [51] Reply – ECF No. 107 at 13.

28   [52] Mot. – ECF No. 95 at 12–17; Joinder – ECF No. 99 at 3–4.

United States District Court
Northern District of California

qualify. *Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, No. 18-cv-2073-PA, 2018 WL 4297480, at *1–2 (C.D. Cal. Sept 7, 2018); *see Norton v. LVNV Funding, Inc.*, 396 F. Supp. 3d 901, 911 (N.D. Cal. 2019) (analyzing *Sayeed*, 2018 WL 4297480, at *1–2).

In resolving the issue, decisions interpreting the federal Fair Debt Collection Practices Act are useful because that statute also defines "debt" in terms of whether the relevant transaction was "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Also, courts analyze claims under the Rosenthal Act and the federal Act "identically." *Cutler ex rel. Jay v. Sallie Mae, Inc.*, No. EDCV-13-2142-MWF (DTBx), 2014 WL 7745878, at *2 (C.D. Cal. Sept. 9, 2014).

To determine whether a loan was primarily for personal, family, or household purposes under the federal Act, courts "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended." *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (cleaned up). Thus, "[c]ourts determine the debtor's purpose as of the time the debt was incurred." *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*, 859 F. App'x 102, 104 (9th Cir. 2021) (cleaned up). In this analysis, "neither the lender's motives nor the fashion in which the loan [was] memorialized are dispositive." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (cleaned up); *Bloom*, 972 F.2d at 1068–69.

Courts have held that under the federal Act, "a mortgage loan on a rental property . . . is not a 'debt.'" *Aniel v. TD Serv. Co.*, No. C 10-05323 WHA, 2011 WL 109550, at *4 (N.D. Cal. Jan. 13, 2011) (holding that the subject property was not "used 'primarily' for purposes related to [the] plaintiffs' family, household, or personal needs"); *Bloom*, 972 F.2d at 1068–69 (a "commercial" or "business" loan does not qualify); *Herschelman v. New Century Mortg. Corp.*, No. CV 09-00461 DAE-KSC, 2010 WL 4448224, at *5 (D. Haw. Oct. 29, 2010) ("commercial rental property" does not qualify).

The Ninth Circuit's decision in *Glawe*, though, changes the analysis for rental properties that plaintiffs intend to move into when they retire. 859 F. App'x 102. The plaintiffs there owned two rental properties and (as the Ninth Circuit emphasized) "were eventually going to move into *one of them*" as a retirement home. *Id.* at 103–04. The plaintiffs sued their homeowners' association and its law firm, in connection with only one of the rental properties, for unfair debt-collection

practices under the federal Act. *Id.* The district court granted summary judgment against the plaintiffs, holding that "an obligation associated with a rental property cannot be primarily consumer in nature." *Id.* The Ninth Circuit reversed, reasoning that the district court did not "make a factual determination of the true purpose of the [plaintiffs'] acquisition of" their two rental properties. *Id.* at 104. Thus, *Glawe* stands for the proposition that if a plaintiff owns a rental property but intends to move in after retirement, there can be a triable issue of fact about whether the debt is "primarily for personal, family, or household purposes." *See id.* at 103–04.

Here, there is at least a factual dispute over whether, when the loan was originated in mid-2013, it was primarily for personal, family, or household purposes. It is undisputed that the plaintiffs used the Truckee property purely as a vacation home from 1999 until mid-2014, and Ms. Nessier declares that they have always intended to retire to the property. Although the loan origination documents described the property as an "investment" or "rental" property and required the plaintiffs to maintain rent-loss insurance, there is still a factual dispute, especially in light of *Glawe*. The court thus denies summary judgment on the "consumer debt" issue.

### 2.2    Whether the Defendants Violated the Rosenthal Act

The next issue is whether there is a genuine dispute that Seterus violated the Rosenthal Act.

To state a claim for a violation of the Rosenthal Act, a plaintiff must allege that (i) the plaintiff is a "debtor," (ii) the debt at issue is a "consumer debt," (iii) the defendant is a "debt collector," and (iv) the defendant violated a provision of the Act. Cal. Civ. Code § 1788.10; *Ansari v. Elec. Document Processing Inc.*, No. 5:12-cv-01245-LHK, 2013 WL 4647621, at *11 (N.D. Cal. Aug. 29, 2013). The Rosenthal Act also incorporates sections 1692b through 1692j of the federal Act and requires that every debt collector abide by those provisions. Cal. Civ. Code § 1788.17; *Fitzgerald v. Bosco Credit, LLC*, No. 16-cv-01473-MEJ, 2017 WL 3602482, at *8 (N.D. Cal. Aug. 21, 2017).

At issue here is the fourth element only. The plaintiffs allege violations of the federal Act, including 15 U.S.C. §§ 1692d (prohibiting "conduct the natural consequence of which is to harass, oppress, or abuse any person" in connection with the collection of a debt), 1692e (prohibiting the use of "false, deceptive, or misleading representation" in connection with the collection of a debt),

and 1692f (prohibiting "unfair or unconscionable" means to collect a debt).[53] These provisions give specific examples of conduct that violate the statutes. 15 U.S.C. §§ 1692d, 1692e, 1692f.

To determine whether conduct violates §§ 1692d, 1692e, or 1692f, the court must objectively analyze whether the least sophisticated debtor would likely be misled by the communication at issue. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). "The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (cleaned up). "At the same time, the standard . . . presumes a basic level of understanding and willingness to read with care." *Id.* at 1062 (cleaned up). Also, "a false or misleading statement is not actionable . . . unless it is material." *Donohue*, 592 F.3d at 1033. In determining materiality, a court should look for "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 1034.

Again, there is at least a factual dispute here. Seterus sent two letters in December 2018: a statutorily required notice of a loan servicer change and then a denial of a loss-mitigation request. The plaintiffs testified that the letters, sent just days before foreclosure was to occur, left them "in limbo" and unable to resolve their default because they did not know which servicer — Seterus or SN Servicing — would handle their refinance request.[54] Whereas the first letter said that monthly payments should be sent to SN Servicing after a certain date, the second letter said that "monthly payments must be directed to Seterus" and Seterus "may continue with collection efforts." Whereas the first letter told the plaintiffs that any documentation for a pending loss-mitigation request would be forwarded to SN Servicing, the second letter was a denial by Seterus of the plaintiff's loss-mitigation request, with the option to appeal (to Seterus) within thirty days.[55] There

---

[53] 4AC – ECF No. 54 at 34–35 (¶ 43).

[54] Bostwick Dep., Ex. 1 to Shapero Decl. – ECF No. 105-1 at 6–7 (pp. 89:16–90:14); Nessier Dep., Ex. 2 to Hensley Decl. – ECF No. 95-4 at 83–84 (pp. 24:18–24, 26:1–25).

[55] Notice of Servicing Transfer, Ex. 9 to Loll Decl. – ECF No. 95-1 at 59–60; Letter from Seterus, Ex. 10 to Loll Decl. – ECF No. 95-1 at 62–65.

is at least a dispute over whether the least sophisticated debtor would likely be misled. *Donohue*, 592 F.3d at 1034 ("statements that may frustrate a consumer's ability to intelligently choose his or her response" are misleading); *Terran v. Kaplan*, 109 F.3d 1428, 1432–34 (9th Cir. 1997) (where a letter "contradicts" or "overshadows" a prior statutorily required notice, the least-sophisticated-debtor standard is met).

Seterus argues that certain deposition admissions by the plaintiffs are dispositive: Ms. Nessier testified that she didn't read the letters, and Mr. Bostwick testified that he "[does not] have a problem with the[] letter[s]."[56] But Ms. Nessier had an understanding of the letters based on discussions with Mr. Bostwick, and Mr. Bostwick followed his statement up with "let me rephrase" and an explanation of his confusion.[57]

Seterus also asserts that the two letters were not "attempt[s] to collect a debt" because Seterus was not legally required to offer loss mitigation or modify the mortgage.[58] But both letters had disclaimers in capital letters that they were communications from debt collectors to collect a debt.[59]

Finally, in its reply brief, Seterus raised another argument for summary judgment: that the plaintiffs "failed to produce any evidence of damages."[60] The opening motion has a subheading in the fact section titled "Plaintiffs' Alleged Damages," but does not follow that section up with any legal argument.[61] The plaintiffs inferred an argument and responded to it in their opposition.[62] Still, the court "need not consider arguments raised for the first time in a reply brief." *Zamani*, 491 F.3d at 997. In any case, at least statutory damages are available. Cal. Civ. Code § 1788.30(b); *Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1180 (S.D. Cal. 2010) (statutory

---

[56] Mot. – ECF No. 95 at 18, 21.

[57] Nessier Dep., Ex. 2 to Hensley Decl. – ECF No. 95-4 at 84 (p. 26:11–25); Bostwick Dep., Ex. 1 to Shapero Decl. – ECF No. 105-1 at 6–7 (pp. 86:21–90:14).

[58] Mot. – ECF No. 95 at 19.

[59] Notice of Servicing Transfer, Ex. 9 to Loll. Decl. – ECF No. 95-1 at 59; Letter from Seterus, Ex. 10 to Loll Decl. – ECF No. 95-1 at 62.

[60] Reply – ECF No. 107 at 17.

[61] Mot. – ECF No. 95 at 10–11.

[62] Opp'n – ECF No. 105 at 7–8.

United States District Court
Northern District of California

damages of $1,000 per plaintiff are available under the Rosenthal Act).

## CONCLUSION

The court denies summary judgment. This resolves ECF No. 95.

**IT IS SO ORDERED.**

Dated: January 5, 2023

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California