Timothy M. Ryan, Bar No. 178059
Andrew J. Mase, Bar No. 300680
Michael W. Stoltzman Jr., Bar No. 263423
THE RYAN FIRM
A Professional Corporation
2603 Main Street, Suite 1225
Irvine, CA 92614
Telephone (949) 263-1800; Fax (949) 872-2211

Attorneys for Defendant Seterus, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>SETERUS, INC., a business entity; US BANK, N.A., a business entity; SN SERVICING CORP, a business entity; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 3:21-cv-02560-LB<br>Date Action Filed: April 8, 2021<br><br>Assigned for All Purposes to<br>Hon. Laurel Beeler<br>Courtroom B<br><br>**DEFENDANT SETERUS, INC.'S SEPARATE [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial Date:    December 18, 2023. |

# FINDINGS OF FACT

- At certain times, Defendant Seterus also serviced a loan that was secured by the real property located at 340 Dorantes Avenue, San Francisco, CA 94116 (the "San Francisco Property").
- In 1999, Plaintiffs purchased the property located at 14049 Skislope Way, Truckee, California 96161 (the "Truckee Property").
- On April 29, 2013, Plaintiffs signed and delivered a "Borrower's Certification and Authorization" to Bank of America, NA ("BANA"). Therein, Plaintiffs certified that all information being submitted to BANA in connection with their effort to obtain a refinance loan, including but not limited to, information "on the purpose of the loan," was "true and complete." Plaintiffs further certified that they "made no misrepresentations in the loan application or other documents."
- On April 29, 2013, Plaintiffs signed and delivered a "Schedule of Real Estate Owned" to BANA. Therein, Plaintiffs represented that the Truckee Property was a "Rental" property and was not "OO" (i.e., Owner-Occupied). Plaintiffs further certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."
- As of April 30, 2013, Plaintiff Bostwick's credit score was 666 and Plaintiff Nessier's credit score was 594.
- On June 20, 2013, Plaintiffs signed and delivered a "Uniform Residential Loan Application" to BANA. Therein, Plaintiffs represented that the Truckee Property was an "Investment Property" and not their "Primary Residence" or a "Secondary Residence." Plaintiffs further acknowledged and agreed that: (1) "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability . . . and/or criminal penalties, including, but not limited to, fine or imprisonment or both . . . ."; (2) "the property will be occupied as indicated in this application"; (3) "the Lender and its agents,

2

brokers, insurers, servicers, successors, and assigns may continually rely on the information contained in the application . . . ."; and (4) "I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the [facts provided therein] under the provisions of Title 18, United States Code, Section 1001, et seq."

- On June 20, 2013, Plaintiffs signed and delivered a "Schedule of Real Estate Owned" to BANA. Therein, Plaintiffs represented that the Truckee Property was a "Rental" property and used as such "100%" of the time. Plaintiffs further certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."

- On June 20, 2013, Plaintiffs signed and delivered a "Statement of Facts" to BANA. Therein, they admitted that the Truckee Property is occupied by a "Lessee" and was not occupied by Plaintiffs.

- At the time Plaintiffs obtained the subject loan, they did not do so primarily for personal, family, or household purposes—particularly since the Truckee Property was an "investment" or "rental" property.

- In 2014, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $24,500.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $9,723.00 for renting the Truckee Property for that year.

- In 2015, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

- In 2016, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

- On or about December 14, 2016, Plaintiffs signed and delivered a loan modification application to Defendant Seterus. Therein, Plaintiffs admitted that: (1) the Truckee Property is a "rental property"; and (2) the Truckee Property is "Occupied by a tenant as their principal residence," with a lease term of August 1, 2016, through June 30, 2017. As part of this application, Plaintiffs executed a "Rental Property Certification" wherein they certified "under penalty of perjury" that: (1) they "intend to rent the [Truckee Property] to a tenant or tenants for at least five years following the effective date of [any] mortgage modification"; (2) the Truckee Property is "not [their] secondary residence and [they do] not intend to use the [Truckee Property] as a secondary residence for at least five years following the effective date of [any] mortgage modification" (with the term "secondary residence" being defined as a "second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal, or other basis"). As part of this application, Plaintiffs also signed a "Borrower and Co-Borrower Acknowledgment and Agreement" wherein they certified that: (1) all information in the loan modification application "is truthful"; (2) they understood and acknowledged that "knowingly submitting false information may violate Federal and other applicable law"; (3) they understood that "if it is determined that any of my statements or any information" is "materially false" then Seterus, the United States, or their agents may seeks "remedies available at law and in equity" against Plaintiffs; and (4) "under penalty of perjury . . . all statements" in the modification are "true and correct." The application also contained a section titled "Notice of Borrowers," which provides that, "Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the [loan modification application] are under penalty of perjury. Any misstatement of material fact made in completion of these documents including but not limited to misstatement regarding your occupancy of your property . . . will subject you to potential criminal investigation and prosecution for the following crimes: perjury,

Separate [Proposed] Findings of Fact and Conclusions of Law

false statements, mail fraud, and wire fraud . . . .  Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.  By signing this document you certify, represent and agree that 'Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the [loan modification program], including the documents and information regarding my eligibility for the program, are true and correct."

- The last payment that Plaintiffs made on the was in April 2017.  Thereafter, Plaintiffs made no payment on the Loan, at least until the time servicing of the Loan was transferred to Defendant SN Servicing on or about January 7, 2019.

- On May 3, 2017, Defendant Seterus sent Plaintiffs a letter, explaining that there may be loss mitigation programs available to Plaintiffs to help them avoid foreclosure, including reinstating the loan, a repayment plan, a forbearance plan, a loan modification, a short sale, and a mortgage release, and inviting Plaintiffs to contact Defendant Seterus to get additional information about these potential options.

- On July 24, 2017, Defendant Seterus sent Plaintiffs a letter, offering them a trial loan modification, which would require them to submit 3 monthly payments of $2,362.03 and, if they made those payments and otherwise complied with the terms of the trial loan modification plan, the Loan would be permanently modified.  To accept the trial loan modification, Plaintiffs were required to submit the first payment by August 7, 2017.

- Plaintiffs never made the trial loan modification payment by August 7, 2017, or any time thereafter.  As a result, on August 9, 2017, Defendant Seterus sent Plaintiffs a letter, recounting the trial loan modification offer and Plaintiffs' failure to make the first required trial loan modification payment, as well as Plaintiffs' related failure to contact Defendant Seterus to indicate an intent to accept the trial loan modification.  Despite Plaintiffs' failure, Defendant Seterus offered to re-consider Plaintiffs for another trial loan modification if they submitted a monthly payment of $2,362.03 before September 30, 2017.

- As of September 11, 2017, Defendant Seterus had still not received any trial loan modification payment from Plaintiffs. As a result, on September 11, 2017, Defendant Seterus sent Plaintiffs a letter to follow-up on the trial loan modification offer, explaining that it had not received the first trial loan modification payment, and reminding Plaintiffs to make that payment before September 30, 2017, or they would no longer be eligible for the trial loan modification. This letter also explained other options that may be available to Plaintiffs to help them avoid foreclosure.

- Plaintiffs never made the trial loan modification payment by September 30, 2017, or any time thereafter. As a result, on October 6, 2017, Defendant Seterus sent Plaintiffs a letter, explaining that they did not qualify for a loan modification since they had failed to make the payments required by the trial loan modification.

- In addition to the aforementioned loan modification, Defendant Seterus also considered Plaintiffs for a forbearance and another loan modification program. However, Plaintiffs were deemed ineligible for each of these additional loss mitigation programs. Thus, on October 10, 2017, Defendant Seterus sent Plaintiffs a letter, explaining that they "could not be approved" for either such program.

- On October 23, 2017, Defendant Seterus sent Plaintiffs a letter, offering them another trial loan modification, which would require them to submit 3 monthly payments of $2,417.51 and, if they made those payments and otherwise complied with the terms of the trial loan modification plan, the Loan would be permanently modified. To accept the trial loan modification, Plaintiffs were required to submit the first payment by December 31, 2017.

- In 2017, Plaintiffs rented the Truckee Property for at least six months of the year "as a short term rental."

- In 2018, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,393.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $42,972.00 for renting the Truckee Property for that year.

Separate [Proposed] Findings of Fact and Conclusions of Law

- On or around January 16, 2018, third party Bergstrom Law, Ltd. (the "Bergstrom") recorded a Notice of Default against the San Francisco Property due to Plaintiffs' default on the loan secured by the San Francisco Property.
- On November 9, 2018, Plaintiffs called Defendant Seterus, and expressed an interest in being reviewed another time for a loan modification. During this call, Plaintiffs were informed of the November 26, 2018 trustee's sale.
- On November 14, 2018, Plaintiffs called Defendant Seterus, and expressed an interest in being reviewed another time for a loan modification. During this call, Plaintiffs were instructed how to submit a loan modification application to Defendant Seterus and were reminded of the November 26, 2018 trustee's sale.
- On November 23, 2018, Plaintiff Bostwick called Seterus on 3 different occasions and inquired into the status of his request for a loan modification and to see if a trustee's sale of the Truckee Property had already occurred. Seterus informed Plaintiff Bostwick that no sale had occurred or if it could be postponed. Defendant Seterus informed him that it had not occurred and had not been postponed and was scheduled to occur on November 26, 2018.
- Subsequently, on November 23, 2018, the November 26, 2018 trustee's sale of the Subject Property was postponed to January 15, 2019.
- On November 23, 2018, Plaintiff Bostwick emailed Kerrie Racicot-Baitx (the property manager for the Truckee Property), and expressed his belief that the "foreclosure process is officially on hold until January 19" and that it is "highly unlikely" any foreclosure occurs, even after "January 19."
- As of November 28, 2018, Plaintiff Bostwick's credit score was 588 and Plaintiff Nessier's credit score was 595.
- Plaintiffs were ultimately denied a loan modification. As a result on November 28, 2018, Defendant Seterus sent Plaintiffs a letter, explaining that Plaintiffs "could not be approved" for a loan modification and denying their modification request.

/ / /

- On or around December 7, 2018, Bergstrom recorded a Notice of Trustee's Sale against the San Francisco Property due to Plaintiffs' default on the loan secured by the San Francisco Property.  The Notice of Trustee's Sale scheduled a trustee's sale to occur on January 9, 2019.
- On or about December 12, 2018, Defendant Seterus sent Plaintiffs a letter titled "Notice of Servicing Transfer," explaining that: (1) the "servicing of [the Loan] is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change"; (2) "We are now collecting your payments and will stop accepting payments received from you on January 7, 2019"; (3) SN Servicing Corporation will collect your payments going forward. Your new servicer will start accepting payments received from you on January 7, 2019. Send all payments due on or after January 7, 2019 to SN Servicing Corporation" and stated the address for Defendant SN Servicing; (4) "If you have any questions for either your present servicer, Seterus, or your new servicer SN Servicing Corporation, about your mortgage loan or this transfer, please contact them," and providing the phone number for Seterus and SN Servicing; (5) "Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you"; (6) "If you are currently participating in or being considered for a loss mitigation solution (including a modification program, forbearance agreement, short sale, refinance, or deed-in-lieu of foreclosure), we will forward your documentation to your new servicer"; (7) "As of the effective date of the transfer of the loan servicing, you should send your payments to your new servicer (e.g., trial period plan payments) until such time as the new servicer provides you with additional direction. Your new servicer should notify you of its decision regarding qualification."

/ / /

- Until this litigation was filed, Plaintiff Nessier never saw or read the December 12, 2018 letter from Defendant Seterus. The only understanding she had from this letter came from Plaintiff Bostwick.
- Plaintiff Bostwick "couldn't say one way or the other" whether he ever received the December 12, 2018 letter from Defendant Seterus.
- Plaintiff Bostwick does not "have a problem" with the December 12, 2018 letter from Defendant Seterus.
- Plaintiff Bostwick understood that: (1) "If you are currently participating in or being considered for a loss mitigation solution (including a modification program, forbearance agreement, short sale, refinance, or deed-in-lieu of foreclosure), we will forward your documentation to your new servicer"; and (2) "As of the effective date of the transfer of the loan servicing, you should send your payments to your new servicer (e.g., trial period plan payments) until such time as the new servicer provides you with additional direction. Your new servicer should notify you of its decision regarding qualification."
- On or about December 17, 2018, Defendant Seterus sent Plaintiffs a letter, explaining that: (1) at this time, Plaintiffs "could not be approved" for a "Fannie Mae Non Delegated Modification" because Seterus "could not calculate, within program guidelines, a post-modification principal and interest payment that was lower than [Plaintiffs'] current principal and interest payment"; (2) because Plaintiffs' loan was in default at this time, Seterus "may continue with collection efforts"; (3) "[A]ll inquiries and monthly payments must be directed to Seterus"; (4) Plaintiffs have may have "other options to avoid foreclosure" and that they should contact Seterus if they can provide additional documentation to support their request for help or they would like information about other alternatives to foreclosure"; (5) if Plaintiffs believed their request for assistance has been "wrongly denied," they may "appeal this decision" by sending specified documents to Seterus within 30 days; and (6) Plaintiffs may be eligible for other foreclosure-avoidance options,

such as a Short Sale or Mortgage Release, and invited Plaintiffs to submit additional documents to be evaluated for any of these options.

- Until this litigation was filed, Plaintiff Nessier never saw or read the December 17, 2018 letter from Defendant Seterus. The only understanding she had from this letter came from Plaintiff Bostwick.
- Plaintiff Bostwick "couldn't say one way or the other" whether he ever received the December 17, 2018 letter from Defendant Seterus.
- Plaintiff Bostwick does not "have a problem" with the December 17, 2018 letter.
- Plaintiff Bostwick is not "alleging there's an inconsistency" between the December 12 and December 18, 2018 letters.
- Neither the December 12, 2018 or the December 17, 2018 letters were confusing or misleading to Plaintiffs or any other consumer.
- Plaintiff Bostwick admitted that the December 12 and December 18, 2018 letters "didn't damage me." Rather, Plaintiffs believed they were damaged because Defendant Seterus "gave us no option to keep the property," including a "short sale."
- However, Defendant Seterus considered Plaintiffs for loss mitigation options on several occasions. On certain occasions, Plaintiffs were offered but failed to accept a loss mitigation option that was offered to them. On others, they were deemed ineligible for the loss mitigation option(s) for which they were reviewed.
- Plaintiff Bostwick admitted that it was "made pretty clear by Seterus" that Defendant SN would not begin servicing the loan until January 7, 2019.
- Plaintiffs were aware, as of January 2019, that Defendant Seterus had transferred servicing of the loan to Defendant SN.
- If Plaintiffs would have appealed the denial of their loan modification request to Defendant Seterus, it would have attempted to decide the merits of the appeal prior to the servicing transfer; and it was received after the servicing transfer, it would have been forwarded to Defendant SN Servicing. However, Plaintiffs did not appeal the denial of their loan modification request.

- If Plaintiffs would have sent a payment within 30-60 days of the servicing transfer, Defendant Seterus would have forward that payment to Defendant SN Servicing. However, Defendant Seterus did not receive any such payments from Plaintiffs.
- On December 31, 2018, Plaintiffs called Seterus and was advised that: (1) their loan modification request was denied; (2) servicing of the Loan was being transferred on January 7, 2019; and (3) there was a foreclosure sale scheduled for January 15, 2019.
- At the time servicing transferred, Plaintiffs were at least $50,000.00 in default on the Loan secured by the Truckee Property and the Truckee Property was scheduled to be sold at a trustee's sale on January 15, 2019.
- Plaintiff Nessier admits that the January 2017 bankruptcy filing was because Plaintiffs were unable to "come to a resolution" with Defendant Seterus.
- Plaintiff Bostwick's January 2019 bankruptcy petition was filed to stop the foreclosure of the San Francisco Property.
- Plaintiff Bostwick's January 2019 bankruptcy petition was not filed to stop the foreclosure of the Truckee Property.
- On or about January 14, 2019, Defendant SN Servicing sent Plaintiffs a letter, again explaining that the "servicing of [Plaintiffs'] mortgage loan has been assigned, sold, or transferred." Specifically, the letter explained, "You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Seterus, Inc. to SN Servicing Corporation . . . effective January 7, 2019." The letter went on to provide Plaintiffs the address and telephone number for Defendant SN Servicing and invited Plaintiffs to call Defendant SN Servicing if they had "any questions relating to the transfer of servicing" of the Loan. The letter closed by reminding Plaintiffs to "Send all payments on or after January 7, 2019" to Defendant SN Servicing.
- On or about January 14, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that the "servicing of [their] mortgage loan has been transferred from Seterus, Inc. to SN Servicing Corporation . . . effective January 7, 2019.

- On or about January 28, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that "SN Servicing Corporation . . . is responsible for servicing and collecting the debt" owed on the loan.

- In 2019, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,793.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $45,492.00 for renting the Truckee Property for that year.

- On or about December 27, 2020, Plaintiff Nessier filed a Chapter 11 bankruptcy petition. Therein, she admitted: (1) she has "Short Term Lesses" [sic] because she rents the Truckee Property as "a short-term rental on the website www.airbnb.com"; and (2) she received $27,335.00 in monthly "Rental Income" from renting the Truckee Property for 2020.

- In 2020, Plaintiffs rented the Truckee Property for at least six months of the year "as a short term rental."

- In Plaintiffs' 2020 tax returns, they claimed a "loss" in the sum of $88,258.00 for renting the Truckee Property for that year.

- On February 10, 2021, Plaintiff Nessier filed a "Status Conference Statement" in her bankruptcy case. Therein, she admitted that: (1) the Truckee Property is "rented as a short-term vacation rental"; and (2) one of Plaintiffs' "main sources of revenue" is "rental income from the Truckee Property."

- On March 1, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $5,661.90 per month in rent for renting the Truckee Property.

- On March 25, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $7,028.42 per month in rent for renting the Truckee Property.

- On April 9, 2021, Plaintiff Nessier filed a "Proposed Combined Plan of Reorganization and Tentatively Approved Disclosure Statement" in her bankruptcy

- case. Therein, she admitted: (1) she receives $1,143.37 per month in "Positive Cash Flow" from renting the Truckee Property; and (2) she receives $4,750.00 per month in Rental Income from renting the Truckee Property.
- On July 12, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $4,830.60 per month in rent for renting the Truckee Property.
- On July 12, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $6,982.25 per month in rent for renting the Truckee Property.
- In 2021, the Truckee Property was used as a "Rental" property for 219 days and 0 "Personal" days for that year. Plaintiffs received $51,615.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $30,513.00 for renting the Truckee Property for that year.
- In 2022, Plaintiffs rented the Truckee Property for at least "60% of the year."
- As of September 13, 2023, and the present, AMI Staging, LLC is currently a "suspended" entity by the California Secretary of State.
- Plaintiffs' bankruptcy filings did not render them unable to obtain a loan for any of their business entities.
- Plaintiffs have not suffered any emotional distress due to Defendant Seterus.

## CONCLUSIONS OF LAW

- Plaintiffs are not "debtors" within the meaning of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"). *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subd. (h); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 (dismissing claims under the FDCPA and the

Rosenthal Act based on fact that the subject loan was secured by a rental property and not the plaintiffs' principal residence).

- The loan that is the subject of this action is not "consumer debt" because it was not obtained primarily for personal, family, or household purposes. *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subds. (e), (f); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 (dismissing claims under the FDCPA and the Rosenthal Act based on fact that the subject loan was secured by a rental property and not the plaintiffs' principal residence).

- Defendant Seterus is not a "debt collector." *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subd. (c).

- Defendant Seterus did not violate any portion of the Federal Fair Debt Collection Practices Act (the "FDCPA"). Civ. Code § 1788.17.

- Defendant Seterus did not violate section 1692d of the FDCPA.

- Defendant Seterus did not violate section 1692e of the FDCPA.

- Defendant Seterus did not violate section 1692f of the FDCPA.

- Plaintiffs did not suffer any "actual damages" as a result of any alleged violation of the Rosenthal Act by Defendant Seterus.

- Any alleged violation of the Rosenthal Act and/or the FDCPA by Defendant Seterus was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation. Civ. Code § 1788.30, subd. (e).

- Plaintiffs knowingly submitted false or inaccurate information, and/or willfully concealed adverse information bearing upon their credit worthiness, credit standing, or credit capacity, when they applied for the loan that is the subject of this action and/or when they applied for loan modifications. Civ. Code § 1788.20.

Separate [Proposed] Findings of Fact and Conclusions of Law

- Plaintiffs are guilty of unclean hands.
- The person signing a document bears the responsibility as to the statements made therein. *Tovar v. Heritage Pac. Fin., LLC (In re Tovar)* (B.A.P. 9th Cir. 2012) 2012 Bankr. LEXIS 3633, at *35-36 ("We are unpersuaded by Tovar's contention that he was not aware of the misrepresentations stated in the Loan Application, or the other documents submitted or contained in his mortgage file. To the extent that there is any validity to his allegations, Tovar nonetheless executed various legal documents and certified that the information made therein was correct and true. This is no different than signing and submitting a bankruptcy petition under the penalty of perjury, regardless of whether the debtor is an individual with limited English proficiency. Ultimately, **the person signing a document bears the legal responsibility as to the statements made therein**") (emphasis added).

DATED: _____        _____
                                                    JUDGE LAUREL BEELER

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On September 28, 2023, I served the within document(s) described as: **DEFENDANT SETERUS, INC.'S SEPARATE [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** on the interested parties in this action:

☒ by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| Shapero Law Firm, P.C.<br>100 Pine Street, Ste 530<br>San Francisco, CA 94111 | Tel: (415) 273-3504<br>Fax: (415) 358-4116<br>Email:<br>sarah@shaperolawfirm.com | Attorney for Plaintiffs Timothy S. Bostwick and Michele L. Nessier |
| Michael R. Brooks, Esq.<br>Hutchison & Steffen, PLLC<br>Peccole Professional Park<br>10080 West Alta Drive,<br>Suite 200<br>Las Vegas, Nevada 89145 | Tel: (702) 385-2500<br>Fax: ***<br>Email:<br>mbrooks@hutchlegal.com | Attorney for Plaintiffs Timothy S. Bostwick and Michele L. Nessier |
| Ghidotti Berger LLP<br>Rachel Witcher<br>1920 Old Tustin Ave.<br>Santa Ana, CA 92705 | Tel: (949) 427-2010<br>Fax: (949) 427-2732<br>Email:<br>rwitcher@ghidottiberger.com | Attorneys for Defendant SN Servicing Corporation and US Bank Trust National Association |

☒ **CM/ECF** (U.S. District Court, Northern District of California)—The NEF that is automatically generated by the Court's Electronic Filing System constitutes service of the filed document(s) on registered users. All parties who are not registered, if any, were served in the manner set forth above.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 28, 2023, at Irvine, California.

　　　　　　　　　　　　　　　　　/s/ Rose Conway
　　　　　　　　　　　　　　　　　ROSE CONWAY