Sarah Shapero (Bar No. 281748)
SHAPERO LAW FIRM, PC
100 Pine Street, Ste. 530
San Francisco, CA 94111
Telephone:   (415) 293-7995
Facsimile:   (415) 358-4116

Attorneys for Plaintiffs,
TIMOTHY S. BOSTWICK,
and MICHELE L. NESSIER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>SETERUS, INC., a business entity; US BANK, N.A., a business entity; SN SERVICING CORP., a business entity, and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO.: 3:21-cv-02560-LB<br>Action Filed: January 22, 2019<br><br>Assigned for All Purposes to Hon. Laurel Beeler<br><br>**PLAINTIFFS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial Date:   December 18, 2023 |

1
PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

# FINDINGS OF FACT

1. At the time Plaintiffs obtained the refinance loan in 2013, they intended to continue using the Property as a vacation home for their family.

2. In connection with the refinance loan, Plaintiff Nessier communicated telephonically with an agent of Bank of America. She did not fill out any part of the application herself other than to sign the document in June of 2013, a couple of months the phone call took place.

3. Plaintiffs always considered the Property primarily as a vacation home for their family and it was never their understanding that the refinance loan was for any other purpose.

4. Between the time Plaintiffs purchased the Property in 1999 until approximately mid-2014, the Property was used almost entirely as a vacation home for their family.

5. In 2017, SETERUS sent Plaintiffs a series of conflicting and redundant letters regarding Plaintiff's loan modification efforts.

6. Defendant SETERUS began foreclosure proceedings with the recording of a Notice of Default on or around July 27, 2018.

7. Defendant SETERUS then caused a Notice of Trustee's Sale to be recorded against the property on October 30, 2018 with a sale date of November 26, 2018.

8. On November 9, 2018, Plaintiff submitted a complete loan modification application to SETERUS.

9. An acknowledgment letter was never sent to Plaintiff after that time.

10. SETERUS sent three denial letters to Plaintiff dated November 21, 2018, November 28, 2018 and December 17, 2018. The two November denial letters did not provide Plaintiffs with a right to appeal the denial.

11. SETERUS discussed the ongoing modification with Bostwick on 11/23/18 but

didn't inform him that the mod had already been denied on 11/21/18.

12. The loan modification was ultimately denied in writing on or around December 17, 2018 based on the post modification principal and interest payment being $29.00 more than the pre-modification principal and interest payment. Plaintiffs were not informed that they could offer a down payment to secure the modification and lower the post modification principal and interest payment.

13. In a letter dated December 17, 2018, Defendant SETERUS represented to Plaintiffs that Defendant SETERUS denied their loss mitigation request and that Plaintiffs have thirty (30) days to appeal the decision with Defendant. Specifically, Defendant SETERUS said "[if] you believe your request for assistance has been wrongly denied, you may appeal this decision. Your appeal request must be in writing, provide evidence to support why the denial was in error, and be received by [Defendant SETERUS] no later than 30 days from the date of this letter".  Moreover, in the December 17, 2018 letter, Defendant SETERUS represented to Plaintiffs that they must continue making payments to Defendant SETERUS. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to "this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820". The 12/17/18 letter stated that "You may have other options to avoid foreclosure."

14. Plaintiffs did not know who Fannie Mae or Chalet Series III Trust were because SETERUS had not notified them that the loan owner had changed twice.

15. Plaintiffs did not understand the reason for the December 17, 2018 denial.

16. SETERUS failed to take into consideration Plaintiffs' drastic change in circumstances.

17. In a letter dated December 12, 2018, Defendant represented to Plaintiffs that as of January 7, 2019, Defendant would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant said

"[t]he servicing of [the Loan] is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your [Loan] payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In this letter, Defendant said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

18. Plaintiff requested and SETERUS customer service ordered a rush reinstatement letter, however, Defendant SETERUS did not send such letter in a timely manner.

19. On December 31, 2018, Plaintiffs phoned SETERUS to ask whether the appeal letter should be sent to SETERUS or SN SERVICING given the change in servicers, but SETERUS did not know which entity the appeal should be directed to.  Plaintiffs did not know how to appeal the denial and could not determine who had authority to review any appeal.

20. The sale of the property was scheduled for January 15, 2019, before the deadline to appeal the denial expired.

21. Since Plaintiffs were unable to get clarity on the appeal and with the sale scheduled on January 15, 2019, Plaintiff BOSTWICK had no option but to file a Chapter 13 bankruptcy on January 7, 2019.

22. Defendant SETERUS continued to service Plaintiff's loan through January 2019 despite the letter indicating that SN would be the servicer effective January 7, 2019.

23. SETERUS sent incorrect records to SN SERVICING which did not verify the records it received from SETERUS.

24. SETERUS  did not notify SN SERVICING of the denial of the modification or the appeal period.

PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

25. Plaintiffs filed this lawsuit on January 22, 2019.

26. On or around November 18, 2020, during the pendency of this lawsuit, Defendant SN Servicing caused a Notice of Trustee's Sale to be recorded against Plaintiffs' property with a sale date of January 4, 2021.

27. In December 2020, Plaintiff Bostwick began contacting Defendant SN to ascertain what amount would be necessary to reinstate the loan.

28. On or around December 11, 2020, Plaintiff BOSTWICK was told by SN Servicing that the only individual that could provide him a reinstatement quote was an individual named Jordan Kahoalii and he was provided Mr. Kahoalii's contact information. Plaintiff called Mr. Kahoalii numerous times over several days before he was finally able to reach him.

29. SN SERVICING did not verify the reinstatement charges that it received from SETERUS.

30. Plaintiffs did not understand how to dispute the accuracy of the reinstatement charges because they did not know how they were generated.

31. Plaintiffs were confused about whom (or what department) to speak with about disputing the reinstatement charges. Kahoalli was not competent to discuss the reinstatement charges even though he was purportedly plaintiffs' SPOC.

32. Plaintiffs were confused about whether disputing the accuracy of the reinstatement charges would delay foreclosure.

33. When Plaintiff finally reached Mr. Kahoalii, he told Plaintiffs that they were out of time and options to save the property.

34. Mr. Kahoalii advised Plaintiffs to contact Ghidotti Berger regarding a modification.

35. Plaintiffs were confused by Mr. Kahoalli's statement that there was no lender involved with plaintiff's mortgage loan and that US Bank was not a lender.

36. Desperate to get a reinstatement quote and save his property from

foreclosure, Mr. Bostwick called Ghidotti Berger on December 15, 2020 and spoke with an individual named Shawnee Herring. Ms. Herring told Mr. Bostwick that the reinstatement amount was approximately $77,000.

37. Plaintiffs had these funds available to reinstate and requested that they provide a formal reinstatement quote for the property so that Plaintiff could reinstate the loan.

38. On or around December 14, 2020, SN sent Plaintiff a reinstatement quote indicating that Plaintiffs owed $104,935.39 to reinstate the loan.

39. The true amount to reinstate the loan in December 2020 was approximately $77,000.00 as was confirmed later during Plaintiff's Chapter 11 bankruptcy.

40. As a result of the inflated reinstatement amount, Plaintiff NESSIER was forced to file a Chapter 11 bankruptcy in order to stop the sale of Plaintiff's property.

## CONCLUSIONS OF LAW

1. Plaintiff bring this action against Defendants based on 15 U.S.C. § 1692, et seq., commonly known as the Fair Debt Collection Practices Act ("Act"). In passing this Act, Congress stated its purpose was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection practices." To this end, the Act expressly prohibits debt collectors from engaging in numerous specific acts or practices and also mandatorily requires debt collectors in attempting to collect consumer debts for others to affirmatively perform specific acts. 15 U.S.C. § 1692a.

2. The Act defines a "debt collector" to include any person who uses any instrumentality of interstate commerce, the mails in any business, the principle

purpose of which business is the collection of any debt, directly or indirectly, owed, due, or asserted to be owed or due to another. The Act also defines a "debt collector" to include any person who regularly collects a debt owed to another. Defendants are "debt collectors" within the meaning of the Act. 15 U.S.C. § 1692a.

3. The Act defines "debt" to mean any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligations have been reduced to judgment.  The obligation which Plaintiff is alleged to owe is a "debt" within the meaning of the Act. 15 U.S.C. § 1692a.

4. The Act defines "consumer" as any person obligated or allegedly obligated to pay any debt. Plaintiffs are  "consumers" within the meaning of the Act. 15 U.S.C. § 1692a.

5. Plaintiffs contend that the Defendants violated the Act in the following three particulars: First, using false, deceptive, or misleading representations or means in connection with collection of a debt (15 U.S.C. § 1692e); Second, the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C.§ 1692e(10)); and third, using unfair or unconscionable means to collect or attempt to collect any debt (15 U.S.C. § 1692f)

6. The Act states: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(A) the false representation of—the character, amount, or legal status of any debt.   15 U.S.C. § 1692e(2)(A). Where Defendant SN failed to provide Plaintiffs with an accurate reinstatement quote and, instead, demanded

amounts not due, it violated this section. <u>McLaughlin v. Phelan Hallinan & Schmieg, LLP,</u> 756 F.3d 240, 245-247 (3rd Cir. 2014).

7. The Act states A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(A) the false representation of—the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A). Where Defendant Seterus failed to provide Plaintiffs with accurate information regarding the debt throughout December 2018 and January 2019, it violated this section.

8. Whether the debt collector's action is such a violation, must be determined from the prospective of the least sophisticated consumer or debtor. <u>Wilhelm v. Credico, Inc.</u>, 519 F.3d 416 (8th Cir. 2008); <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450 (3d Cir. 2006); <u>United States v. Nat'l Fin. Servs., Inc.</u>, 98 F.3d 131 (4th Cir. 1996); <u>Pipiles v. Credit Bureau, Inc.</u>, 886 F.2d 22, 25–26 (2d Cir. 1989); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 571 (3d Cir. 1989); <u>Swanson v. Southern Oregon Credit Service</u>, 869 F.2d 1222, 1227–1228 (9th Cir. 1988).

9. A successful plaintiff is entitled to recover:  1) actual damages; 2) statutory damages up to $1,000.00; and 3) attorneys' fees and costs.  15 U.S.C. § 1692l(a). Plaintiffs are entitled to statutory damages and actual damages resulting from the two bankruptcies that were filed in order to protect Plaintiffs' property following Defendants' violations of the Act.  Plaintiffs are also entitled to attorneys fees.

DATED: September 28, 2023            SHAPERO LAW FIRM, PC

                                                   /s/ Sarah Shapero
                                          SARAH SHAPERO
                                          Attorneys for Plaintiffs Timothy Bostwick and Michele Nessier