Katelyn M.W. Burnett, Esq. (SBN 290812)
GHIDOTTI | BERGER, LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705
Tel: (949) 427-2010
Fax:  (949) 427-2732
Email: kburnett@ghidottiberger.com

MICHAEL R. BROOKS, ESQ. (SBN 167315)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone:  702.385.2500
E-Mail: mbrooks@hutchlegal.com

Attorneys for Defendant SN SERVICING CORPORATION and US BANK TRUST NATIONAL
ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST (erroneously sued as US
Bank, N.A.)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, individual;<br><br>  Plaintiffs,<br>v.<br><br>SETERUS, INC., a business entity; DOES 1 THROUGH 10 INCLUSIVE,<br><br>  Defendants. | CASE NO.: 3:21-cv-02560-LB<br><br><br>**SN SERVICING'S MOTION IN LIMINE NO. 1; MOTION TO LIMIT SCOPE OF TESTIMONY AND EVIDENCE ESTABLISHING EMOTIONAL DISTRESS DAMAGES** |

  Defendants, SN Servicing Corporation and U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust ("Defendants") hereby make a Motion in Limine regarding the exclusion of all testimony or evidence concerning emotional distress damages.  As set forth more

fully herein, Defendants request that this Court exclude any evidence, including without limitation testimony by Plaintiffs or any of their proffered witnesses, on the issue of emotional distress damages. This motion is based on the following memorandum of points and authorities, any argument the Court entertains at a hearing on this matter, and all papers and pleadings on file herein.

Counsel certifies to this Court that it has conducted a meet and confer with the Plaintiffs' counsel before filing this motion. To date, Plaintiffs counsel has not agreed to the exclusion of any reference to emotional distress damages.

Respectfully submitted,

DATED: September 8, 2023          **GHIDOTTI | BERGER, LLP**


*/s/Katelyn M.W. Burnett*

**HUTCHISON & STEFFEN, PLLC**


 */s/ Michael Brooks*
Michael Brooks, Esq.

Attorneys for Defendant SN SERVICING
CORPORATION and U.S. BANK TRUST
NATIONAL ASSOCIATION, AS TRUSTEE OF
THE CHALET SERIES III TRUST (erroneously
sued as US BANK, N.A.)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This Motion is brought to address the complete lack of an evidentiary record to support a finding of emotional distress damages despite the inclusion of the claims in the complaint. The Plaintiffs' sole cause of action is a Rosenthal Fair Debt Collection Practices Act (CA Civ Code §1788, *et seq.*) claim. Plaintiffs assert a claim for emotional distress damages in their Third Amended Complaint ("TAC").  However, Plaintiffs have not produced particularized evidence of emotional distress damages to meet their threshold burden of bringing those claims. Importantly, the Plaintiffs had multiple opportunities to produce the necessary evidence of a particularized emotional distress injury but failed each time: Rule 26 Disclosures; responses to discovery; and, deposition testimony. Each time the Plaintiffs failed to meet their most basic evidentiary obligation. Accordingly, this Motion in Limine must be granted.

## II.     FACTUAL BACKGROUND

This is a case represents a years-long attempt by Plaintiffs TIMOTHY BOSTWICK and MICHELE NESSIER (together, "Plaintiffs")  to delay foreclosure proceedings in connection with their vacation rental property located at 14049 Skislope Way, Truckee, California 96161 ("Subject Property").

On or about June 20, 2013, Plaintiffs obtained a $403,350.00 mortgage loan secured by the Subject Property, by executing a promissory note ("Note") secured by a recorded Deed of Trust ("DOT") (obligations under the Note and DOT are collectively referred to as the "Loan").

On or about July 27, 2018, a Notice of Default ("NOD") was recorded against the Subject Property by then Trustee and non-party to this action, PLM Loan Management Services, Inc., stating that Plaintiffs were in default of the Loan as of April 1, 2017.

In January 2019, servicing of the Loan was transferred to SN from Defendant SETERUS INC ("Seterus"). Plaintiffs' TAC acknowledges that they received notice of the transfer of servicing prior to the transfer and at the time of transfer. Nonetheless, Plaintiffs continued to contact and negotiate with Seterus and Seterus' counsel with respect to the Loan. (TAC, at ¶ 98.)

On or about November 18, 2020, a Notice of Trustee's Sale ("NOTS") was recorded in the Official Records of Nevada County, stating an unpaid balance of $447,255.50 and setting the sale for January 4, 2021. This is the only NOTS that has been recorded against the Subject Property by SN.

## III.    PROCEDURAL HISTORY

Plaintiffs filed their TAC on October 21, 2021. The TAC is limited to a single claim for relief for violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788, *et seq.* Included in the prayer for relief in the TAC is the following: "F. For compensatory and statutory damages, damages for emotional distress, punitive damages, attorneys fees and costs according to proof at trial."

In preparation for the trial in this matter, the discovery consisted of:

- FRCP Rule 26 Disclosures;
- Written discovery responses to requests for production, requests for admission and special interrogatories;
- Deposition testimony of the plaintiffs, Timothy S. Bostwick and Michele L. Nessier.

A full inventory of all of the evidence offered by the Plaintiffs in connection with the emotional distress damages is set forth below:

**Rule 26 Disclosures:**

Plaintiffs' Rule 26 Disclosures consist of the following to support their claim for emotional distress damages.

(d) Plaintiffs seek monetary damages for emotional distress resulting from the complained of allegations. Plaintiffs have suffered severe emotional distress as a result of Defendants' conduct. Plaintiffs cannot, at this time, compute the extent of these damages, but anticipates expert testimony will be used to provide a monetary value to Plaintiff's emotional distress and physical damages. Plaintiffs will supplement disclosures with computation of damages as soon as the monetary value of their emotional distress is determined. (See, Exhibit "A" attached hereto).

Significantly, the Plaintiffs offer no evidence of their particularized claims of emotional distress damages. There are no factual recitations regarding the type of injury, the attempts to treat or cure, and the length of the time that the symptoms for the injury persisted. In the end, there is

simply nothing in the Disclosure that would provide the opposing party or this court any basis for finding that the Plaintiffs actually suffered emotional distress.  They simply state that they "have suffered severe emotional distress".

Plaintiffs also made an offer of proof that they would produce expert testimony to show the amount of emotional distress damages. To date, no expert testimony has been offered.

Finally, Plaintiffs state that they will supplement their Disclosure to provide additional information. However, no such supplement has been provided.

**Discovery Responses:**

Plaintiffs provided responses to Special Interrogatories in September 2022 to discovery served by SN Servicing. (See, Exhibits "B" & "C"). Timothy Bostwick and Michelle Nessier each responded individually to identical discovery requests. In response to Interrogatory No. 9, Plaintiffs stated: "Yes. Investigation and discovery are ongoing." There is nothing specific to identify the nature of extent of any injury let alone an emotional distress injury.

In response to Interrogatory No. 10, the Plaintiffs attempted to offer facts to support their emotional distress damages and the only statement made was: "Plaintiffs suffered immense emotional distress and anxiety." There are no facts offered to demonstrate a particularized injury or how the emotional distress manifested itself for the Plaintiffs.

**Deposition Testimony:**

Plaintiffs had their depositions taken in September 2022 and failed to provide any additional evidence concerning emotional distress damages despite requests for information regarding damages. Particularly, Mr. Bostwick was asked:

Q:      Okay. So let's get to the damages that you allege as a result of these letters. Do you allege that those letters damaged you financially?
A:      The letters didn't damage me.
Q:      Okay. What do you allege – do you allege that any actions by my client, Seterus, damaged you financially?
A:      Well, I was saying earlier, that I was in this limbo without options. You had left your clients, both – not just your client, but both servicers – well, SN Servicing wasn't the servicer yet.
Q:      Right.
A:      So as far as I was concerned, they were not in the picture and not responsible.

So but I couldn't contact them. I don't remember exactly what I was thinking. The only option for keeping our beloved vacation home was to file bankruptcy.

. . .

There is no reference in all of Mr. Bostwick's testimony to any emotional distress damages.

Similarly, Nessier's testimony is completely devoid of any reference to emotional distress damages or to any particularized treatments or symptoms that she experienced.

## IV.    LAW AND ARGUMENT

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n. 4 (9th Cir. 2013) (*quoting United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009)). There is no express authority for motions in limine in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

Generally, motions in limine excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Additionally, it is sometimes necessary to defer ruling until trial when a better estimate of the impact of the evidence on the jury can be made by the trial judge. *Crawford v. City of Bakersfield*, No. 1:14-cv-01735-SAB, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016).

Denial of a motion in limine means the Court is unable to determine whether the evidence should be excluded outside of the trial context. The Court can review its denial after a timely objection during trial. Where a motion in limine is granted, however, the parties are precluded from arguing, discussing, or offering the particular evidence that the Court has ordered be excluded unless the Court rules otherwise during the course of the trial.

With regard to the recovery of emotional distress damages, the plaintiff is seeking emotional distress damages under California Civil Code section 1788. Courts within the 9th Circuit Court of Appeals have established a standard of review for emotional distress damages where they can be

statutorily awarded. *Gao v. Campus 150 Venture II, LLC*, No. SACV2001355DDPADSX, 2022 WL 294749, at *6 (C.D. Cal. Jan. 31, 2022). In particular, the following test has been established by courts within the 9th Circuit if emotional distress damages are going to be allowed to proceed to trial. *Id.* "To survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements." *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1102 (N.D. Cal. 2016) (quoting *Centuori v. Experian Info. Solutions, Inc*., 431 F.Supp.2d 1002, 1010 (D.Ariz.2006)). A plaintiff's testimony alone may be sufficient to meet this burden. *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1040 (9th Cir. 2003).

In the *Gao* case, the plaintiff did not meet the minimum standard of evidence despite the fact that the plaintiff testified that she experienced emotional distress everyday and that she was unable to nap during the mid-day as she was accustomed. Moreover, plaintiff had testimony from a corroborating witness who testified that plaintiff was really stressed and began taking melatonin to sleep. The District Court stated: "Under any standard, this evidence does not sufficiently explain the nature or circumstances of Plaintiff's emotional distress in anything more than conclusory terms. *Gao*, at *6.

In the present case, the Plaintiffs have not offered a shred of evidence that could be used to establish the circumstances of the emotional distress beyond mere legal conclusions. The Plaintiffs only offer legal conclusions regarding their "immense" emotional distress. There is not one factual representation regarding how the emotional distress has manifested itself. There is no evidence of any treatment. There are no documents that would substantiate any of the claims of emotional distress. Importantly, there is no discussion in the Plaintiffs deposition testimony regarding emotional distress damages.

///

///

///

///

V.    **CONCLUSION**

Based upon the foregoing, Defendants, SN Servicing, and U.S. Bank, as Trustee respectfully request that all evidence or testimony concerning emotional distress damages be barred from the trial of this matter.

Respectfully submitted,

DATED: September 8, 2023                **GHIDOTTI | BERGER, LLP**


_/s/Katelyn M.W. Burnett_

**HUTCHISON & STEFFEN, PLLC**


_/s/ Michael Brooks_
Michael Brooks, Esq.
Attorneys for Defendant SN SERVICING
CORPORATION and U.S. BANK TRUST
NATIONAL ASSOCIATION, AS TRUSTEE OF
THE CHALET SERIES III TRUST (erroneously
sued as US BANK, N.A.)

### DECLARATION OF MICHAEL R. BROOKS

I, Michael R. Brooks, declare as follows:

1.  I am counsel of record for Defendants, SN Servicing and U.S. Bank, as Trustee.

2.  I have knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so truthfully and competently.

3.  Plaintiffs filed their TAC on October 21, 2021. The TAC is limited to a single claim for relief for violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788, *et seq.* Included in the prayer for relief in the TAC is the following: "F. For compensatory and statutory damages, damages for emotional distress, punitive damages, attorneys fees and costs according to proof at trial."

4.  In preparation for the trial in this matter, the discovery consisted of: FRCP Rule 26 Disclosures; Written discovery responses to requests for production, requests for admission and special interrogatories; Deposition testimony of the plaintiffs, Timothy S. Bostwick and Michele L. Nessier.

5.  Regarding the Rule 26 Disclosures, Plaintiffs' Rule 26 Disclosures consist of the following to support their claim for emotional distress damages.

    (d) Plaintiffs seek monetary damages for emotional distress resulting from the complained of allegations. Plaintiffs have suffered severe emotional distress as a result of Defendants' conduct. Plaintiffs cannot, at this time, compute the extent of these damages, but anticipates expert testimony will be used to provide a monetary value to Plaintiff's emotional distress and physical damages. Plaintiffs will supplement disclosures with computation of damages as soon as the monetary value of their emotional distress is determined.

6.  A true and correct copy of the Rule 26 Disclosures are attached hereto as Exhibit "A".

7.  Significantly, the Plaintiffs offer no evidence of their particularized claims of emotional distress damages. There are no factual recitations regarding the type of injury, the attempts to treat or cure, and the length of the time that the symptoms for the injury persisted. In the end, there is simply nothing in the Disclosure that would provide the

opposing party or this court any basis for finding that the Plaintiffs actually suffered emotional distress.  They simply state that they "have suffered severe emotional distress".

8.  Plaintiffs also made an offer of proof that they would produce expert testimony to show the amount of emotional distress damages. To date, no expert testimony has been offered.

9.  Finally, Plaintiffs state that they will supplement their Disclosure to provide additional information. However, no such supplement has been provided.

10. Plaintiffs provided responses to Special Interrogatories in September 2022 to discovery served by SN Servicing. True and correct copies of Plaintiffs' responses to the Special Interrogatories are attached hereto as Exhibits "B" and "C"

11. Timothy Bostwick and Michelle Nessier each responded individually to identical discovery requests. In response to Interrogatory No. 9, Plaintiffs stated: "Yes. Investigation and discovery are ongoing." There is nothing specific to identify the nature of extent of any injury let alone an emotional distress injury.

12. In response to Interrogatory No. 10, the Plaintiffs attempted to offer facts to support their emotional distress damages and the only statement made was: "Plaintiffs suffered immense emotional distress and anxiety." There are no facts offered to demonstrate a particularized injury or how the emotional distress manifested itself for the Plaintiffs.

13. Plaintiffs had their depositions taken in September 2022 and failed to provide any additional evidence concerning emotional distress damages despite requests for information regarding damages. Particularly, Mr. Bostwick was asked:

> Q:      Okay. So let's get to the damages that you allege as a result of these letters.
> Do you allege that those letters damaged you financially?
> A:      The letters didn't damage me.
> Q:      Okay. What do you allege – do you allege that any actions by my client, Seterus, damaged you financially?
> A:      Well, I was saying earlier, that I was in this limbo without options. You had left your clients, both – not just your client, but both servicers – well, SN Servicing wasn't the servicer yet.
> Q:      Right.
> A:      So as far as I was concerned, they were not in the picture and not responsible.
>         So but I couldn't contact them. I don't remember exactly what I

was thinking. The only option for keeping our beloved vacation home was to file bankruptcy.

. . .

14. There is no reference in all of Mr. Bostwick's testimony to any emotional distress damages.

15. Similarly, Nessier's testimony is completely devoid of any reference to emotional distress damages or to any particularized treatments or symptoms that she experienced.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 6th day of September 2023 at Kearney, Missouri.

*/s/Michael Brooks*
Michael R. Brooks

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT A



MATTHEW D. MELLEN (BAR NO. 233350)
RAMONCHITO DE CASTRO (BAR NO. 332595)
MELLEN LAW FIRM
1050 MARINA VILLAGE PARKWAY, SUITE 102
ALAMEDA, CA 94501
TELEPHONE: (510) 263-9638
FACSIMILE: (510) 995-8279
EMAIL: EMAIL@MELLENLAWFIRM.COM

Attorneys for Plaintiff
TIMOTHY S. BOSTWICK
MICHELLE L. NESSIER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, individual;<br><br>        Plaintiffs,<br><br>    v.<br><br>SETERUS, INC., a business entity; DOES 1 THROUGH 10 INCLUSIVE,<br><br>        Defendants. | Case No. 3:21-CV-02560-LB<br><br>**PLAINTIFFS' INITIAL DISCLOSURES PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26(a)** |

1

**PLAINTIFFS' INITIAL DISCLOSURES**

2       Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiffs TIMOTHY S.

3   BOSTWICK and MICHELLE L. NESSIER make the following initial disclosures.  Plaintiffs

4   have not completed their investigation into this matter and discovery has not been concluded. The

5   following disclosures are based on the information presently available to Plaintiffs based on their

6   current understanding of the claims as asserted herein.  Plaintiffs reserve the right to supplement

7   or modify these disclosures and to use any additional information, witnesses, or evidence at any

8   time, up to and including trial, as the parties elaborate on the allegations or identify witnesses,

9   new information is discovered, or new claims or theories are developed.

10   **(1)   Names and Contact Information of Witnesses and individuals likely to have
             discoverable information (Fed. R. Civ. P. 26(a)(1)(A))**

11

12       The following persons are likely to have discoverable information Plaintiff may use to

13   support its claims or defenses, unless the use would be solely for purposes of impeachment:

14       (a)   Timothy Bostwick, Plaintiff.  Mr. Bostwick has information regarding Subject

15             Loan payments, other loan payments, communications with Defendants and other

16             individuals concerning the Loans. Mr. Bostwick can be contacted through his

17             attorneys Matthew Mellen, Ramonchito De Castro, and Allison Erggelet of the

18             Mellen Law Firm, located at 1050 Marina Village Parkway, Ste. 102, Alameda,

19             CA 94501.  Plaintiff's counsel can also be contacted via telephone at (510) 263-

20             9638.

21       (b)   Michelle Nessier, Plaintiff.  Mrs. Nessier has information regarding Subject Loan

22             payments, other loan payments, communications with Defendants and other

23             individuals concerning the Loans.  Mrs. Nessier can be contacted through her

24             attorneys Matthew Mellen, Ramonchito De Castro, and Allison Erggelet of the

25             Mellen Law Firm, located at 1050 Marina Village Parkway, Ste. 102, Alameda,

26             CA 94501.  Plaintiff's counsel can also be contacted via telephone at (510) 263-

27             9638.

28       (c)   Ghidotti Berger. Erica Loftis has information regarding communications

pertaining to the property, specifically, regarding status during Bankruptcy and Notice of Trustees Sale. Contact information unknown.

(d)  Bank of America, N.A. BANA has information regarding origination of the Subject Loan payments, other loan payments, communications with Defendants and other individuals concerning the Loans. Contact information unknown.

(e)  Federal National Mortgage Association. Should have knowledge of the veracity of the allegations in the complaint. Contact information unknown.

(f)  PLM Loan Management Services, Inc. Should have knowledge of the veracity of the allegations in the complaint. Contact information unknown.

(g)  MTGLQ Investors, L.P. Should have knowledge of the veracity of the allegations in the complaint. Contact information unknown.

(h)  U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust. Should have knowledge of the veracity of the allegations in the complaint. Can be contacted through counsel.

(i)  Seterus, Inc. Should have knowledge of the veracity of the allegations in the complaint. Can be contacted through counsel.

(j)  SN Servicing Corporation. Jordan (last name unknown) should have knowledge of the veracity of the allegations in the complaint. Can be contacted through counsel.

(k)  Any unknown persons with knowledge of the servicing of the loan, Plaintiffs' alleged damages, and/or the allegations pled in the complaint (including, but not limited to, prior tenants of the subject property). Should have knowledge of the veracity of the allegations in the complaint. Contact information unknown.

Plaintiff reserves the right to update this list as additional documents and information are produced by the parties, and as discovery continues in this case.

**2**. **Documents and Things in Possession (Fed. R. Civ. P. 26(a)(1)(B))**

All the below-referenced categories of documents are in the possession, custody and/or control of Plaintiffs. Copies of these documents will be provided for inspection and/or copying upon request.  Plaintiff reserves the right to supplement this list if discovery reveals additional documents supporting Plaintiff's claims.

(a)     Loan origination documents

(b)     Phone call logs from the relevant period

(c)     Emails from the relevant period

(d)     Deed of Trust

(e)     Tax Returns and financial statements

(f)     Notice of Trustee's Sale

(g)     Foreclosure-related documents

(h)     Bank account statements

(i)     Correspondence from Loan Servicers regarding the Loans

(j)     All documents evidencing any receipts of rental income related to the subject property

Plaintiffs reserve the right to update this list as additional documents and information are produced by the parties, and as discovery continues in this case.

**3**. **Computation of damages (Fed. R. Civ. P. 26(a)(1)(C))**

A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Plaintiffs are seeking the following damages:

(a)     Plaintiffs seek attorneys' fees that will be determined at trial.

(b)     Plaintiffs also seek monetary damages for potential loss of property. Plaintiffs cannot, at this time, fully compute the extent of these damages, however, Plaintiffs

1   will supplement disclosures with computation of damages as soon as the monetary
2   value is determined.

3   (c)   Plaintiffs also seek monetary damages to compensate for the destruction of their
4   credit.  Plaintiffs cannot, at this time, fully compute the extent of these damages,
5   but anticipate expert testimony will be used to determine what monetary value
6   credit destruction has. Plaintiffs believe the destruction to credit has resulted in
7   approximately $100,000.00 of damages from inability to obtain refinancing or
8   other loans for personal and business use. Plaintiffs will supplement disclosures
9   with computation of damages as soon as the monetary value credit destruction is
10  determined.

11  (d)   Plaintiffs seek monetary damages for emotional distress resulting from the
12  complained of allegations. Plaintiffs have suffered severe emotional distress as a
13  result of Defendants' conduct. Plaintiffs cannot, at this time, compute the extent of
14  these damages, but anticipates expert testimony will be used to provide a monetary
15  value to Plaintiff's emotional distress and physical damages.  Plaintiffs will
16  supplement disclosures with computation of damages as soon as the monetary
17  value of their emotional distress is determined.

18  (e)   Plaintiffs seek punitive damages.  Plaintiffs cannot, at this time, compute the
19  extent of these damages but will supplement disclosures with computation of
20  punitive damages as soon as the monetary value of their punitive damages is
21  determined.

22

23  Plaintiffs reserve the right to supplement this list if discovery reveals additional categories
24  of damages or materials bearing on the nature and extent of the injuries suffered.

25

26  **4**. **Insurance Agreements (Fed. R. Civ. P. 26(a)(1)(D))**

27

28

1          Plaintiffs are not aware of any insurance agreements that may be liable to satisfy part or

2    all of a judgment that may be entered in the action to indemnify or reimburse for payments made

3    to satisfy the judgment.

4

5          Dated: July 1, 2021                    Respectfully submitted,

6                                                 MELLEN LAW FIRM

7

8                                                  ___/s/ Matthew Mellen_____

9                                                 By: Matthew Mellen
                                                  Attorney for Plaintiffs
10                                                TIMOTHY S. BOSTWICK
                                                  MICHELLE L. NESSIER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## <u>CERTIFICATE OF SERVICE</u>

3       I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I
am employed in the City of San Francisco California; my business address is Mellen Law Firm,
4       1050 Marina Village Parkway, Suite 102, Alameda, CA 94501.

5       On July 1, 2021 I served the following documents described as:

6       **PLAINTIFFS' INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

7       on the interested parties in this action by attaching true and correct copies thereof to electronic
message addressed as follows:

8

9       Michael W. Stoltzman, Jr.               Shannon C. Williams
THE RYAN FIRM                            Katelyn M.W. Burnett
10      A Professional Corporation               GHIDOTTI | BERGER, LLP
2603 Main Street, Suite 1225             1920 Old Tustin Avenue
11      Irvine, CA 92614                         Santa Ana, CA 92705

12      mstoltzman@theryanfirm.com               kburnett@ghidottiberger.com

13      *Counsel for Defendant Seterus, Inc.*    *Counsel for Defendants SN Servicing Corp.*
                                                 *and U.S. Bank Trust National Association,*
14                                               *As Trustee of the Chalet Series III Trust*

15

16          **[X]  ONLY  BY  ELECTRONIC  SERVICE.**  By  personally  emailing  the
document(s) to the persons at the e-mail address(es) listed below.  Service is based
17      on CCP 1010.6(e)(1), which states: "A party represented by counsel, who has
appeared in an action or proceeding, shall accept electronic service of a notice or
18      document that may be served by mail, express mail, overnight delivery, or facsimile
transmission. Before first serving a represented party electronically, the serving
19      party shall confirm by telephone or email the appropriate electronic service address
for counsel being served."
20

21          I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed  July 1, 2021 in Alameda, California.
22

23                                               _/s/ Matthew Mellen_____
                                                 MATTHEW MELLEN
24

25

26

27

28

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT B



Sarah Shapero (Bar No. 281748)
100 Pine Street, Ste. 530
San Francisco, CA 94111
Telephone:   (415) 293-7995
Facsimile:    (415) 358-4116

Attorneys for Plaintiffs,
TIMOTHY S. BOSTWICK,
and MICHELE L. NESSIER,

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, individual;<br><br>        Plaintiffs,<br><br>        v.<br><br>SETERUS, INC., a business entity; US BANK, N.A., a business entity; SN Servicing CORP., a business entity, and DOES 1 through 10, inclusive<br><br><br>        Defendants. | Case No.:  3:21-CV-02560-LB<br><br><br>**PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S SPECIAL INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY: Defendant, SN SERVICING CORPORATION

RESPONDING PARTY: Plaintiff, TIMOTHY S. BOSTWICK

SET NUMBER: ONE (1) (FURTHER RESPONSES)

1

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1

2

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

3   The responding party has not fully completed investigation of the facts, discovery, or trial

4   preparation relating to this case.  The only basis of the responses contained herein are information

5   and documents presently available to and specifically known to the responding party.   The

6   responding party anticipates that further discovery, independent investigation, legal research, and

7   analysis will supply additional facts, add meaning to known facts, and establish entirely new factual

8   conclusions and legal contentions.   Additional information obtained may lead to substantial

9   additions, changes, or variations from the contentions set forth in these responses.  The following

10  discovery responses are given without prejudice to the responding party's right to produce evidence

11  or facts subsequently attained.

12   If further investigation reveals additional information, responding party reserves the right

13  to change any responses to this discovery request.  The responses herein are made in good faith to

14  supply as much specific, factual information that is presently known by responding party.

15  Responding party repudiates any prejudices resulting from these responses in relation to further

16  discovery.

17   Responding Party objects to this discovery as improperly propounded under the California

18  Rules of Civil Procedure in an action governed by the Federal Rules of Civil Procedure and

19  provides these responses without waiver of said objection.

20   Responding Party objects to each and every interrogatory to the extent that it seeks the

21  disclosure of attorney-client privileged information, and Responding Party asserts the attorney-

22  client privilege with respect to each such interrogatory.

23   Responding Party objects to each and every interrogatory to the extent that it seeks the

24  discovery of information protected by the attorney work-product doctrine, and asserts the attorney-

25  work product doctrine with respect to each such interrogatory.

26   Plaintiff, TIMOTHY S. BOSTWICK, responds further as follows:

27  ///

28

PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL
INTERROGATORIES, SET ONE

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

**SPECIAL INTERROGATORIES, SET ONE**

**SPECIAL INTERROGATORY NO. 1:**

IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY acted in a way that was unlawful as defined in the Rosenthal Fair Debt Collection Practices Act as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and

4

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations. When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as

6

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY acted in a way that was unfair as defined in the Rosenthal Fair Debt Collection Practices Act as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1   866-570-5277 to see how they could help.

2          Although some of this conflicting information suggested that Defendant SN Servicing

3   would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that

4   followed a few days later instructed Plaintiffs to continue sending all payments and directing any

5   inquiries to Seterus, among other confusing and contradictory representations. Further confounding

6   the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any

7   introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly

8   unclear and stressful situation.

9          Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused

10  and misled as to the status of the Loan and the respective role and involvement of Defendants, and

11  tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the

12  date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also

13  caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure

14  alternatives than they actually had.

15         These representations caused Plaintiffs to be confused as to whom they should make

16  payments as well as their ability to apply for loss mitigation options which would significantly

17  impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure

18  sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare

19  Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their

20  ignored efforts to reinstate the Loan.

21         Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged

22  in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused

23  Notices of Trustees Sale to be posted on the Property.

24         Plaintiffs demanded a reinstatement amount with instructions on where to overnight the

25  payment, only to find out that after years of negotiating to negotiate a comprehensive settlement

26  involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom

27  Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of

28

9

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1    with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing

2    attorney for bankruptcy".

3        Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself

4    after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a

5    sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the

6    Loan current and restore it as a performing loan for the noteholder and requested a phone call at

7    her earliest convenience given the looming sale date.

8        Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing

9    again. Mr. Kahoalii informed him that the account is owned by a private investment company and

10   there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as

11   the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner

12   and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff

13   Bostwick contact Ghidotti Berger again.

14       On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing

15   dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935

16   which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees

17   of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the

18   bankruptcy trustee.

19       Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action.

20   Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this

21   response at any time up to and including at the time of trial.

22   **SPECIAL INTERROGATORY NO. 3:**

23       IDENTIFY all facts that Support YOUR contention that Propounding Party acted

24   fraudulently as defined in the Rosenthal Fair Debt Collect Practices Act as alleged in Paragraph 87

25   of the COMPLAINT.

26   **FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

27       Objection. This interrogatory as phrased is argumentative in that it improperly requires the

28

---

11

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1   sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare

2   Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their

3   ignored efforts to reinstate the Loan.

4          Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged

5   in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused

6   Notices of Trustees Sale to be posted on the Property.

7          Plaintiffs demanded a reinstatement amount with instructions on where to overnight the

8   payment, only to find out that after years of negotiating to negotiate a comprehensive settlement

9   involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom

10  Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of

11  Defendants disclosed that he was in fact not authorized to do so.

12         On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836

13  and was informed that customer service couldn't help him. He was referred to Jordan Kahaolii was

14  the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff

15  Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer

16  service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick

17  was not able to get in touch with Mr. Kahaolii.

18         On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger.

19  She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he

20  was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was

21  having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and

22  informed him that she would order quote from SN Servicing and they would send it via mail since

23  they could not email it. She further advised that they must pay the amount demanded "to the penny"

24  or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their

25  conversation and reiterated that she would  provide him with a reinstatement quote for the Property.

26  He also confirmed that he would provide the funds no later than January 2, 2021 and that they

27  would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

28

14

PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL
INTERROGATORIES, SET ONE

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY violated the Rosenthal Fair Debt Collection Practices Act, as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter,

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

17

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger.

18

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including the time of trial.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY each time the PROPERTY has been used by YOU for a family vacation as alleged in Paragraph 88 of the COMPLAINT, during the period of time from January 1, 2018 to December 31, 2021?

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

Objection. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as to the term "family vacation". This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  Responding Party cannot recall the specific dates or every instance in which the Property

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

was used as for a family vacation between January 1, 2018 to December 31, 2021. To the best of Responding Party's knowledge: Plaintiffs occupied the property for a total of approximately three months throughout the course of the year in 2021; Responding Party occupied the property between approximately May 2020 to September 2020; Responding Party occupied the property between approximately January of 2019 to September of 2019. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 6:**

IDENTIFY every COMMUNICATION YOU initiated with PROPOUNDING PARTY that YOU allege took place during the period from December 2018 through January 2021.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Objection. This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope, particularly given the expansive definitions of the specially-defined terms "YOU" and "PROPOUNDING PARTY" which would include all communications between counsel and representatives including throughout the bankruptcy proceedings. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustee Sale to be posted on the Property. Plaintiffs demanded that attorney Stolzman provide a reinstatement amount with instructions on

21

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

where to overnight the payment.

June 19, 2020, there was a conversation with attorney Bryant Jacquez at Ghidotti Berger. On July 15, 2020 Responding Party remitted payment to Propounding Party. On August 15, 2020 Propounding Party returned the check.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL
INTERROGATORIES, SET ONE

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again and he suggested that Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020.

Responding Party's prior counsel and representatives in bankruptcy had communications with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates and are other details are not within Responding Party's knowledge and are likely contained in Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY every COMMUNICATION PROPOUNDING PARTY initiated with YOU that YOU allege took place during the period from December 2018 through January 2021.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Objection. This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope, particularly given the expansive definitions of the specially-defined terms "YOU" and "PROPOUNDING PARTY" which would include all communications between counsel and representatives including throughout the bankruptcy proceedings. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustee Sale to be posted on the Property. Plaintiffs demanded that attorney Stolzman provide a reinstatement amount with instructions on where to overnight the payment.

June 19, 2020, there was a conversation with attorney Bryant Jacquez at Ghidotti Berger. On July 15, 2020 Responding Party remitted payment to Propounding Party. On August 15, 2020 Propounding Party returned the check.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahaolii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they

24

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1 | would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

2 |      On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that

3 | the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are

4 | available and Mr. Kahoalii, responded that there were no options because "foreclosure means that

5 | all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on

6 | the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because

7 | the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on

8 | the Property, which Plaintiffs' daughter found shortly thereafter.

9 |      On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger.

10 | Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer

11 | with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing

12 | attorney for bankruptcy".

13 |      Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis and requested a phone

14 | call at her earliest convenience given the looming sale date.

15 |      Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing

16 | again and he suggested that Plaintiff Bostwick contact Ghidotti Berger again.

17 |      On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing

18 | dated December 14, 2020.

19 |      Responding Party's prior counsel and representatives in bankruptcy had communications

20 | with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates

21 | and are other details are not within Responding Party's knowledge and are likely contained in

22 | Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right

23 | to amend or supplement this response at any time up to and including at the time of trial.

24 | **SPECIAL INTERROGATORY NO. 8:**

25 |      IDENTIFY every attempt by PROPOUNDING PARTY, during the period from December

26 | 2018 through January 2021, to collect the LOAN.

27 | **FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

28 |

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

Objection. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property. Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Responding Party's prior counsel and representatives in bankruptcy had communications with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates and are other details are not within Responding Party's knowledge and are likely contained in Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 9:**

Do YOU contend that YOU have been injured by PROPOUNDING PARTY?

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

Objection. This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Yes. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 10:**

If YOU contend that YOU have been injured by PROPOUNDING PARTY, please IDENTIFY all facts in support of that contention.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as the term "injured". This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. This interrogatory calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Responding Party responds as

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcies, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property. Plaintiffs had tenants in the property, who after seeing these postings, ceased making their rental payments for fear that the house would be

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1    foreclosed and they would need to relocate.

2        Plaintiffs demanded a reinstatement amount with instructions on where to overnight the

3    payment, only to find out that after years of negotiating to negotiate a comprehensive settlement

4    involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom

5    Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of

6    Defendants disclosed that he was in fact not authorized to do so.

7        On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836

8    and was informed that customer service couldn't help him. He was referred to Jordan Kahaolii was

9    the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff

10    Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer

11    service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick

12    was not able to get in touch with Mr. Kahaolii.

13        On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger.

14    She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he

15    was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was

16    having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and

17    informed him that she would order quote from SN Servicing and they would send it via mail since

18    they could not email it. She further advised that they must pay the amount demanded "to the penny"

19    or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their

20    conversation and reiterated that she would  provide him with a reinstatement quote for the Property.

21    He also confirmed that he would provide the funds no later than January 2, 2021 and that they

22    would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

23        On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that

24    the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are

25    available and Mr. Kahoalii, responded that there were no options because "foreclosure means that

26    all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on

27    the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because

28

31

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1  the lender would not allow it.

2      A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which

3  Plaintiffs' daughter found shortly thereafter.

4      On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger.

5  Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer

6  with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing

7  attorney for bankruptcy".

8      Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself

9  after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a

10  sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the

11  Loan current and restore it as a performing loan for the noteholder and requested a phone call at

12  her earliest convenience given the looming sale date.

13      Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing

14  again. Mr. Kahoalii informed him that the account is owned by a private investment company and

15  there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as

16  the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner

17  and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff

18  Bostwick contact Ghidotti Berger again.

19      On December 21, 2020, Plaintiffs received a reinstatement quote from SN Servicing dated

20  December 14, 2020 the they soon realized was inaccurate and included mystery charges. It reflected

21  a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv.

22  of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan

23  payments made by Plaintiffs to the bankruptcy trustee. As a result of this inaccurate reinstatement

24  quote provided at the eleventh hour, the foreclosure sale moved forward and Plaintiffs were forced

25  to file their second bankruptcy to save their home.

26      As an actual and proximate result of Defendants' conduct, Plaintiffs suffered immense

27  emotional distress and anxiety. The actions of Defendants forced Plaintiffs into bankruptcies to

28

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

save the Property which severely damaged their credit. As a result of their damaged credit and the bankruptcies, Plaintiffs were also denied loans and deprived of the ability to refinance, including in March of 2020, June of 2020, March of 2021, and May of 2021. Plaintiffs were also forced to pursue the instant litigation and incur the associated expenses.

Investigation and discovery are continuing.  Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

///

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY all facts in support of YOUR contention that the reinstatement quote received on December 14, 2020 was "incorrect with mystery charges and missing bankruptcy payments" as set forth in Paragraph 98 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet.

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as the term "injured". This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. This interrogatory calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at

34

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1   866-570-5277 to see how they could help.

2          Although some of this conflicting information suggested that Defendant SN Servicing

3   would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that

4   followed a few days later instructed Plaintiffs to continue sending all payments and directing any

5   inquiries to Seterus, among other confusing and contradictory representations. Further confounding

6   the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any

7   introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly

8   unclear and stressful situation.

9          Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused

10  and misled as to the status of the Loan and the respective role and involvement of Defendants, and

11  that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the

12  date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also

13  caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure

14  alternatives than they actually had.

15         These representations caused Plaintiffs to be confused as to whom they should make

16  payments as well as their ability to apply for loss mitigation options which would significantly

17  impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure

18  sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare

19  Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their

20  ignored efforts to reinstate the Loan.

21         Between the time Plaintiffs filed their 2019 and 2020 bankruptcies, Plaintiffs were engaged

22  in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused

23  Notices of Trustees Sale to be posted on the Property. Plaintiffs had tenants in the property, who

24  after seeing these postings, ceased making their rental payments for fear that the house would be

25  foreclosed and they would need to relocate.

26         Plaintiffs demanded a reinstatement amount with instructions on where to overnight the

27  payment, only to find out that after years of negotiating to negotiate a comprehensive settlement

28

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahaolii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahaolii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahaolii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahaolii asked about putting the amount due on the back of the loan but Mr. Kahaolii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

36

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiffs received a reinstatement quote from SN Servicing dated December 14, 2020 the they soon realized was inaccurate and included mystery charges. It reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee. As a result of this inaccurate reinstatement quote provided at the eleventh hour, the foreclosure sale moved forward and Plaintiffs were forced to file their second bankruptcy to save their home.

As an actual and proximate result of Defendants' conduct, Plaintiffs suffered immense emotional distress and anxiety. The actions of Defendants forced Plaintiffs into bankruptcies to save the Property which severely damaged their credit. As a result of their damaged credit and the bankruptcies, Plaintiffs were also denied loans and deprived of the ability to refinance, including in March of 2020, June of 2020, March of 2021, and May of 2021. Plaintiffs were also forced to

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1    pursue the instant litigation and incur the associated expenses.

2    Investigation and discovery are continuing. Plaintiffs reserve the right to amend or

3    supplement this response at any time up to and including at the time of trial.

4

5    DATED: September 9, 2022                    Respectfully submitted,

6                                               SHAPERO LAW FIRM, PC

7

8    _____

9                                               Sarah Shapero, Esq.
                                                Stephanie Warden, Esq.
10                                              Attorney for Plaintiffs,
                                                TIMOTHY S. BOSTWICK,
11                                              and MICHELE L. NESSIER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL
INTERROGATORIES, SET ONE

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

1

2

## **VERIFICATION**

3      I, TIMOTHY S. BOSTWICK, am a named Plaintiff in the above-entitled action.  I have

4  read the foregoing "PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO

5

6  DEFENDANT SN SERVICING CORP'S  SPECIAL INTERROGATORIES, SET ONE" and

7  know the contents thereof.  The same is true of my own knowledge, except as to those matters

8  stated upon information and belief, and as to those matters, I believe them to be true.

9      I declare under penalty of perjury under the laws of the State of California that the foregoing

10 is true and correct.  Executed on September 12 , 2022  in  San Francisco      , California.

11

12                         _Timothy S. Bostwick_

13                         TIMOTHY S. BOSTWICK

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF TIMOTHY BOSTWICK'S FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL
INTERROGATORIES, SET ONE

Doc ID: 8945e23e445038df2a6aac3d589eb59fef7636bf

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT C



1   Sarah Shapero (Bar No. 281748)
    100 Pine Street, Ste. 530
2   San Francisco, CA 94111
    Telephone:   (415) 293-7995
3   Facsimile:   (415) 358-4116

4   Attorneys for Plaintiffs,
    TIMOTHY S. BOSTWICK,
5   and MICHELE L. NESSIER,

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  TIMOTHY S. BOSTWICK, an individual;      Case No.:  3:21-CV-02560-LB
12  and MICHELE L. NESSIER, individual;

13          Plaintiffs,
                                             **PLAINTIFF MICHELE NESSIER'S**
14                                           **FURTHER RESPONSES TO**
                                             **DEFENDANT SN SERVICING CORP'S**
15          v.                               **SPECIAL INTERROGATORIES, SET**
                                             **ONE**
16

17  SETERUS, INC., a business entity; US
    BANK, N.A., a business entity; SN
18  Servicing CORP., a business entity, and
    DOES 1 through 10, inclusive
19

20

21          Defendants.

22

23

24  PROPOUNDING PARTY: Defendant, SN SERVICING CORPORATION

25  RESPONDING PARTY: Plaintiff, MICHELE NESSIER

26  SET NUMBER: ONE (1) (FURTHER RESPONSES)

27

28                                  1

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

## **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

The responding party has not fully completed investigation of the facts, discovery, or trial preparation relating to this case.  The only basis of the responses contained herein are information and documents presently available to and specifically known to the responding party.  The responding party anticipates that further discovery, independent investigation, legal research, and analysis will supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions.  Additional information obtained may lead to substantial additions, changes, or variations from the contentions set forth in these responses.  The following discovery responses are given without prejudice to the responding party's right to produce evidence or facts subsequently attained.

If further investigation reveals additional information, responding party reserves the right to change any responses to this discovery request.  The responses herein are made in good faith to supply as much specific, factual information that is presently known by responding party.  Responding party repudiates any prejudices resulting from these responses in relation to further discovery.

Responding Party objects to this discovery as improperly propounded under the California Rules of Civil Procedure in an action governed by the Federal Rules of Civil Procedure and provides these responses without waiver of said objection.

Responding Party objects to each and every interrogatory to the extent that it seeks the disclosure of attorney-client privileged information, and Responding Party asserts the attorney-client privilege with respect to each such interrogatory.

Responding Party objects to each and every interrogatory to the extent that it seeks the discovery of information protected by the attorney work-product doctrine, and asserts the attorney-work product doctrine with respect to each such interrogatory.

Plaintiff, MICHELE NESSIER, responds further as follows:

## **SPECIAL INTERROGATORIES, SET ONE**

## SPECIAL INTERROGATORY NO. 1:

IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY acted in

2

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

a way that was unlawful as defined in the Rosenthal Fair Debt Collection Practices Act as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the

decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahaolii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny"

5

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

1   or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their

2   conversation and reiterated that she would  provide him with a reinstatement quote for the Property.

3   He also confirmed that he would provide the funds no later than January 2, 2021 and that they

4   would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

5          On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that

6   the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are

7   available and Mr. Kahoalii, responded that there were no options because "foreclosure means that

8   all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on

9   the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because

10  the lender would not allow it.

11         A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which

12  Plaintiffs' daughter found shortly thereafter.

13          On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger.

14  Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer

15  with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing

16  attorney for bankruptcy".

17         Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself

18  after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a

19  sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the

20  Loan current and restore it as a performing loan for the noteholder and requested a phone call at

21  her earliest convenience given the looming sale date.

22         Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing

23  again. Mr. Kahoalii informed him that the account is owned by a private investment company and

24  there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as

25  the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner

26  and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff

27  Bostwick contact Ghidotti Berger again.

28

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY acted in a way that was unfair as defined in the Rosenthal Fair Debt Collection Practices Act as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer

7

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that

8

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY all facts that Support YOUR contention that Propounding Party acted fraudulently as defined in the Rosenthal Fair Debt Collect Practices Act as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the aforementioned objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's

PLAINTIFF MICHELE NESSIER'S  FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL INTERROGATORIES, SET ONE

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and tha they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that

14

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this

15

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 4:**

      IDENTIFY all facts that support YOUR contention that PROPOUNDING PARTY violated the Rosenthal Fair Debt Collection Practices Act, as alleged in Paragraph 87 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

      Objection. This interrogatory as phrased is argumentative in that it improperly requires the adoption of an assumption in order to respond insofar as Paragraph 87 of the operative complaint alleges in pertinent part that: "Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent debt collection practices…". This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

      Subject to and without waiving the foregoing objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

      In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

16

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the

17

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and

18

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

 On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner

PLAINTIFF MICHELE NESSIER'S  FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL INTERROGATORIES, SET ONE

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Shortly thereafter, Defendant SN Servicing was added as a defendant to the instant action. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY each time the PROPERTY has been used by YOU for a family vacation as alleged in Paragraph 88 of the COMPLAINT, during the period of time from January 1, 2018 to December 31, 2021?

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

Objection. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as to the term "family vacation". This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  Responding Party cannot recall the specific dates or every instance in which the Property was used as for a family vacation between January 1, 2018 to December 31, 2021. To the best of Responding Party's knowledge: Plaintiffs occupied the property for a total of approximately three months throughout the course of the year in 2021; Responding Party occupied the property between

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

approximately May 2020 to September 2020; Responding Party occupied the property between approximately January of 2019 to September of 2019. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 6:**

IDENTIFY every COMMUNICATION YOU initiated with PROPOUNDING PARTY that YOU allege took place during the period from December 2018 through January 2021.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Objection. This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope, particularly given the expansive definitions of the specially-defined terms "YOU" and "PROPOUNDING PARTY" which would include all communications between counsel and representatives including throughout the bankruptcy proceedings. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustee Sale to be posted on the Property. Plaintiffs demanded that attorney Stolzman provide a reinstatement amount with instructions on where to overnight the payment.

June 19, 2020, there was a conversation with attorney Bryant Jacquez at Ghidotti Berger. On July 15, 2020 Responding Party remitted payment to Propounding Party. On August 15, 2020 Propounding Party returned the check.

21

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

22

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again and he suggested that Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020.

Responding Party's prior counsel and representatives in bankruptcy had communications with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates and are other details are not within Responding Party's knowledge and are likely contained in Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY every COMMUNICATION PROPOUNDING PARTY initiated with YOU that YOU allege took place during the period from December 2018 through January 2021.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Objection. This interrogatory is oppressive and burdensome as it is overly broad and/or indefinite as to time and scope, particularly given the expansive definitions of the specially-defined terms "YOU" and "PROPOUNDING PARTY" which would include all communications between counsel and representatives including throughout the bankruptcy proceedings. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory seeks information beyond the permissible scope of discovery as it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the terms, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as

23

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

follows:  To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustee Sale to be posted on the Property. Plaintiffs demanded that attorney Stolzman provide a reinstatement amount with instructions on where to overnight the payment.

June 19, 2020, there was a conversation with attorney Bryant Jacquez at Ghidotti Berger. On July 15, 2020 Responding Party remitted payment to Propounding Party. On August 15, 2020 Propounding Party returned the check.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again and he suggested that Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020.

Responding Party's prior counsel and representatives in bankruptcy had communications with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates and are other details are not within Responding Party's knowledge and are likely contained in Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 8:**

IDENTIFY every attempt by PROPOUNDING PARTY, during the period from December 2018 through January 2021, to collect the LOAN.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

Objection. This interrogatory seeks information more readily available to Propounding Party, therefore to force responding party to respond would result in undue burden and oppression. This interrogatory calls for a legal conclusion. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

term, as this specially-defined term is unintelligible in the context of this interrogatory.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  To the best of Responding Party's knowledge: Between the time Plaintiffs filed their 2019 and 2020 bankruptcy, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property. Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would  provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that

PLAINTIFF MICHELE NESSIER'S  FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL INTERROGATORIES, SET ONE

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it. Then, a "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiff Bostwick received correspondence from SN Servicing dated December 14, 2020. SN Servicing's correspondence reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee.

Responding Party's prior counsel and representatives in bankruptcy had communications

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

with Propounding Party and/or Propounding Party's attorneys, though the entirety of those dates and are other details are not within Responding Party's knowledge and are likely contained in Propounding Party's records. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 9:**

Do YOU contend that YOU have been injured by PROPOUNDING PARTY?

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

Objection. This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Yes. Investigation and discovery are ongoing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

**SPECIAL INTERROGATORY NO. 10:**

If YOU contend that YOU have been injured by PROPOUNDING PARTY, please IDENTIFY all facts in support of that contention.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as the term "injured". This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. This interrogatory calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated: "The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcies, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property. Plaintiffs had tenants in the property, who after seeing these postings, ceased making their rental payments for fear that the house would be foreclosed and they would need to relocate.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836 and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger.

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiffs received a reinstatement quote from SN Servicing dated December 14, 2020 the they soon realized was inaccurate and included mystery charges. It reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee. As a result of this inaccurate reinstatement quote provided at the eleventh hour, the foreclosure sale moved forward and Plaintiffs were forced to file their second bankruptcy to save their home.

As an actual and proximate result of Defendants' conduct, Plaintiffs suffered immense emotional distress and anxiety. The actions of Defendants forced Plaintiffs into bankruptcies to save the Property which severely damaged their credit. As a result of their damaged credit and the bankruptcies, Plaintiffs were also denied loans and deprived of the ability to refinance, including in March of 2020, June of 2020, March of 2021, and May of 2021. Plaintiffs were also forced to pursue the instant litigation and incur the associated expenses.

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Investigation and discovery are continuing. Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

///

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY all facts in support of YOUR contention that the reinstatement quote received on December 14, 2020 was "incorrect with mystery charges and missing bankruptcy payments" as set forth in Paragraph 98 of the COMPLAINT.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet.

Objection. This interrogatory is vague and ambiguous as to the term "IDENTIFY" so as to make response impossible without speculation as to the meaning of the term, as this specially-defined term is unintelligible in the context of this interrogatory. This interrogatory is vague and ambiguous as the term "injured". This interrogatory calls for a legal conclusion and is premature at this stage given that Propounding Party has not responded to Plaintiffs' discovery yet. This interrogatory calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: Plaintiffs have a home mortgage loan (the "Loan") secured by the property located at 14049 Skislope Way, Truckee, CA 96161 ("Property"). Defendant Seterus Inc. ("Seterus") was the servicer of the Loan prior to Defendant SN Servicing Corporation ("SN Servicing") taking over the servicing in January of 2019.

In a letter dated December 12, 2018, Defendant Seterus represented to Plaintiffs that as of January 7, 2019, Defendant Seterus would no longer be servicing the Loan and would no longer accept payments at and beyond that date. Specifically, Defendant Seterus's correspondence stated:

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

"The servicing of your mortgage loan is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In the December 12, 2018 letter, Defendant Seterus said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

In a letter dated December 17, 2018, Defendant Seterus represented to Plaintiffs that their loss mitigation request had been denied and that Plaintiffs have thirty (30) days to appeal the decision with Defendant Seterus. Specifically, Defendant Seterus noted that it must receive the appeal request and associated documentation within thirty days from the date of the letter.  Thirty days from said letter fell on January 16, 2019.

Moreover, in the December 17, 2018 letter, Defendant Seterus represented to Plaintiffs that they must continue making payments to Defendant Seterus. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to Seterus." The December 17, 2018 letter, Defendant said "[t]his letter should not be construed as a waiver of our rights or the loan owner's rights under the loan documents and any state or federal laws to collect amount owed on your loan" [sic].

Also, in the December 17, 2018 letter, Defendant Seterus stated, "[b]ecause your loan is in default at this time, we may continue with collection efforts," thereby causing Plaintiffs to believe that whether the Loan is in default impacted whether Defendant Seterus will or "may" continue its efforts to collect on it. Finally, in the December 17, 2018 letter, Defendant Seterus noted that "You may have other options to avoid foreclosure" and invited Plaintiffs to contact Defendant Seterus at 866-570-5277 to see how they could help.

Although some of this conflicting information suggested that Defendant SN Servicing would be responsible for servicing Plaintiffs' Loan in January of 2019, the correspondence that followed a few days later instructed Plaintiffs to continue sending all payments and directing any

34

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

inquiries to Seterus, among other confusing and contradictory representations. Further confounding the issue was the fact that Defendant SN Servicing did not contact Plaintiffs or send any introductory correspondence to Plaintiffs, which may have helped shed light on this incredibly unclear and stressful situation.

Defendants, through their acts and omissions, caused Plaintiffs to be reasonably confused and misled as to the status of the Loan and the respective role and involvement of Defendants, and that they were obliged to continue making payments on the Loan to Defendant Seterus beyond the date on which servicing of the Loan was to be transferred as Defendant SN Servicing. This also caused Plaintiffs to reasonably believe that they had more time to apply for other foreclosure alternatives than they actually had.

These representations caused Plaintiffs to be confused as to whom they should make payments as well as their ability to apply for loss mitigation options which would significantly impact their debt obligations.  When Plaintiffs finally received communications, the foreclosure sale was only days away. Left with no other alternative, Plaintiffs were then forced to declare Bankruptcy in late 2019 so they might save their home and seek court intervention regarding their ignored efforts to reinstate the Loan.

Between the time Plaintiffs filed their 2019 and 2020 bankruptcies, Plaintiffs were engaged in settlement negotiations to resolve the dispute. During said negotiations, SN Servicing caused Notices of Trustees Sale to be posted on the Property. Plaintiffs had tenants in the property, who after seeing these postings, ceased making their rental payments for fear that the house would be foreclosed and they would need to relocate.

Plaintiffs demanded a reinstatement amount with instructions on where to overnight the payment, only to find out that after years of negotiating to negotiate a comprehensive settlement involving beneficiary US Bank as well as Defendant SN Servicing, the individual with whom Plaintiffs were engaged in these negotiations who was acting or purporting to act on behalf of Defendants disclosed that he was in fact not authorized to do so.

On December 12, 2020, Plaintiff Bostwick called Defendant SN Servicing at 800.603.0836

35

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

and was informed that customer service couldn't help him. He was referred to Jordan Kahoalii was the "Case officer for bankruptcy" and was the only one who deals with foreclosures. Plaintiff Bostwick promptly attempted to contact Mr. Kahaolii using the information provided by customer service (extension 2691). However, after numerous attempts and voicemails, Plaintiff Bostwick was not able to get in touch with Mr. Kahaolii.

On December 15, 2020, Plaintiff Bostwick spoke with Shawnee Herring at Ghidotti Berger. She informed him that could not find a Notice of Default for the case. Plaintiff Bostwick said he was having trouble reaching Jordan at SN Servicing and she informed him that SN Servicing was having trouble with their phones. She provided an estimated reinstatement amount of $77,000 and informed him that she would order quote from SN Servicing and they would send it via mail since they could not email it. She further advised that they must pay the amount demanded "to the penny" or the payment won't be accepted. Plaintiff Bostwick emailed Ms. Herring to confirm their conversation and reiterated that she would provide him with a reinstatement quote for the Property. He also confirmed that he would provide the funds no later than January 2, 2021 and that they would cancel the Trustee Sale that was presently scheduled for January 4, 2021.

On December 16, 2020, Plaintiff Bostwick spoke with Jordan Kahoalii, who was aware that the quote was ordered by Ghidotti Berger. Plaintiff Bostwick asked what options to foreclosure are available and Mr. Kahoalii, responded that there were no options because "foreclosure means that all your legal options have been exhausted." Mr. Kahoalii asked about putting the amount due on the back of the loan but Mr. Kahoalii said that was not an option due to the foreclosure and because the lender would not allow it.

A "Notice to Tenant" dated December 18, 2020 was posted on the Property, which Plaintiffs' daughter found shortly thereafter.

On December 18, 2020, Plaintiff Bostwick spoke with Jeremy Romero at Ghidotti Berger. Mr. Romero informed Plaintiff that Bryant Jaquez, who had been their prior contact, was no longer with the firm and he referred Plaintiff to Erica Loftis, whom he referred to as the "managing attorney for bankruptcy".

36

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

Later on December 18, 2020, Plaintiff Bostwick emailed Erica Loftis to introduce himself after his conversation with Mr. Romero and informing her of the Notice of Trustee's Sale setting a sale date of January 4, 2021. He further informed her that wanted to discuss options to bring the Loan current and restore it as a performing loan for the noteholder and requested a phone call at her earliest convenience given the looming sale date.

Later on December 18, 2020, Plaintiff Bostwick spoke with Mr. Kahoalii at SN Servicing again. Mr. Kahoalii informed him that the account is owned by a private investment company and there was no lender in the picture and the lien was held by US Bank N.A. Chalet Series III Trust as the entity that holds owners' shares. He further stated that Preston Ridge Partners is the note owner and retained SN Servicing as the servicer. Mr. Kahoalii unhelpfully suggested the Plaintiff Bostwick contact Ghidotti Berger again.

On December 21, 2020, Plaintiffs received a reinstatement quote from SN Servicing dated December 14, 2020 the they soon realized was inaccurate and included mystery charges. It reflected a total amount of $104,935 which included: Attorney's Fees of $2100; Prior Servicer Corp. Adv. of $3805; Miscellaneous fees of $3495. Further, the amount did not reflect any of the Loan payments made by Plaintiffs to the bankruptcy trustee. As a result of this inaccurate reinstatement quote provided at the eleventh hour, the foreclosure sale moved forward and Plaintiffs were forced to file their second bankruptcy to save their home.

As an actual and proximate result of Defendants' conduct, Plaintiffs suffered immense emotional distress and anxiety. The actions of Defendants forced Plaintiffs into bankruptcies to save the Property which severely damaged their credit. As a result of their damaged credit and the bankruptcies, Plaintiffs were also denied loans and deprived of the ability to refinance, including in March of 2020, June of 2020, March of 2021, and May of 2021. Plaintiffs were also forced to pursue the instant litigation and incur the associated expenses.

Investigation and discovery are continuing.   Plaintiffs reserve the right to amend or supplement this response at any time up to and including at the time of trial.

///

PLAINTIFF MICHELE NESSIER'S  FURTHER RESPONSES TO DEFENDANT SN SERVICING CORP'S  SPECIAL INTERROGATORIES, SET ONE

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

1

2    DATED: September 9, 2022                    Respectfully submitted,

3                                               SHAPERO LAW FIRM, PC

4

5                                               _____

6                                               Sarah Shapero, Esq.
                                                Stephanie Warden, Esq.
7                                               Attorney for Plaintiffs,
                                                TIMOTHY S. BOSTWICK,
8                                               and MICHELE L. NESSIER,

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      38

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3

1

2
### **VERIFICATION**

3       I, MICHELE NESSIER, am a named Plaintiff in the above-entitled action.  I have read the

4  foregoing "PLAINTIFF MICHELE NESSIER'S FURTHER RESPONSES TO DEFENDANT SN

5  SERVICING CORP'S SPECIAL INTERROGATORIES, SET ONE" and know the contents

6  thereof.  The same is true of my own knowledge, except as to those matters stated upon information

7  and belief, and as to those matters, I believe them to be true.

8
       I declare under penalty of perjury under the laws of the State of California that the foregoing

9
10  is true and correct.  Executed on September 12  , 2022  in  San Francisco       , California.

11

12                                                                   _____
13                                                                   MICHELE NESSIER

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                       39

Doc ID: 613872bede21b7113d0491d6830dd474ca62ebc3