Sarah Shapero (Bar No. 281748)
SHAPERO LAW FIRM, PC
100 Pine Street, Ste. 530
San Francisco, CA 94111
Telephone:   (415) 293-7995
Facsimile:    (415) 358-4116

Attorneys for Plaintiffs,
TIMOTHY S. BOSTWICK,
and MICHELE L. NESSIER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>SETERUS, INC., a business entity; US BANK, N.A., a business entity; SN SERVICING CORP., a business entity, and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO.: 3:21-cv-02560-LB<br>Action Filed: January 22, 2019<br><br>Assigned for All Purposes to Hon. Laurel Beeler<br><br>**JOINT [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial Date:   December 18, 2023 |

**FINDINGS OF FACT**

1. In 1994, Plaintiffs Timothy Bostwick and Michele Nessier ("Plaintiffs") purchased the real property located at 340 Dorantes Avenue, San Francisco, CA 94116 (the "San Francisco Property");

2. At all relevant times, Plaintiffs have resided in the San Francisco Property as their principal residence;

3. In 1999, Plaintiffs purchased the property located at 14049 Skislope Way, Truckee, California 96161 (the "Truckee Property");

4. In 2013, Plaintiffs sought to refinance and secure more favorable terms and a lower interest rate on the loan secured by the Truckee Property.

5. In connection with the refinance loan, Plaintiff Nessier communicated telephonically with an agent of Bank of America.

6. On or about June 20, 2013, Plaintiffs obtained a loan in the amount of $403,350.00 by executing a promissory note ("Note");

7. The Note was secured by a recorded Deed of Trust ("DOT") (obligations under the Note and DOT are collectively referred to as the "Loan");

8. The DOT pledged real property located at 14049 Skislope Way, Truckee, California 96161 as collateral for repayment of the Note;

9. In 2014, Plaintiffs rented the Truckee Property "due to having incurred financial difficulties with [their] business that left [them] with almost no income for several years."

10. In May of 2016, Bank of America, NA ("BANA") transferred servicing rights in the Loan to Defendant Seterus, Inc. ("Seterus").

11. Plaintiffs were in default on payments under the Loan beginning in April 2017; Plaintiffs made no payment on the Loan from April 2017 through December 2018;

12. On or about December 7, 2017, Plaintiffs formed AMI, Staging, LLC;

13. On or about July 27, 2018, a Notice of Default ("NOD") was recorded against

2

the Subject Property by then Trustee and non-party to this action, PLM Loan Management Services, Inc. (the "Trustee"), stating that Plaintiffs were in default of the Loan as of April 1, 2017;

14. On or around October 30, 2018, the Trustee recorded a Notice of Trustee's Sale against the Truckee Property due to Plaintiffs' default on the Loan. The Notice of Trustee's Sale scheduled a trustee's sale to occur on November 26, 2018;

15. On November 9, 2018, Plaintiffs called Defendant Seterus regarding a modification.

16. SETERUS sent three denial letters to Plaintiff dated November 21, 2018, November 28, 2018 and December 17, 2018.

17. On November 23, 2018, Plaintiff Bostwick called Seterus and inquired into the status of his request for a loan modification and to see if the trustee's sale was still scheduled for November 26, 2018 and Plaintiff Bostwick was informed that it was still scheduled for sale on November 26, 2018;

18. Later on November 23, 2018, the foreclosure auction for the Truckee Property was postponed to January 15, 2019;

19. On or about December 12, 2018, Defendant Seterus sent Plaintiffs a letter titled "Notice of Servicing Transfer"

20. The loan modification was ultimately denied in writing on or around December 17, 2018.

21. In a letter dated December 17, 2018, Defendant SETERUS represented to Plaintiffs that Defendant SETERUS denied their loss mitigation request and that Plaintiffs have thirty (30) days to appeal the decision with Defendant. Specifically, Defendant SETERUS said "[if] you believe your request for assistance has been wrongly denied, you may appeal this decision. Your appeal request must be in writing, provide evidence to support why the denial was in error, and be received by

3

[Defendant SETERUS] no later than 30 days from the date of this letter".   Moreover, in the December 17, 2018 letter, Defendant SETERUS represented to Plaintiffs that they must continue making payments to Defendant SETERUS. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to [Defendant ]". The 12/17/18 letter stated that "You may have other options to avoid foreclosure."

22. In a letter dated December 12, 2018, Defendant said "[t]he servicing of [the Loan] is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your [Loan] payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In this letter, Defendant said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

23. In January 2019, servicing of the Loan was transferred to SN from Defendant SETERUS INC ("Seterus");

24. Timothy Bostwick filed bankruptcy in the Northern District of California on January 7, 2019 as case number 19-30021;

25. On or about January 22, 2019, Plaintiffs commenced this lawsuit

26. On or about February 1, 2019, Plaintiff Bostwick filed a "Statement of Financial Affairs" in his bankruptcy case;

27. On or about July 19, 2019, Plaintiff Bostwick filed an amended "Schedule A/B" in his bankruptcy case;

28. U.S. Bank Trust National Association as Trustee of Chalet Series III Trust filed a Proof of Claim, No. 6-1 in the Bostwick bankruptcy claiming pre-petition arrears of $57,108.36 and a total secured claim of $417,248.04.

29. Bostwick confirmed a Chapter 13 Plan of Reorganization on August 22, 2019.

30. On October 26, 2020, Plaintiff Bostwick's bankruptcy case was dismissed, pursuant to his request;

31. SN Servicing was not named as a party to this lawsuit until March of 2021.

32. On or around November 18, 2020, SN Servicing caused a Notice of Trustee's Sale to be recorded against the Property with a sale date of January 4, 2021.

33. In December 2020, Plaintiff Bostwick began contacting Defendant SN to ascertain their options to prevent foreclosure and request a reinstatement quote.

34. On or around December 11, 2020, SN Servicing provided Plaintiff BOSTWICK with Jordan Kahoalii's contact information.

35. On or around December 14, 2020, SN sent Plaintiff a reinstatement quote indicating that Plaintiffs owed $104,935.39 to reinstate the loan.

36. Michelle Nessier filed bankruptcy in the Northern District of California on December 27, 2020 as case number 20-31026;

37. Nessier scheduled the SN Servicing claim in an amount of $447,255 in Schedule D of her bankruptcy petition.

38. On December 27, 2020, Plaintiff Nessier filed a "Statement of Your Currently Monthly Income" in her bankruptcy case;

39. On January 25, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case;

40. On February 10, 2021, Plaintiff Nessier filed a "Status Conference Statement" in her bankruptcy case;

41. On March 1, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case;

42. On March 25, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case;

43. On March 25, 2021, U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust filed a Proof of Claim, No. 8-1 in the total amount of

JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

$449,025.69 and a pre-petition arrears as of December 27, 2020 in the amount of $105,039.48.

44. On April 9, 2021, Plaintiff Nessier filed a "Proposed Combined Plan of Reorganization and Tentatively Approved Disclosure Statement" in her bankruptcy case;

45. The confirmed Chapter 11 Plan paid the full amount of SN Servicing's claim but extended the maturity date out to 480 months or 40 years;

46. On July 12, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case;

47. On July 12, 2021, Plaintiff Nessier filed a second "Summary of Financial Status" in her bankruptcy case;

48. On or about February 21, 2022, Plaintiffs formed a corporation named AMI, Staging, Inc.

49. As of September 13, 2023, and the present, AMI Staging, LLC is currently a "suspended" entity by the California Secretary of State

## CONCLUSIONS OF LAW

1. The Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") was enacted to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Civ. Code § 1788.1, subd. (b).

2. To prevail on a claim for a violation of the Rosenthal Act, a plaintiff must allege and prove that: (1) the plaintiff is a "debtor"; (2) the debt is a "consumer debt"; (3) the defendant is a "debt collector"; and (4) the defendant violated a provision of the Rosenthal Act. *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11.

3.  The Rosenthal Act makes a variety of different debt collection activities unlawful.  Pertinent to this case, Civil Code section 1788.17 makes it a violation of the Rosenthal Act to violate sections 1692b through 1692j of the Federal Fair Debt Collection Practices Act (the "FDCPA").  Civ. Code § 1788.17.

4.  Plaintiffs contend that the Defendants violated the FDCPA in the following three particulars: First, using false, deceptive, or misleading representations or means in connection with collection of a debt (15 U.S.C. § 1692e); Second, the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C.§ 1692e(10)); and third, using unfair or unconscionable means to collect or attempt to collect any debt (15 U.S.C. § 1692f)

5.  The FDCPA states: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(A) the false representation of—the character, amount, or legal status of any debt.   15 U.S.C. § 1692e(2)(A).

6.  Whether the debt collector's action is a violation false or misleading, must be determined from the prospective of the least sophisticated consumer or debtor.  Wilhelm v. Credico, Inc., 519 F.3d 416 (8th Cir. 2008); Brown v. Card Serv. Ctr., 464 F.3d 450 (3d Cir. 2006); United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131 (4th Cir. 1996); Pipiles v. Credit Bureau, Inc., 886 F.2d 22, 25–26 (2d Cir. 1989); Crossley v. Lieberman, 868 F.2d 566, 571 (3d Cir. 1989); Swanson v. Southern Oregon Credit Service, 869 F.2d 1222, 1227–1228 (9th Cir. 1988).  The standard does, however, "preserve a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Gonzales v. Arrow Fin. Servs., Inc.* (9th Cir. 2011) 660 F.3d 1055, 1062.  That being said, "[t]he FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar' misinterpretations." *Id*.  The FDCPA is best used to challenge "clear violations

7

rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall for the attorney." *Bailey v. Sec. Nat. Servicing Corp.* (7th Cir. 1998) 154 F.3d 384, 388.

7.  If a plaintiff alleges and proves all of the required elements, the Rosenthal Act provides that any debt collector "shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation."  Civ. Code § 1788.30, subd. (a).  If the violation is done "willfully and knowingly," the debt collector shall also be liable to the "debtor" for a penalty in such amount as the court may allow, which shall not be less than $100 nor greater than $1,000.  *Id.* at subd. (b).

8.  However, a debt collector shall have no civil liability if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation.  Civ. Code § 1788.30, subd. (e).

9.  Likewise, any intentional violation of the Rosenthal Act by the debtor may be raised as a defense by the debt collector, if such violation is pertinent or relevant to any claim or action brought against the debt collector by or on behalf of the debtor.  Civ. Code § 1788.30, subd. (g).  Thus, a debt collector will not be liable to a debtor if the debtor knowingly submits false or inaccurate information, or willfully conceals adverse information bearing upon such person's credit worthiness, credit standing, or credit capacity.  Civ. Code § 1788.20.

DATED: September 14, 2023               SHAPERO LAW FIRM, PC

                                        */s/ Sarah Shapero*
                                        _____
                                        SARAH SHAPERO
                                        Attorneys for Plaintiffs Timothy
                                        Bostwick and Michele Nessier

JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW