Katelyn M.W. Burnett, Esq. (SBN 290812)
GHIDOTTI | BERGER, LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705
Tel: (949) 427-2010
Fax:  (949) 427-2732
Email: kburnett@ghidottiberger.com

MICHAEL R. BROOKS, ESQ. (SBN 167315)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone:  702.385.2500
E-Mail: mbrooks@hutchlegal.com

Attorneys for Defendant SN SERVICING CORPORATION and US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST (erroneously sued as US Bank, N.A.)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, individual, <br><br> Plaintiffs, <br><br> v. <br><br> SETERUS, INC., a business entity; DOES 1 THROUGH 10 INCLUSIVE, <br><br> Defendants. | CASE NO. 3:21-cv-02560-LB <br><br> **DEFENDANTS' SN SERVICING CORPORATION'S SEPARATE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** <br><br> **Trial** <br> Date: December 18, 2023 <br> Time: 8:30 a.m. <br> Courtroom:  B, 15th Floor |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY:**

1. In 1999, Plaintiffs purchased the property located at 14049 Skislope Way, Truckee, California 96161 (the "Truckee Property");

2. On April 29, 2013, Plaintiffs signed and delivered a "Borrower's Certification and Authorization" to Bank of America, NA ("BANA"). Therein, Plaintiffs certified that all information being submitted to BANA in connection with their effort to obtain a refinance loan, including but not limited to, information "on the purpose of the loan," was "true and complete." Plaintiffs further certified that they "made no misrepresentations in the loan application or other documents."

3. On April 29, 2013, Plaintiffs signed and delivered a "Schedule of Real Estate Owned" to BANA. Therein, Plaintiffs represented that the Truckee Property was a "Rental" property and was not "OO" (i.e., Owner-Occupied). Plaintiffs further certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."

4. On June 20, 2013, Plaintiffs signed and delivered a "Uniform Residential Loan Application" to BANA. Therein, Plaintiffs represented that the Truckee Property was an "Investment Property" and not their "Primary Residence" or a "Secondary Residence." Plaintiffs further acknowledged and agreed that: (1) "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability . . . and/or criminal penalties, including, but not limited to, fine or imprisonment or both . . . ."; (2) "the property will be occupied as indicated in this application"; (3) "the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continually rely on the information contained in the application . . . ."; and (4) "I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the [facts provided therein] under the provisions of Title 18, United States Code, Section 1001, et seq."

5. On June 20, 2013, Plaintiffs signed and delivered a "Schedule of Real Estate

Owned" to BANA. Therein, Plaintiffs represented that the Truckee Property was a "Rental" property and used as such "100%" of the time. Plaintiffs further certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."

6. On June 20, 2013, Plaintiffs signed and delivered a "Statement of Facts" to BANA. Therein, they admitted that the Truckee Property is occupied by a "Lessee" and was not occupied by Plaintiffs.

7. At the time Plaintiffs obtained the subject loan, they did not do so primarily for personal, family, or household purposes—particularly since the Truckee Property was an "investment" or "rental" property.

8. In 2014, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $24,500.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $9,723.00 for renting the Truckee Property for that year.

9. In 2015, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

10. In 2016, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

11. On or about December 14, 2016, Plaintiffs signed and delivered a loan modification application to Defendant Seterus. Therein, Plaintiffs admitted that: (1) the Truckee Property is a "rental property"; and (2) the Truckee Property is "Occupied by a tenant as their principal residence," with a lease term of August 1, 2016, through June 30, 2017. As part of this application, Plaintiffs executed a "Rental Property Certification" wherein they certified "under penalty of perjury" that: (1) they

"intend to rent the [Truckee Property] to a tenant or tenants for at least five years following the effective date of [any] mortgage modification"; (2) the Truckee Property is "not [their] secondary residence and [they do] not intend to use the [Truckee Property] as a secondary residence for at least five years following the effective date of [any] mortgage modification" (with the term "secondary residence" being defined as a "second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal, or other basis"). As part of this application, Plaintiffs also signed a "Borrower and Co-Borrower Acknowledgment and Agreement" wherein they certified that: (1) all information in the loan modification application "is truthful"; (2) they understood and acknowledged that "knowingly submitting false information may violate Federal and other applicable law"; (3) they understood that "if it is determined that any of my statements or any information" is "materially false" then Seterus, the United States, or their agents may seeks "remedies available at law and in equity" against Plaintiffs; and (4) "under penalty of perjury . . . all statements" in the modification are "true and correct." The application also contained a section titled "Notice of Borrowers," which provides that, "Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the [loan modification application] are under penalty of perjury. Any misstatement of material fact made in completion of these documents including but not limited to misstatement regarding your occupancy of your property . . . will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud . . . . Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that 'Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the [loan modification program], including the documents and information regarding my eligibility for the program, are true and correct."

12. In 2017, Plaintiffs rented the Truckee Property for at least six months of the year "as a short term rental."

13. In 2018, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,393.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $42,972.00 for renting the Truckee Property for that year.

14. As of November 28, 2018, Plaintiff Bostwick's credit score was 588 and Plaintiff Nessier's credit score was 595.

15. Plaintiff Bostwick admitted that it was "made pretty clear by Seterus" that Defendant SN would not begin servicing the loan until January 7, 2019.

16. Plaintiff Nessier admits that the January 2017 bankruptcy filing was because Plaintiffs were unable to "come to a resolution" with Defendant Seterus

17. Plaintiff Bostwick's January 2019 bankruptcy petition was filed to stop the foreclosure of Plaintiffs' San Francisco Property.

18. Plaintiff Bostwick's January 2019 bankruptcy petition was not filed to stop the foreclosure of the Truckee Property.

19. On or about January 14, 2019, Defendant SN Servicing sent Plaintiffs a letter, explaining that the "servicing of [Plaintiffs'] mortgage loan has been assigned, sold, or transferred." Specifically, the letter explained, "You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Seterus, Inc. to SN Servicing Corporation... effective January 7, 2019." The letter went on to provide Plaintiffs the address and telephone number for Defendant SN Servicing and invited Plaintiffs to call Defendant SN Servicing if they had "any questions relating to the transfer of servicing" of the Loan. The letter closed by reminding Plaintiffs to "Send all payments on or after January 7, 2019" to Defendant SN Servicing.

20. On or about January 14, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that the "servicing of [their] mortgage loan has been transferred

from Seterus, Inc. to SN Servicing Corporation . . . effective January 7, 2019.

21. On or about January 28, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that "SN Servicing Corporation . . . is responsible for servicing and collecting the debt" owed on the loan.

22. In 2019, the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,793.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $45,492.00 for renting the Truckee Property for that year.

23. On or about November 18, 2020 a Notice of Trustee's Sale was recorded in the Official Records of the County of Nevada. The Notice of Trustee's Sale stated that the sale of the property would take place on January 4, 2021 at 12:30 p.m.

24. On or about Friday, December 11, 2020, Plaintiff Bostwick contacted Jordan Kahoalii at SN Servicing to request a reinstatement and payoff quote. He left a voice message for Mr. Kahoalli who then called him back but was unable to reach Plaintiff Bostwick.

25. On or about Monday, December 14, 2020, a reinstatement letter was prepared and mailed to Plaintiffs advising that their total due to reinstate the loan was $104,935.39.

26. On or about Tuesday, December 15, 2020, Plaintiff Bostwick left Mr. Kahoalii another voice message requesting information on whether the past due loan amount could be deferred to the end of the loan as Plaintiff Bostwick had been able to accomplish with another loan in default. Mr. Kahoalii called Plaintiff Bostwick back the same day but was unable to reach him.

27. On or about Wednesday, December 16, 2020, Plaintiff Bostwick left Mr. Kahoalii another voice message. Mr. Kahoalii called Plaintiff Bostwick back again and this time was able to reach him. Mr. Kahoalii advised Plaintiff Bostwick that the past due amount could not be deferred. Mr. Kahoalii informed Plaintiff Bostwick that the amount due to reinstate the loan was $104,935.39 and that the reinstatement letter had been mailed to Plaintiff Bostwick. Plaintiff Bostwick did not express that he believed the reinstatement amount Mr. Kahoalii provided during this call was incorrect.

28. On December 2, 2020, SN Servicing sent a monthly mortgage account statement addressed to

Michelle Nessier which indicated that the outstanding arrears were $102,863.94.

29. On or about Thursday, December 17, 2020, Mr. Bostwick left another voice message requesting a call from Mr. Kahoalii. Mr. Kahoalii called Mr. Bostwick back the same day. Mr. Bostwick inquired again about deferring the past due amount to the end of the loan.

30. Plaintiffs received reinstatement letter in the mail on or about December 20, 2020 that included a reinstatement amount of $104,935.39.

31. The Court finds that there is no evidence of fraud, misleading or inaccurate information in the December 2020 reinstatement quote.

32. Plaintiffs did not contact Defendant SN after receiving the letter to express any concern that the reinstatement amount was incorrect.

33. Plaintiffs were unable to pay $104,935.39 to reinstate the loan.

34. On or about December 27, 2020, Plaintiff Nessier filed a Chapter 11 bankruptcy petition. Therein, she admitted: (1) she has "Short Term Lesses" [sic] because she rents the Truckee Property as "a short-term rental on the website www.airbnb.com"; and (2) she received $27,335.00 in monthly "Rental Income" from renting the Truckee Property for 2020.

35. Plaintiff Nessier stated that her understanding that the reinstatement letter provided to Plaintiffs by Defendant SN was incorrect was based entirely on information received from Plaintiff Bostwick and that she had not been involved in any conversations about the reinstatement quote.

36. In 2020, Plaintiffs rented the Truckee Property for at least six months of the year "as a short term rental."

37. In Plaintiffs' 2020 tax returns, they claimed a "loss" in the sum of $88,258.00 for renting the Truckee Property for that year.

38. On February 10, 2021, Plaintiff Nessier filed a "Status Conference Statement" in her bankruptcy case. Therein, she admitted that: (1) the Truckee Property is "rented as a short-term vacation rental"; and (2) one of Plaintiffs' "main sources of revenue" is "rental income from the Truckee Property."

39. On March 1, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her

bankruptcy case. Therein, she admitted that she was currently receiving $5,661.90 per month in rent for renting the Truckee Property.

40. On March 25, 2021, U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust filed a Proof of Claim, No. 8-1 in the total amount of $449,025.69 and a pre-petition arrears as of December 27, 2020 in the amount of $105,039.48. Plaintiff Nessier did not object to this Proof of Claim.

41. On March 25, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $7,028.42 per month in rent for renting the Truckee Property.

42. On April 9, 2021, Plaintiff Nessier filed a "Proposed Combined Plan of Reorganization and Tentatively Approved Disclosure Statement" in her bankruptcy case. Therein, she admitted: (1) she receives $1,143.37 per month in "Positive Cash Flow" from renting the Truckee Property; and (2) she receives $4,750.00 per month in Rental Income from renting the Truckee Property.

43. The confirmed Chapter 11 Plan paid the full amount of U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust's claim but extended the maturity date out to 480 months or 40 years;

44. On July 12, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $4,830.60 per month in rent for renting the Truckee Property.

45. On July 12, 2021, Plaintiff Nessier filed a "Summary of Financial Status" in her bankruptcy case. Therein, she admitted that she was currently receiving $6,982.25 per month in rent for renting the Truckee Property.

46. In 2021, the Truckee Property was used as a "Rental" property for 219 days and 0 "Personal" days for that year. Plaintiffs received $51,615.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $30,513.00 for renting the Truckee Property for that year.

47. In 2022, Plaintiffs rented the Truckee Property for at least "60% of the year."

48. As of September 13, 2023, and the present, AMI Staging, LLC is currently a "suspended" entity by the California Secretary of State.

49. Plaintiffs' bankruptcy filings did not render them unable to obtain a loan for any of their business entities.

50. Plaintiffs voluntary bankruptcy filings and confirmation of their bankruptcy plans constitute a superseding cause for damages.

51. Plaintiffs have not suffered any emotional distress due to Defendant SN.

**CONCLUSIONS OF LAW**

1. Plaintiffs are not "debtors" within the meaning of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"). *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subd. (h); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 (dismissing claims under the FDCPA and the Rosenthal Act based on fact that the subject loan was secured by a rental property and not the plaintiffs' principal residence).

2. The loan that is the subject of this action is not "consumer debt" because it was not obtained primarily for personal, family, or household purposes. *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v..Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subds. (e), (f); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 (dismissing claims under the FDCPA and the Rosenthal Act based on fact that the subject loan was secured by a rental property and not the plaintiffs' principal residence).

3. Defendant SN is not a "debt collector." *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11; Civ. Code § 1788.2, subd. (c).

4. Defendant SN did not violate any portion of the Federal Fair Debt Collection Practices Act (the "FDCPA"). Civ. Code § 1788.17.

5. Defendant SN did not violate section 1692d of the FDCPA.

6. Defendant SN did not violate section 1692e of the FDCPA.

7. Defendant SN did not violate section 1692f of the FDCPA.

8. Plaintiffs did not suffer any "actual damages" as a result of any alleged violation of the Rosenthal Act by Defendant SN.

9. Any alleged violation of the Rosenthal Act and/or the FDCPA by Defendant SN was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation. Civ. Code § 1788.30, subd. (e).

10. Plaintiffs knowingly submitted false or inaccurate information, and/or willfully concealed adverse information bearing upon their credit worthiness, credit standing, or credit capacity, when they applied for the loan that is the subject of this action and/or when they applied for loan modifications. Civ. Code § 1788.20.

11. Plaintiffs are guilty of unclean hands.

12. The person signing a document bears the responsibility as to the statements made therein. (*Tovar v. Heritage Pac. Fin., LLC (In re Tovar)* (B.A.P. 9th Cir. 2012) 2012 Bankr. LEXIS 3633, at *35-36 ("We are unpersuaded by Tovar's contention that he was not aware of the misrepresentations stated in the Loan Application, or the other documents submitted or contained in his mortgage file. To the extent that there is any validity to his allegations, Tovar nonetheless executed various legal documents and certified that the information made therein was correct and true. This is no different than signing and submitting a bankruptcy petition under the penalty of perjury, regardless of whether the debtor is an individual with limited English proficiency. Ultimately**,** the person signing a document bears the legal responsibility as to the statements made therein").)

13. A superseding cause relieves a defendant from tort liability for a plaintiff's injuries, if  both the intervening act and the results of the act are not foreseeable. "[W]hat is required to be foreseeable is the general character of the event or harm ... not its precise nature or manner of occurrence." (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57–58, 192 Cal.Rptr. 857, 665 P.2d 947.)

14. "Whether an intervening force is superseding or not generally presents a question of fact, but becomes a matter of law where only one reasonable conclusion may be reached. [Citation.]" (*Chanda v. Federal Home Loans Corp.* (2013) 215 Cal.App.4th 746, 756, 155 Cal.Rptr.3d 693;

see also *Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 680–681, 115 Cal.Rptr.3d 590.) *Ash v. N. Am. Title Co.*, 223 Cal. App. 4th 1258, 1274, 168 Cal.  Rptr. 3d 499, 511 (2014).

15. California courts have held that the filing of a bankruptcy may act as a superseding cause of a plaintiffs' damages. *Ash v. North American Title Co.* 223 Cal.App.4th 1258, 1274 (2014).

DATED: _____      _____

JUDGE LAUREL BEELER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Claudia Hanson, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. I am employed with Ghidotti | Berger, LLP whose address is 1920 Old Tustin Avenue, Santa Ana, CA 92705.

On September 28, 2023, I served the foregoing documents described as **Separate [Proposed] Findings of Fact and Conclusions of Law** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**[X]     BY ELECTRONIC FILING** I am familiar with the United States District Court, Northern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the CM/ECF users listed on the attached Service List were served, as indicated.

### (SEE ATTACHED SERVICE LIST)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Proof of service was executed on September 28, 2023, at Santa Ana, California.

_____/s/ Claudia Hanson_____
Claudia Hanson

1

## SERVICE LIST

2

3
4
5
6
7

| Shapero Law Firm, P.C.<br>100 Pine Street, Ste 530<br>San Francisco, CA 94111<br>(415) 273-3504<br>Fax: (415) 358-4116<br>Email: sarah@shaperolawfirm.com | *Attorneys for Plaintiffs,*<br>*Timothy S. Bostwick and*<br>*Michele L. Nessier* |
| --- | --- |
| Michael W. Stoltzman , Jr.<br>The Ryan Firm APC<br>2603 Main Street #1225<br>Irvine, CA 92614<br>(949) 263-1800<br>Email: mstoltzman@theryanfirm.com | *Attorneys for Defendant,*<br>*Seterus, Inc.* |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Separate [Proposed] Findings of Fact and Conclusions of Law