Sarah Shapero (Bar No. 281748)
SHAPERO LAW FIRM, PC
100 Pine Street, Ste. 530
San Francisco, CA 94111
Telephone:  (415) 293-7995
Facsimile:   (415) 358-4116

Attorneys for Plaintiffs,
TIMOTHY S. BOSTWICK,
and MICHELE L. NESSIER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY S. BOSTWICK, an individual; and MICHELE L. NESSIER, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>SETERUS, INC., a business entity; US BANK, N.A., a business entity; SN SERVICING CORP., a business entity, and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO.: 3:21-cv-02560-LB<br>Action Filed: January 22, 2019<br><br>Assigned for All Purposes to Hon. Laurel Beeler<br><br>**PLAINTIFFS' OPENING MEMORANDUM**<br><br>Trial Date:   December 18, 2023 |

1
PLAINTIFF'S OPENING MEMORANDUM

# INTRODUCTION

This is also case where Defendants intentionally created confusion every step of the way in an attempt to ultimately take Plaintiffs' vacation home at foreclosure. Specifically, beginning in 2017, Defendant SETERUS began sending Plaintiff confusing, misleading and deceptive communications regarding loan modifications containing offers that, had Plaintiffs accepted them, would have significantly worsened their financial position.  Thereafter, in 2018, while Plaintiff was applying for a loan modification, a Trustee's Sale was scheduled for Plaintiff's property and, at that same time, Defendant SETERUS transferred servicing of Plaintiffs' loan, creating immense confusion as to whom Plaintiffs were to deal with while their property was simultaneously listed for foreclosure. Defendant SETERUS ultimately denied Plaintiffs' modification because of a $29 increase (1%) in the post-modification payment, an amount that could have easily been remedied. This forced Plaintiff BOSTWICK to file a Chapter 13 bankruptcy to protect his property because of the confusion created by Defendants during the transfer of the loan. Thereafter, Defendant SN Servicing provided Plaintiffs with conflicting information about how to save their property from foreclosure and provided Plaintiffs with inaccurate reinstatement quotes, again, in an attempt to ultimately stop Plaintiffs from exercising their rights to protect their property so that Defendant SN could foreclose on the property.  In order to stop another wrongful foreclosure of their property, Plaintiff NESSIER filed a Chapter 11 bankruptcy. Both of these bankruptcy filings were avoidable if Defendants had not demonstrated a pattern or practice of providing confusing and misleading information to Plaintiffs.  Furthermore, both of these bankruptcy filings damaged Plaintiffs' credit to the extent that they have lost over $1,000,000.00 in personal income since the filings took place. Since bankruptcies can't be "undone" and Plaintiffs are elderly, these black marks have permanently damaged Plaintiffs financial well-being.  As set forth below, Plaintiffs are certain that after a trial on

2
PLAINTIFF'S OPENING MEMORANDUM

the merits, they will show, by a preponderance of the evidence, that both Defendants violated the Rosenthal Act in their dealings with Plaintiffs. Their actions in whole and in part, were systemic, persisted for years, and can't be explained as bona fide error. They were grossly unfair to Plaintiffs.

## STATEMENTS OF FACTS

Plaintiffs Timothy Bostwick and Michele Nessier ("Plaintiffs") purchased the property located at 14049 Skislope Way, Truckee, California 96161 (the "Property") in 1999 to serve as a vacation home. (Joint Finding of Fact, ECF No. 179, No. 3)(hereafter "Joint FOF"). In 2013, Plaintiffs sought to refinance and secure more favorable terms and a lower interest rate. (Joint FOF, No. 4). At the time Plaintiffs obtained the refinance loan, they intended to continue using the Property as a vacation home for their family. (Plaintiff Bostwick and Nessier Trial Testimony). In connection with the refinance loan, Plaintiff Nessier communicated telephonically with an agent of Bank of America. (Plaintiff Nessier Trial Testimony). She did not fill out any part of the application herself other than to sign the document in June of 2013, a couple of months the phone call took place. (Plaintiff Nessier Trial Testimony). Plaintiffs always considered the Property primarily as a vacation home for their family and it was never their understanding that the refinance loan was for any other purpose. Plaintiffs considered the bank-form terminology as meaningful only to the bank. (Plaintiff Bostwick and Nessier Trial Testimony). Between the time Plaintiffs purchased the Property in 1999 until approximately mid-2014, the Property was used almost entirely as a vacation home for their family. (Id.)

In May of 2016, Bank of America, NA ("BANA") transferred servicing rights in the Loan to Defendant Seterus, Inc. ("Seterus"). (Joint FOF, No. 10). In 2017, SETERUS sent Plaintiffs a series of conflicting and redundant letters to Plaintiffs with offers to modify their mortgage. regarding Plaintiff's loan modification efforts. (Exhibits 24-28). Defendant SETERUS began foreclosure proceedings with the recording of a Notice of Default on or around July 27, 2018. (Exhibit 47). Defendant

SETERUS then caused a Notice of Trustee's Sale to be recorded against the property on October 30, 2018 with a sale date of November 26, 2018. (Exhibit 48).

On November 16, 2018, Plaintiff submitted a complete loan modification application to SETERUS. (Exhibit 102). An acknowledgment letter was never sent to Plaintiff after that time. (Exhibit 102). SETERUS discussed the ongoing modification with Bostwick but did not disclose that immediate arrangements were ongoing to sell the property at the very moment when speaking to Bostwick. (Ward Brown servicing notes) SETERUS gave Plaintiffs a date for the trustee sale that was later than the actual date. (Plaintiff Bostwick Trial Testimony). SETERUS sent three denial letters to Plaintiff dated November 21, 2018, November 28, 2018 and December 17, 2018. (Exhibits 102, 30, 32). The two November denial letters did not provide Plaintiffs with a right to appeal the denial. (Exhibit 102 and 30). SETERUS discussed the ongoing modification with Bostwick on November 23, 2018 but didn't inform him that the mod had already been denied on November 21, 2018. (Exhibit 102).

The loan modification was ultimately denied in writing on or around December 17, 2018 based on the post modification principal and interest payment being $29.00 more than the pre-modification principal and interest payment. (Exhibit 102). SETERUS failed to take into consideration Plaintiffs' change in circumstances, namely, increased income, that would have surpassed the $29 shortfall by thousands of dollars. ((Exhibit 102, Plaintiff Bostwick and Nessier Trial Testimony) SETERUS also failed to follow Fanie Mae guidelines (the owner of Plaintiffs' loan) that would have provided simple options to overcome the $29. (Fannie Mae Servicing Guide) Further, in computing the post-modification payment, SETERUS inflated Plaintiffs' principal balance by $70,000. (Plaintiff Bostwick Trial Testimony)

In a letter dated December 17, 2018, Defendant SETERUS represented to Plaintiffs that Defendant SETERUS denied their loss mitigation request and that Plaintiffs had have thirty (30) days to appeal the decision with Defendant. (Exhibit

32). Specifically, Defendant SETERUS said "[if] you believe your request for assistance has been wrongly denied, you may appeal this decision. Your appeal request must be in writing, provide evidence to support why the denial was in error, and be received by [Defendant SETERUS] no later than 30 days from the date of this letter". (Id.) Moreover, in the December 17, 2018 letter, Defendant SETERUS represented to Plaintiffs that they must continue making payments to Defendant SETERUS. Specifically, Defendant said "[a]ll inquiries and monthly payments must be directed to "this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820". The 12/17/18 letter stated that "You may have other options to avoid foreclosure." (Id.)

Plaintiffs did not know who Fannie Mae or Chalet Series III Trust were because SETERUS had not notified them that the loan owner had changed twice. (Plaintiff Bostwick Trial Testimony and absence of entries in Ward Brown servicing notes). Plaintiffs did not understand the reason for the December 17, 2018 denial. (Id.)

In a letter dated December 12, 2018, Defendant represented to Plaintiffs that as of January 7, 2019, Defendant would no longer be servicing the Loan and would no longer accept payments at and beyond that date. (Exhibit 31). Specifically, Defendant said "[t]he servicing of [the Loan] is being transferred, effective January 7, 2019. This means that after this date, a new servicer will be collecting your [Loan] payments from you. Nothing else about your mortgage loan will change. We are now collecting your payments and will stop accepting payments received from you on January 7, 2019". In this letter, Defendant said "Send all payments due on or after January 7, 2019 to SN Servicing Corporation at this address: Chalet Series III Trust, Bank of Texas PO BOX 660820, Dallas, TX 75266-0820".

Plaintiff requested and SETERUS customer service ordered a rush reinstatement letter, however, Defendant SETERUS did not send such letter in a timely manner. (Exhibit 102). On December 31, 2018, Plaintiffs phoned SETERUS

to ask whether the appeal letter should be sent to SETERUS or SN SERVICING given the change in servicers, but SETERUS did not know which entity the appeal should be directed to. (Exhibit 102). Plaintiffs did not know how to appeal the denial and could not determine who had authority to review any appeal. (Plaintiffs' Trial Testimony). The sale of the property was scheduled for January 15, 2019, before the deadline to appeal the denial expired. (Exhibit 102). Since Plaintiffs were unable to get clarity on the appeal and with the sale scheduled on January 15, 2019, Plaintiff BOSTWICK had no option but to file a Chapter 13 bankruptcy on January 7, 2019. (Exhibit 12).

Defendant SETERUS continued to service Plaintiff's loan through January 2019 despite the letter indicating that SN would be the servicer effective January 7, 2019. (Exhibit 102). SETERUS sent incorrect and incomplete records to SN SERVICING which did not verify the records it received from SETERUS. (Trial Testimony from Ward, Fogelman, Kahoalii). As a result, SN SERVICING had no record of Plaintiffs request and denial of a modification, and no record of the appeal period extended to Plaintiffs. SETERUS did not notify SN SERVICING of the denial of the modification or the appeal period (Trial Testimony of Fogelman and Kahoalii).

Plaintiffs filed this lawsuit on January 22, 2019.

Although the successor servicer is required to accept and continue processing pending loan modification requests, SN SERVICING did not inspect the records received from SETERUS for completeness or accuracy. SN SERVICING placed the burden of verification on the borrower to notify it of discrepancies. (Kahoalii trial testimony) SN SERVICING also claims that SETERUS failed to provide it with records of Plaintiffs' modification request, denial, and appeal period. (Fogelman trial testimony) As a result, SN SERVICING did not notify Plaintiffs that they were now handling Plaintiffs' appeal.

On or around November 18, 2020, during the pendency of this lawsuit, Defendant SN Servicing caused a Notice of Trustee's Sale to be recorded against

Plaintiffs' property with a sale date of January 4, 2021. (Exhibit 104). In December 2020, Plaintiff Bostwick began contacting Defendant SN to ascertain what amount would be necessary to reinstate the loan. (Exhibit 108). On or around December 11, 2020, Plaintiff BOSTWICK was told by SN Servicing that the only individual that could provide him a reinstatement quote was an individual named Jordan Kahoalii and he was provided Mr. Kahoalii's contact information. (Exhibit 108; Plaintiff's Trial Testimony). Plaintiff called Mr. Kahoalii numerous times over several days before he was finally able to reach him. (Id.) SN SERVICING did not verify the reinstatement charges that it received from SETERUS. (Fogelman Testimony and Kahoalii). Plaintiffs did not understand how to dispute the accuracy of the reinstatement charges because they did not know how they were generated. (Bostwick Testimony). Plaintiffs were confused about whom (or what department) to speak with about disputing the reinstatement charges. (Bostwick Testimony). Plaintiffs were confused about whether disputing the accuracy of the reinstatement charges would delay foreclosure. (Id.)

Kahoalii deviated from his conventional role to give biased and inaccurate legal and financial advice to Plaintiff Bostwick. Kahoalii did not disclose that he is not an attorney or a financial expert. (Bostwick Testimony) As the SPOC and designated expert on his situation, Plaintiff Bostwick relied on Kahoalii to discuss options to foreclosure. (Id.) But Mr. Kahoalii said that he has never held a bankruptcy title. (Kahoalii testimony) When Plaintiff finally reached Mr. Kahoalii, he told Plaintiffs that they were out of time and options to save the property. (Id.) Plaintiff Bostwick asked Mr. Kahoalii about options to foreclosure but Kahoalii deliberately withheld them. (Id.) Mr. Kahoalii advised Plaintiffs to contact Ghidotti Berger regarding a modification. (Id.)Plaintiffs were confused by Mr. Kahoalii's statement that there was no lender involved with Plaintiff's mortgage loan and that US Bank was not a lender. (Id.)

Desperate to get a reinstatement quote and save his property from foreclosure,

Mr. Bostwick called Ghidotti Berger on December 15, 2020 and spoke with an individual named Shawnee Herring. (Id.) Ms. Herring told Mr. Bostwick that the reinstatement amount was approximately $77,000. (Id.) Plaintiffs had these funds available to reinstate. Bostwick asked Herring for a formal reinstatement quote for the property so that Plaintiff could reinstate the loan. (Id.)

On or around December 14, 2020, SN sent Plaintiff a reinstatement quote indicating that Plaintiffs owed $104,935.39 to reinstate the loan. (Exhibit 105). The true amount to reinstate the loan in December 2020 was approximately $77,000.00 as was confirmed later during Plaintiff's Chapter 11 bankruptcy. (Bostwick Testimony). As a result of the inflated reinstatement amount, Plaintiff NESSIER was forced to file a Chapter 11 bankruptcy in order to stop the sale of Plaintiff's property. (Exhibit 16). As a result of Defendants' actions, Plaintiffs had to file two bankruptcies that resulted in over $1,000,000 in personal income lost for Plaintiffs. (Exhibit 107).

Defendant SETERUS and SN SERVICING acted unfairly toward Plaintiffs. Their actions in whole and in part, were systemic, persisted for years, and can't be explained as bona fide error. In 2017, SETERUS sent Plaintiffs a series of conflicting and redundant letters to Plaintiffs with offers to modify their mortgage. regarding Plaintiff's loan modification efforts. (Exhibits 24-28). The offers were based on large, unexplained, and unjustifiable step-ups in principal amounts not authorized by the terms of Plaintiffs' mortgage or permitted by law, and were thus unconscionable. (Bostwick trial testimony) SETERUS evaluated Plaintiffs' home as a primary residence when it was in fact a second home. During the modification review, for example, SETERUS rescheduled the trustee sale multiple times. Plaintiffs believed that this foreclosure postponement would extend to the end of the appeal period. This may have been a reasonable inference for Plaintiffs and the least sophisticated debtor to make, but it would not have been actionable since SETERUS was not legally barred from dual tracking on a second home and could

have sold the home at any time. SN SERVICING failed to take the least effort to verify that the records it received from SETERUS were accurate and complete. Both Defendants abused their discretion and power in their treatment of Plaintiffs and in the vast disparity of bargaining power that they held over them. Plaintiffs' mortgage was just one of hundreds of thousands of mortgages serviced by Defendants. As desperate homeowners struggling to hold onto their home, Defendants held their fate in their corporate hands. They was free to increase the loan principal with fees that they alone calculated and did not disclose to Plaintiffs. It would have cost Defendants nothing to approve Plaintiffs' modification or provide an accurate reinstatement quote. Their failures cost Plaintiffs everything.

## LEGAL ARGUMENT

Plaintiffs bring this action against Defendants based on 15 U.S.C. § 1692, et seq., commonly known as the Fair Debt Collection Practices Act ("Act"). In passing this Act, Congress stated its purpose was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection practices." To this end, the Act expressly prohibits debt collectors from engaging in numerous specific acts or practices and also mandatorily requires debt collectors in attempting to collect consumer debts for others to affirmatively perform specific acts. 15 U.S.C. § 1692a.The Act defines a "debt collector" to include any person who uses any instrumentality of interstate commerce, the mails in any business, the principle purpose of which business is the collection of any debt, directly or indirectly, owed, due, or asserted to be owed or due to another. The Act also defines a "debt collector" to include any person who regularly collects a debt owed to another. Defendants are "debt collectors" within the meaning of the Act. 15 U.S.C. § 1692a. The Act defines "debt" to mean any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the

money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligations have been reduced to judgment. The obligation which Plaintiff is alleged to owe is a "debt" within the meaning of the Act. 15 U.S.C. § 1692a. The Act defines "consumer" as any person obligated or allegedly obligated to pay any debt. Plaintiffs are "consumers" within the meaning of the Act. 15 U.S.C. § 1692a.

Plaintiffs contend that the Defendants violated the Act in the following three particulars: First, using false, deceptive, or misleading representations or means in connection with collection of a debt (15 U.S.C. § 1692e); Second, the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C.§ 1692e(10)); and third, using unfair or unconscionable means to collect or attempt to collect any debt (15 U.S.C. § 1692f) The Act states: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(A) the false representation of—the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). Where Defendant SN failed to provide Plaintiffs with an accurate reinstatement quote and, instead, demanded amounts not due, it violated this section. McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 245-247 (3rd Cir. 2014).

The Act states A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(A) the false representation of—the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). Where Defendant Seterus failed to provide Plaintiffs with accurate information regarding the debt throughout December 2018 and January 2019, it violated this section. Whether the debt collector's action is such a violation, must be determined from the prospective of

the least sophisticated consumer or debtor. <u>Wilhelm v. Credico, Inc.</u>, 519 F.3d 416 (8th Cir. 2008); <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450 (3d Cir. 2006); <u>United States v. Nat'l Fin. Servs., Inc.</u>, 98 F.3d 131 (4th Cir. 1996); <u>Pipiles v. Credit Bureau, Inc.</u>, 886 F.2d 22, 25–26 (2d Cir. 1989); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 571 (3d Cir. 1989); <u>Swanson v. Southern Oregon Credit Service</u>, 869 F.2d 1222, 1227–1228 (9th Cir. 1988).

A successful plaintiff is entitled to recover:  1) actual damages; 2) statutory damages up to $1,000.00; and 3) attorneys' fees and costs.  15 U.S.C. § 1692l(a). Plaintiffs are entitled to statutory damages and actual damages resulting from the two bankruptcies that were filed in order to protect Plaintiffs' property following Defendants' violations of the Act.  Plaintiffs are also entitled to attorney's fees.

DATED: October 10, 2023               SHAPERO LAW FIRM, PC

                                      /s/ Sarah Shapero
                                      SARAH SHAPERO
                                      Attorneys for Plaintiffs Timothy
                                      Bostwick and Michele Nessier