1  Timothy M. Ryan, Bar No. 178059
2  Andrew J. Mase, Bar No. 300680
   Michael W. Stoltzman Jr., Bar No. 263423
3  THE RYAN FIRM
   A Professional Corporation
4  2603 Main Street, Suite 1225
   Irvine, CA 92614
5  Telephone (949) 263-1800; Fax (949) 872-2211
6
7  Attorneys for Defendant Seterus, Inc.
8
9
                **UNITED STATES DISTRICT COURT**
10
               **NORTHERN DISTRICT OF CALIFORNIA**
11
12
13  TIMOTHY S. BOSTWICK, an         )  CASE NO.: 3:21-cv-02560-LB
14  individual; and MICHELE L.      )  Date Action Filed: April 8, 2021
    NESSIER, an individual;         )
15                                  )  Assigned for All Purposes to
16            Plaintiffs,           )  Hon. Laurel Beeler
                                    )  Courtroom B
17                                  )
    vs.                             )
18                                  )  **DEFENDANT SETERUS, INC.'S**
19  SETERUS, INC., a business entity; )  **TRIAL BRIEF**
    US BANK, N.A., a business entity; )
20  SN SERVICING CORP, a business   )  Trial Date:    December 18, 2023.
    entity; and DOES 1 through 10,  )
21  inclusive,                      )
22                                  )
             Defendants.            )
23                                  )
                                    )
24                                  )
                                    )
25                                  )
                                    )
26                                  )
                                    )
27                                  )
                                    )
28  _____ )

THE RYAN FIRM
A Professional Corporation

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................. 1

**1.**   **INTRODUCTION AND SUMMARY** ................................................ 1

**2.**   **BRIEF FACTUAL AND PROCEDURAL BACKGROUND** .................. 2

    **A.**   **The Loan Secured by the San Francisco Property** ...................... 2

    **B.**   **Origination of the Loan Secured by the Truckee Property** ........ 3

    **C.**   **Servicing of the Loan** ................................................................. 3

**3.**   **PLAINTIFFS CANNOT PREVAIL ON THE LONE REMAINING CLAIM UNDER THE ROSENTHAL ACT** .................. 5

    **A.**   **Plaintiffs are Not "Debtors" and the Loan is not "Consumer Debt"** ...................................................................... 6

        **i.**   **Plaintiffs Admitted Under Penalty of Perjury that the Loan was Being Obtained for "Investment" or "Rental" Purposes** ..................................................... 7

        **ii.**   **Plaintiffs' Post-Origination Admissions Under Penalty of Perjury are Consistent with Their Admissions at Loan Origination** ....................... 10

        **iii.**   **Plaintiffs' Post-Origination Use of the Truckee Property is Consistent with Their Admissions at Loan Origination and in Their Loan Modification Application** ..................................................... 12

    **B.**   **Seterus Did Not Violate the Rosenthal Act and/or the FDCPA** ..................................................................... 13

        **i.**   **Plaintiffs Admit that the December 12 and December 17, 2018 Letters Did Not Violate the Rosenthal Act** ...................................................... 14

        **ii.**   **Plaintiffs Cannot Maintain Any Reinstatement-Related Allegations Against Seterus** ................................. 18

        **iii.**   **Plaintiffs' Miscellaneous Other Allegations Have No Merit** ............................................................. 18

THE RYAN FIRM
A Professional Corporation

**C.** **Plaintiffs Have No Recoverable Damages**.................................... 20

    **i.** **Plaintiffs Admit that the December 12 and December 17, 2018 Letters Did Not Cause Them Damages** ................................................................. 20

    **ii.** **Seterus' Servicing Did Not Damage Plaintiffs** ................ 21

    **iii.** **Plaintiffs Filed Bankruptcy to Stop the Foreclosure of The San Francisco Property (i.e., Their Principal Residence)** ................................................................. 22

    **iv.** **Plaintiffs Did Not Suffer Any Damages to Their Personal Credit**.................................................................. 23

    **v.** **Plaintiffs Cannot Recover Damages to their Business** ..................................................................... 23

    **vi.** **Plaintiffs Cannot Recover Emotional Distress Damages** ................................................................. 23

**4.** **SETERUS DID NOT INTEND TO VIOLATE THE ROSENTHAL ACT** ............................................................. 24

**5.** **PLAINTIFFS ARE GUILTY OF UNCLEAN HANDS** ........................ 24

**6.** **CONCLUSION**.......................................................................... 25

THE RYAN FIRM
A Professional Corporation

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE RYAN FIRM
A Professional Corporation

# **TABLE OF AUTHORITIES**

## **State Cases**

*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102 ........................................... 24

*DD Hair Lounge, LLC v. State Farm Gen. Ins. Co.* (2018) 20 Cal.App.5th 1238 ...................... 24

*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436 .............................. 24

*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970 ............................ 24

*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208.......................................... 19

*Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512 .............................. 24

*Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834 ........................................... 24

## **State Statutes**

Civ. Code § 1788.17 ........................................................... 14

Civ. Code § 1788.2 ........................................................... 1, 6

Civ. Code § 1788.30 ........................................................... 20

Civ. Code § 2923.5 ........................................................... 20

Civ. Code § 2924.15 ........................................................... 19, 20

Civ. Code § 3517 ........................................................... 24

## **Federal Cases**

*Aniel v. TD Serv. Co.* (N.D. Cal. Jan. 13, 2011) 2011 U.S. Dist. LEXIS 3978 ............................ 8

*Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621 ..................... 5, 6

*Bailey v. Sec. Nat. Servicing Corp.* (7th Cir. 1998) 154 F.3d 384................................ 14

*Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065 ..................... 5, 6

*Bloom v. I.C. Sys., Inc.* (9th Cir. 1992) 972 F.2d 1067................................ 9

*Curtis v. Option One Mortg. Corp.* (E.D. Cal. 2010) 2010 WL 599816 ...................................... 19

*Dixon v. Stern & Eisenburg, PC* (3rd Cir. 2016) 2016 U.S. App. LEXIS 10653.......................... 16

*Dooms v. Fed. Home Loan Mortg. Corp.* (E.D. Cal. 2011) 2011 WL 1303272 ...................... 19

i

*E. Washington State Univ.* (9th Cir. 2012) 485 F. App'x 169 .................................................. 2, 18

*Glawe v. Carpenter* (D. Ariz. Aug. 12, 2019, No. CV 18-1282-PHX-JAS (JR)) 2019 U.S. Dist. LEXIS 137452 ...................................................................................................................... 9

*Gonzales v. Arrow Fin. Servs., Inc.* (9th Cir. 2011) 660 F.3d 1055 ........................................... 14

*Heritage Pac. Fin., LLC v. Martinez* (B.A.P. 9th Cir.) 2012 Bankr. LEXIS 4818 ...................... 10

*Herschelman v. New Century Mortg. Corp.* (Dist. Hawai'i 2010) 2010 U.S. Dist. LEXIS 116185 .......................................................................................................................................... 8

*Johnson v. Wells Fargo Home Mortg., Inc.* (D. Nev. Oct. 29, 2007) 2007 U.S. Dist. LEXIS 79989 ............................................................................................................................................ 9

*Kitamura v. AOAO of Lihue Townhouse* (D. Hawai'i 2013) 2013 U.S. Dist. LEXIS 45535 ......... 9

*Munoz v. Cal. Bus. Bureau, Inc.* (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 151495 ..................... 6

*Rodriguez v. Countrywide Homes* (E.D. Cal. 2009) 668 F.Supp.2d 1239 ................................... 16

*Salas v. Sierra Chem. Co.* (2014) 59 Cal.4th 407 ..................................................................... 24

*Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 ................................................................................................................................. 8

*Sparlin v. Select Portfolio Servicing* (D. Ariz. 2012) 2012 U.S. Dist. LEXIS 20851 .................. 9

*Tovar v. Heritage Pac. Fin., LLC (In re Tovar)* (B.A.P. 9th Cir. 2012) 2012 Bankr. LEXIS 3633 .......................................................................................................................................... 9

*Williams v. Lorenz* (N.D. Cal. 2018) 2018 U.S. Dist. LEXIS 142967 ..................................... 2, 18

**Federal Statutes**

15 U.S.C. § 1692 ........................................................................................................................ 6

15 U.S.C. § 1692e ..................................................................................................................... 14

15 U.S.C. § 1692d ..................................................................................................................... 14

15 U.S.C. § 1692f ...................................................................................................................... 14

**THE RYAN FIRM**
A Professional Corporation

THE RYAN FIRM
A Professional Corporation

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION AND SUMMARY

The final remaining claim asserted by plaintiffs Michele Nessier and Timothy Bostwick ("Plaintiffs") is for an alleged violation of the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act").[1]  Specifically, Plaintiffs allege that defendant Seterus ("Seterus") sent them letters dated December 12 and December 17, 2018 letter—which informed Plaintiffs that servicing of the loan was being transferred to co-defendant SN Servicing, and that Plaintiffs' loan modification application had been denied, respectively. Plaintiffs contend that these letters allegedly contradicted each other, and confused Plaintiffs about who to contact to discuss their loan, their attempts to modify the loan, how to make payments on the loan, and to discuss pending foreclosure proceedings.

However, Plaintiffs cannot prevail on their single remaining claim under the Rosenthal Act for several reasons, including:

- Plaintiffs are not "debtors" and the loan is not "consumer debt" because the loan was not obtained "primarily for personal, family, or household purposes."  Civ. Code § 1788.2.  Indeed, when they obtained the loan, Plaintiffs executed several documents wherein they represented that the loan was for "investment" purposes, represented that this information was "true and correct," certified that the lender and its successors could rely on those representations, and executed all such documents subject to the penalty of perjury.  Similar representations were made in a later loan modification application sent to Seterus.  And, at all times since loan origination, Plaintiffs have rented the subject property for at least half the year (and in most years, they rented the property for 365 days and claimed 0 personal days).

- The subject letters did not violate the Rosenthal Act (i.e., did not confuse or mislead Plaintiffs).  Plaintiff Nessier never saw the letters.  And Plaintiff Bostwick has testified that he does not recall if he ever saw them but, in any event, he did not

---

[1] Plaintiffs' Trial Brief incorrectly asserts that the final remaining claim is brought under the federal Fair Debt Collection Practices Act ("FDCPA").

"have a problem" with the letters, and that Seterus made it "clear" that the servicing of the loan would be transferred on January 7, 2019.  In fact, he admits that  he is not "alleging there's an inconsistency" between the December 12 and December 18, 2018 letters and that these letters "didn't damage [him]."  An objective review of these letters further confirms there is no inconsistency among them.[2]

- Plaintiffs cannot prove any recoverable damages.  They admit that the aforementioned letters did not cause them any damages.  Rather, they now claim that they were not given a chance to modify the loan to avoid foreclosure (even though this theory was never pled); but, this contention is belied by reality as Plaintiffs were reviewed for a loan modification on several occasions, were offered forms of loss mitigation assistance, and they failed to accept any such offer (instead preferring to remain in default and use their monetary resources for their business).  Further, Plaintiffs' primary claim for damages is for harm allegedly incurred by separate business entities—which are not recoverable.

For all of these reasons and those set forth herein and at trial, Seterus is entitled to judgment in its favor, together with an award of fees and costs.

## 2. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

### A. The Loan Secured by the San Francisco Property

In 1994, Plaintiffs purchased the real property located at 340 Dorantes Avenue, San Francisco, CA 94116 (the "San Francisco Property").  At all relevant times, Plaintiffs have resided in the San Francisco Property as their principal residence.

On or around January 16, 2018, third party Bergstrom Law, Ltd. (the "Bergstrom") recorded a Notice of Default against the San Francisco Property due to Plaintiffs' default on the loan secured by the San Francisco Property.  On or around December 7, 2018,

---

[2] To combat these admissions, Plaintiffs' Trial Brief alleges several other new theories of liability against Seterus.  However, these theories have not been pled in the several years this case has been pending, and, thus, cannot be considered. *Williams v. Lorenz* (N.D. Cal. 2018) 2018 U.S. Dist. LEXIS 142967, *61-62 ("Plaintiff cannot pursue a claim not pled in her complaint"); *E. Washington State Univ.* (9th Cir. 2012) 485 F. App'x 169, 171

2

THE RYAN FIRM
A Professional Corporation

Bergstrom then recorded a Notice of Trustee's Sale against the San Francisco Property due to Plaintiffs' continuing default on the loan secured by the San Francisco Property. The Notice of Trustee's Sale scheduled a trustee's sale to occur on **January 9, 2019**.

### B. Origination of the Loan Secured by the Truckee Property

In 1999, Plaintiffs purchased the property located at 14049 Skislope Way, Truckee, California 96161 (the "Truckee Property")—the property that is the subject of this case.

In 2013, Plaintiffs sought to refinance and secure more favorable terms and a lower interest rate on a loan secured by the Truckee Property; thus, they applied for a loan from Bank of America, NA ("BANA").

As part of that loan application process, Plaintiffs signed and submitted several documents to BANA. Collectively, in these documents, Plaintiffs represented to BANA that that the Truckee Property was an "Investment Property" (i.e., a "Rental Property"), was not their "Primary Residence" (i.e., was not "Owner-Occupied or a "Secondary Residence"), and was used as a "Rental Property" 100% of the time.

Ultimately, on or about June 20, 2013, Plaintiffs were given a loan in the amount of $403,350.00, as evidenced by a promissory note ("Note"). The Note was secured by a recorded Deed of Trust ("DOT") against the Truckee Property.

### C. Servicing of the Loan

In May 2016, BANA transferred servicing rights in the Loan to Seterus.

As of April 2017, Plaintiffs were in default on the Loan; indeed, Plaintiffs made no payment on the Loan from April 2017 to the time servicing of the Loan was transferred to Defendant SN Servicing ("SN") on or about January 7, 2019. In fact, Plaintiff Bostwick admits that Plaintiffs intentionally chose to default on this loan so that they could use that money to invest elsewhere (i.e., in their business ventures).

Throughout Seterus' servicing of the loan, the Plaintiffs were offered multiple opportunities to apply for and obtain mortgage modifications. This resulted in Plaintiffs being review for a loan modification options on several times (at least **4 occasions**)—but Plaintiffs never accepted any loan modification offer made to them.

**THE RYAN FIRM**
A Professional Corporation

1    On or around July 27, 2018, due to Plaintiffs' well-established default, third party

2  PLM Loan Management Services, Inc. (the "Trustee") recorded a Notice of Default against

3  the Truckee Property.  Then, on or around October 30, 2018, the Trustee recorded a Notice

4  of Trustee's Sale against the Truckee Property.  The Notice of Trustee's Sale scheduled a

5  trustee's sale to occur on November 26, 2018.  Later, on November 23, 2018, the

6  foreclosure auction for the Truckee Property was postponed to January 15, 2019.

7    On December 12, 2018, Seterus sent Plaintiffs a "Notice of Servicing Transfer"

8  letter, informing Plaintiffs that the servicing for the loan would be transferring from Seterus

9  to co-defendant SN Servicing Corp. ("SN"), effective on January 7, 2019.

10    Then, on December 17, 2018, Seterus sent Plaintiffs another letter in an effort to

11  resolve a 5th loan modification review that Plaintiffs had previously requested from Seterus.

12  This letter informed Plaintiffs that their application was **denied**.

13    The December 12 and December 17, 2018 letters form the basis for Plaintiffs'

14  complaint.  They have alleged that the December 12 and December 17 letters somehow

15  confused them as to who to communicate with or pay.  However, as detailed below,

16  Plaintiffs have admitted these allegations have absolutely no merit and that Plaintiffs were

17  not harmed by these letters—in any way.

18    As of January 7, 2019, Defendant Seterus transferred servicing of the Loan to

19  Defendant SN Servicing, who began servicing the Loan on that date and continues to serve

20  the Loan as of the present.  SN also sent Plaintiffs several other letters wherein they were

21  again informed that servicing had transferred from Seterus to SN.  These letters were sent

22  on January 14, 2019 (two letters on first date), and January 28, 2019.

23    On the same date servicing transferred, on January 7, 2019, Plaintiff Bostwick filed

24  a bankruptcy petition.  He claims he did so as a result of Defendants' allegedly unlawful

25  servicing practices and to stave off the January 15, 2019 foreclosure of the Truckee

26  Property.  However, this contention lacks merit.  Rather, he filed bankruptcy to prevent the

27  foreclosure of the San Francisco Property (i.e., Plaintiffs' residence), which was set to be

28  sold at a trustee's sale on January 9, 2019 (2 days later).  This case was later dismissed.

THE RYAN FIRM
A Professional Corporation

4

On or about January 22, 2019, after Plaintiff Bostwick filed his bankruptcy petition, Plaintiffs commenced this lawsuit.

**3.     PLAINTIFFS CANNOT PREVAIL ON THE LONE REMAINING CLAIM UNDER THE ROSENTHAL ACT**

Plaintiffs' Trial Brief asserts that their final claim is for an alleged violation of the FDCPA.  However, that is incorrect.  Plaintiffs' final claim is for an alleged violation of the Rosenthal Act.  But, they allege that Defendant violated the Rosenthal Act by allegedly violating various provisions of the FDCPA.  So, the predicate claim is under the Rosenthal Act; the FDCPA is just being used in an attempt to prove that claim.

To prevail on a claim for a violation of the Rosenthal Act, a plaintiff must allege and prove that: (1) the plaintiff is a "debtor"; (2) the debt is a "consumer debt"; (3) the defendant is a "debt collector"; and (4) the defendant violated a provision of the Rosenthal Act.  *Barlow v. Cap. Accounts, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.* (N.D. Cal. 2013) 2013 WL 4647621, at *11.

Here, Plaintiffs alleges that Defendant violated the Rosenthal Act/FDCPA by sending the December 12 and December 17, 2018 letters.  ECF 54, Exhibit A, at ¶¶ 86 – 102.  Plaintiffs allege that these letters contained "inconsistent and confusing statements." *Id.* at ¶ 89.  Specifically, Plaintiffs allege that these letters allegedly caused Plaintiffs to be confused as to who to contact to discuss their loan, their loan modification efforts, and the pending foreclosure proceedings.  *Id.* at ¶¶ 90 – 97, 99.

However, Plaintiffs cannot prevail on their lone remaining claim because: (1) they are not a "debtor" and the Loan is not a "consumer debt" because they have admitted, on multiple occasions, that the loan was obtained for "investment" purposes (and the Truckee Property was used as such from loan origination to present) and, thus, was not primarily for personal, family, or household purposes; (2) Plaintiffs have admitted that the December 12 and December 17, 2018 letters were not confusing and did not damage them in any way (their alternate theories of liability advanced in their Trial Brief have not been pled and lack merit); and (3) Plaintiffs have not incurred any recoverable damages.

THE RYAN FIRM
A Professional Corporation

5

**THE RYAN FIRM**
A Professional Corporation

## A.   Plaintiffs are Not "Debtors" and the Loan is not "Consumer Debt"

As an initial matter, Plaintiffs' lone claim fails because they are not "debtors" and the Loan is not "consumer debt" under the Rosenthal Act.  That is because the Loan was not obtained "primarily for personal, family, or household purposes."

As explained above, as a threshold matter, a plaintiff bringing a claim under the Rosenthal Act must allege and prove that the plaintiff is a "debtor" and the debt is a "consumer debt."  *Barlow, supra,* 2022 U.S. Dist. LEXIS 25065, at *5; *Ansari v. Elec. Document Processing Inc.*, *supra*, 2013 WL 4647621, at *11.

To qualify as a "debtor," the plaintiff must allege and prove that they are a "natural person from whom a debt collector seeks to collect a consumer debt that is due and owing or alleged to be due and owing from such person."  Civ. Code § 1788.2, subd. (h).

To prove that debt is "consumer debt," the plaintiff must allege and prove that there is "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction"; this definition includes a "mortgage debt."  Civ. Code § 1788.2, subd. (f).  And then a "consumer credit transaction" is defined as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes."  Civ. Code § 1788.2(e).  This mirrors, near identically, the definition of "debt" in the FDCPA—the Federal counterpart to the Rosenthal Act.  *See* 15 U.S.C. § 1692a(5).  Thus, the "FDCPA [and] its California counterpart, the RFDCPA, [] both [] apply only with respect to loans made 'primarily for personal, family, or household purposes.'"  *Munoz v. Cal. Bus. Bureau, Inc.* (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 151495, at *14.

Here, as Plaintiffs have admitted on several occasions, under penalty of perjury, the Loan was obtained for "investment" purposes and the Truckee Property is a "rental" property.  Even though Plaintiffs now attempt to distance themselves from these admissions, their contrary assertions are belied by their actual use of the Truckee Property.
/ / /

**i.    Plaintiffs Admitted Under Penalty of Perjury that the Loan was Being Obtained for "Investment" or "Rental" Purposes**

In this case, when Plaintiffs obtained the Loan, they admitted under penalty of perjury that the loan was for "Investment" or "Rental" purposes.

When Plaintiffs applied for the Loan from BANA in 2013, they signed and delivered a "Borrower's Certification and Authorization" to BANA.  Therein, Plaintiffs certified that all information being submitted to BANA in connection with their effort to obtain a refinance loan, including but not limited to, information "on the purpose of the loan," was "true and complete."  Plaintiffs further certified that they "made no misrepresentations in the loan application or other documents."  Plaintiffs additionally certified that they understood that "it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for" their refinance loan.

On April 29, 2013, Plaintiffs also signed and delivered a "Schedule of Real Estate Owned" to BANA.  Therein, Plaintiffs represented that the Truckee Property was a "Rental" property and was not "OO" (i.e., Owner-Occupied).  Plaintiffs further certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."

Likewise, On June 20, 2013, Plaintiffs signed and delivered a "Uniform Residential Loan Application" to BANA.  Therein, Plaintiffs represented that the Truckee Property was an "Investment Property" and not their "Primary Residence" or a "Secondary Residence."  Plaintiffs further acknowledged and agreed that: (1) "the information provided in this application is true and correct . . . and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability . . . and/or criminal penalties, including, but not limited to, fine or imprisonment or both . . . ."; (2) "the property will be occupied as indicated in this application"; (3) "the Lender and its agents, brokers, insurers, servicers, successors, and assigns **may continually rely on the information contained in the application . . . .**"; and (4) "I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to

**THE RYAN FIRM**
A Professional Corporation

knowingly make any false statements concerning any of the [facts provided therein] under the provisions of Title 18, United States Code, Section 1001, et seq (emphasis added)." **<u>The bolded and underlined representation is significant since it justified Seterus treating the Loan as if it was not "consumer debt" and subject to the Rosenthal Act.</u>**

On June 20, 2013, Plaintiffs signed and delivered another "Schedule of Real Estate Owned" to BANA.  Therein, Plaintiffs again represented that the Truckee Property was a "Rental" property and used as such "100%" of the time.  Plaintiffs further again certified "under penalty of U.S. Criminal Code, Section 1010, Title 18, U.S.C., that . . . the above figures are true and correct . . . ."

On June 20, 2013, Plaintiffs signed and delivered a "Statement of Facts" to BANA. Therein, they similarly admitted that the Truckee Property is occupied by a "Lessee" and was not occupied by Plaintiffs.

Stated simply, in every document Plaintiffs signed at the time of loan origination, they represented to BANA and its successors (such as Seterus), that the Truckee Property was an "Investment" and/or "Rental" property.  And they made these representations under penalty of perjury and certified that BANA and its successors can continually rely on the representations being made in these documents.

As a result, the Loan is/was not subject to the Rosenthal Act and/or FDCPA.  Indeed, debts incurred through activity relating to rental properties or for investment purposes are not those that are incurred "primarily for personal, family, or household purposes" and, thus, not within the scope of the Rosenthal Act.  *Sayeed v. Cheatham Farms Master Homeowners' Ass'n* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 156558 (dismissing claims under the FDCPA and the Rosenthal Act based on fact that the subject loan was secured by a rental property and not the plaintiffs' principal residence); *Aniel v. TD Serv. Co.* (N.D. Cal. Jan. 13, 2011) 2011 U.S. Dist. LEXIS 3978 ("This action arises out of a mortgage loan on a rental property, and that loan is not a 'debt' covered by the FDCPA"); *Herschelman v. New Century Mortg. Corp.* (Dist. Hawai'i 2010) 2010 U.S. Dist. LEXIS 116185 ("real or personal property used for other purposes, such as commercial rental property, is not

THE RYAN FIRM
A Professional Corporation

1  applicable under the requirements of these statutes"); *Sparlin v. Select Portfolio Servicing*

2  (D. Ariz. 2012) 2012 U.S. Dist. LEXIS 20851 ("Because indebtedness obtained for

3  investment purposes is not considered a consumer debt under the FDCPA"); *Glawe v.*

4  *Carpenter* (D. Ariz. 2019) 2019 U.S. Dist. LEXIS 137452 ("debts associated with rental

5  properties are not consumer debts"); *Johnson v. Wells Fargo Home Mortg., Inc.* (D. Nev.

6  Oct. 29, 2007) 2007 U.S. Dist. LEXIS 79989 (rejecting FDCPA claim related to

7  investments properties); *Bloom v. I.C. Sys., Inc.* (9th Cir. 1992) 972 F.2d 1067, 1068; *see*

8  *also Kitamura v. AOAO of Lihue Townhouse* (D. Hawai'i 2013) 2013 U.S. Dist. LEXIS

9  45535 (holding that the plaintiffs claim under the FDCPA failed because the "property was

10  not used primarily for personal, family, or household purposes. Plaintiffs did not use the

11  property as a primary residence").  Stated simply, "[s]everal courts in the Ninth Circuit

12  have analyzed the FDCPA's 'consumer debt' requirement in the context of a debt owned

13  in relation to a rental property and have uniformly concluded that such debts are not subject

14  to the FDCPA's collection requirements."  *Glawe v. Carpenter* (D. Ariz. Aug. 12, 2019,

15  No. CV 18-1282-PHX-JAS (JR)) 2019 U.S. Dist. LEXIS 137452, at *8 (collecting cases).

16  Now that litigation is ongoing and the above-described admissions are being used

17  against Plaintiffs, they are now—conveniently—trying to distance themselves from these

18  admissions by putting forth the self-serving—and completely unsupported—claim that

19  they did not fill out these documents.  Rather, they are alleging that these documents were

20  filled out by BANA and were simply given to Plaintiffs to sign—which they claim they

21  did not ready any of the documents and just signed them.

22  However, this is no excuse or defense to Plaintiffs' admissions—which are binding

23  on them.  *Tovar v. Heritage Pac. Fin., LLC (In re Tovar)* (B.A.P. 9th Cir. 2012) 2012

24  Bankr. LEXIS 3633, at *35-36 ("We are unpersuaded by Tovar's contention that he was

25  not aware of the misrepresentations stated in the Loan Application, or the other documents

26  submitted or contained in his mortgage file.  To the extent that there is any validity to his

27  allegations, Tovar nonetheless executed various legal documents and certified that the

28  information made therein was correct and true. This is no different than signing and

1    submitting a bankruptcy petition under the penalty of perjury, regardless of whether the

2    debtor is an individual with limited English proficiency. Ultimately, **the person signing a**

3    **document bears the legal responsibility as to the statements made therein**") (emphasis

4    added); *Heritage Pac. Fin., LLC v. Martinez* (B.A.P. 9th Cir.) 2012 Bankr. LEXIS 4818,

5    *24 ("Even if Defendant was unaware of any misstatements or omissions in the

6    Application, it would not relieve him of liability under § 523(a)(2)(B). Because Defendant

7    executed various legal documents, and certified that the information in the Application was

8    true and correct, he is ultimately responsible for the statements made therein").

9        As a result, Plaintiffs have conclusively admitted that the Loan was not obtained

10   "primarily for personal, family, or household purposes."

11            **ii.    Plaintiffs' Post-Origination Admissions Under Penalty of Perjury**

12            **are Consistent with Their Admissions at Loan Origination**

13       Not only is Plaintiffs' attempt to distance themselves from their admissions made at

14   loan origination barred by applicable law, they are similarly contradicted by subsequent

15   admissions made under penalty of perjury.

16       In 2016, just a few years after loan origination, Plaintiffs sought a loan modification

17   from Seterus and signed and delivered a loan modification application to Seterus for that

18   purpose.  Therein, Plaintiffs admitted that: (1) the Truckee Property was "Rented" and not

19   "Vacant" or a "Second or seasonal home"; (2) they received $2,300.00 in gross monthly

20   rent for the Truckee Property; (3) the Truckee Property is a "rental property"; and (4) the

21   Truckee Property is "Occupied by a tenant as their principal residence."

22       Further, and significantly, in this loan modification application, Plaintiffs executed

23   a "Rental Property Certification" wherein they certified "under penalty of perjury" that: (1)

24   they "intend to rent the [Truckee Property] to a tenant or tenants for at least five years

25   following the effective date of [any] mortgage modification"; (2) the Truckee Property **is**

26   **"not [their] secondary residence** and [they do] not intend to use the [Truckee Property]

27   as a secondary residence for at least five years following the effective date of [any]

28   mortgage modification (emphasis added)."

THE RYAN FIRM
A Professional Corporation

As part of this application, Plaintiffs also executed a "Borrower and Co-Borrower Acknowledgment and Agreement" wherein they certified that: (1) all information in the loan modification application "is truthful"; (2) they understood and acknowledged that "knowingly submitting false information may violate Federal and other applicable law"; (3) they understood that "if it is determined that any of my statements or any information" is "materially false" then Seterus, the United States, or their agents may seeks "remedies available at law and in equity" against Plaintiffs; and (4) "under penalty of perjury . . . all statements" in the modification are "true and correct."

The loan modification application also contained a section titled "Notice of Borrowers," which provides that, "Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the [loan modification application] are under penalty of perjury.  Any misstatement of material fact made in completion of these documents including but not limited to misstatement regarding your occupancy of your property . . .  will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud . . . .   Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.  By signing this document you certify, represent and agree that 'Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the [loan modification program], including the documents and information regarding my eligibility for the program, are true and correct."

These representations are consistent with those made in their loan application to BANA, wherein Plaintiffs similarly admitted that the Truckee Property was an "investment" or "rental" property and was not a "secondary home," as Plaintiffs now claim in this case.  Further, like the origination-related documents, these representations were again certified to be "true and correct" and made subject to penalty of perjury.

For these additional reasons, Plaintiffs have again reaffirmed that the Loan was not obtained "primarily for personal, family, or household purposes."

11

THE RYAN FIRM
A Professional Corporation

iii.   **Plaintiffs' Post-Origination Use of the Truckee Property is Consistent with Their Admissions at Loan Origination and in Their Loan Modification Application**

Not only is Plaintiffs' litigation-motivation contention belied by their admissions at loan origination and when seeking a loan modification, they are belied by their actual use of the Truckee Property. Indeed, this use provides no support for their assertion that the Truckee Property was primarily used as a second home (i.e., primarily for personal, family, or household purposes). Rather, it demonstrates that Plaintiffs have **always** used the Truckee Property for "investment" or "rental" purposes, as represented under penalty of perjury in their loan application and loan modification application:

- For 2014, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $24,500.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $9,723.00 for renting the Truckee Property for that year.

- For 2015, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

- For 2016, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $26,200.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $13,049.00 for renting the Truckee Property for that year.

- For 2017, Plaintiffs have admitted that, in 2017, they rented the Truckee Property for at least six months of the year "as a short term rental." They claim to have only used the Truckee Property for their "personal use" for "one third of the year."

THE RYAN FIRM
A Professional Corporation

- For 2018, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,393.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $42,972.00 for renting the Truckee Property for that year.

- For 2019, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 365 days and 0 "Personal" days for that year. Plaintiffs received $25,793.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $45,492.00 for renting the Truckee Property for that year.

- For 2020, Plaintiffs have admitted that, in 2020, they rented the Truckee Property for at least six months of the year "as a short term rental" and they claimed a tax "loss" in the sum of $88,258.00 for renting the Truckee Property for that year.

- For 2021, Plaintiffs' tax returns demonstrate that the Truckee Property was used as a "Rental" property for 219 days and 0 "Personal" days for that year. Plaintiffs received $51,615.00 in rental income for renting the Truckee Property for that year. Plaintiffs additionally claimed a "loss" in the sum of $30,513.00 for renting the Truckee Property for that year.

- In 2022, Plaintiffs rented the Truckee Property for at least "60% of the year."

Stated simply, Plaintiffs admitted at loan origination that the Truckee Property was a "rental" property. They reaffirmed this fact in 2016. And their use of the Truckee Property from post-origination to present is fully consistent with those representations. Thus, Plaintiffs' self-serving, unsupported statements to the contrary hold no weight.

**B.    Seterus Did Not Violate the Rosenthal Act and/or the FDCPA**

Even if the Loan were subject to the Rosenthal Act and/or FDCPA, Seterus did not violate the Rosenthal Act and/or the FDCPA.

The Rosenthal Act makes a variety of different debt collection activities unlawful. Civil Code section 1788.17 makes it a violation of the Rosenthal Act to violate sections

13

1692b through 1692j of the FDCPA  Civ. Code § 1788.17.  In this case, Plaintiffs allege that Seterus violated the Rosenthal Act and/or FDCPA by: (1) engaging in conduct whose consequence was to  harass, oppress, or abuse Plaintiffs; (2) used "false, deceptive, or misleading representation or means in connection with the using of any debt"; (3) using "false representation or deceptive means" to collect on the debt; and (4) using "unfair or unconscionable means to collect or attempt to collect" on the loan.  ECF 54, Exhibit A, at ¶ 43; Civ. Code § 1788.17; 15 U.S.C. §§1692d, 1692e, 1692f.

Whether a defendant's conduct violates the FDCPA requires an objective analysis that takes into account whether "the least sophisticated debtor" would be misled by the communication.  *Gonzales v. Arrow Fin. Servs., Inc*. (9th Cir. 2011) 660 F.3d 1055, 1061. The standard does, however, "preserve a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care."  *Id*. at 1062.  That being said, "[t]he FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar' misinterpretations."  *Id.*  The FDCPA is best used to challenge "clear violations rather than scanning for technical missteps . . . ."  *Bailey v. Sec. Nat. Servicing Corp.* (7th Cir. 1998) 154 F.3d 384, 388.

### i.        Plaintiffs Admit that the December 12 and December 17, 2018 Letters Did Not Violate the Rosenthal Act

Here, as explained above, Plaintiffs alleges that Seterus violated the above-described provisions of the Rosenthal Act/FDCPA by sending the December 12 and December 17, 2018 letters.  ECF 54, Exhibit A, at ¶¶ 86 – 102.  Plaintiffs allege that these letters contained "inconsistent and confusing statements."  *Id.* at ¶ 89.  Specifically, Plaintiffs allege that these letters allegedly caused Plaintiffs to be confused as to who to contact to discuss their loan, loan modification efforts, and the pending foreclosure proceedings. *Id.* at ¶¶ 90 – 97, 99.  However, Plaintiffs have conceded that these allegations have no merit.  They fare no better from an objective review as they are perfectly clear.

As an initial matter, plaintiff Nessier never saw or read the December 12, 2018 letter or the December 17, 2018 letter sent by Seterus.

**THE RYAN FIRM**
A Professional Corporation

1    Likewise, plaintiff Bostwick admitted that he "couldn't say one way or the other"

2    whether he ever received the December 12, 2018 letter or the December 17, 2018 letter

3    from Seterus.  Regardless, he admitted that he does not "have a problem" with either of

4    these letters.  Indeed, he admits that it was "made pretty clear by Seterus" that Defendant

5    SN would begin servicing the loan on January 7, 2019.  He further admits that Plaintiffs

6    were aware, as of January 2019, that Defendant Seterus had transferred servicing of the

7    loan to Defendant SN.  Further, he admits that he understood, when he received these letters

8    that Seterus would forward all loss mitigation documents to the new servicer (i.e.,

9    defendant SN) and that, after the servicing transfer, he should send all payments to SN.

10   Even more pointedly, plaintiff Bostwick admitted that he is not "alleging there's an

11   inconsistency" between the December 12 and December 18, 2018 letters.  As a result,

12   plaintiff Bostwick admitted that these letters "didn't damage [him]."  In other words, **he**

13   **admitted that there is absolutely no merit to the lone claim under the Rosenthal Act.**

14   Even putting these admissions aside, there is nothing objectively harassing,

15   oppressive, abuse, false, deceptive, misleading, unfair, or conscionable about the content

16   of the December 12 and December 17, 2018 letters.

17   Specifically, the December 12, 2018 letter clearly informed Plaintiffs that: (1) the

18   "servicing of [the Loan] is being transferred, effective January 7, 2019. This means that

19   after this date, a new servicer will be collecting your mortgage loan payments from you.

20   Nothing else about your mortgage loan will change"; (2) "We are now collecting your

21   payments and will stop accepting payments received from you on January 7, 2019"; (3) SN

22   Servicing Corporation will collect your payments going forward. Your new servicer will

23   start accepting payments received from you on January 7, 2019. Send all payments due on

24   or after January 7, 2019 to SN Servicing Corporation" and stated the address for Defendant

25   SN Servicing; (4) "Under Federal law, during the 60-day period following the effective

26   date of the transfer of the loan servicing, a loan payment received by your old servicer on

27   or before its due date may not be treated by the new servicer as late, and a late fee may not

28   be imposed on you"; (5) "If you are currently participating in or being considered for a loss

THE RYAN FIRM
A Professional Corporation

mitigation solution (including a modification program, forbearance agreement, short sale, refinance, or deed-in-lieu of foreclosure), we will forward your documentation to your new servicer"; and (6) "As of the effective date of the transfer of the loan servicing, you should send your payments to your new servicer (e.g., trial period plan payments) until such time as the new servicer provides you with additional direction. Your new servicer should notify you of its decision regarding qualification."

That letter cannot form the basis of Seterus' liability as Seterus was required by send this letter by applicable law.  Indeed, loan servicers are required by law to send a letter to a loan borrower in advance of the servicing of a loan being transferred to a new entity.  12 U.S.C. §2605, subd. (b); *Rodriguez v. Countrywide Homes* (E.D. Cal. 2009) 668 F.Supp.2d 1239, 1245  ("[T]he Court agrees, that RESPA requires a lender to send a Good Bye letter to the Mailing Address listed by the borrower in the loan documents").  Further, a loan servicer or other debtor collector's straightforward and one-time effort to comply with state and federal notice requirements, through one round of mailings, with no other communication set out in the record, does not violate" the FDCPA.  *Dixon v. Stern & Eisenburg, PC* (3rd Cir. 2016) 2016 U.S. App. LEXIS 10653, *9-10.

Subsequently, the December 17, 2018 letter was sent to Plaintiffs merely to inform them that they "could not be approved" for a "Fannie Mae Non Delegated Modification." This letter went on state that Plaintiffs could contact Seterus if they had inquiries, wanted to make monthly payments, wanted to further explore foreclosure-avoidance options, or wanted to appeal the denial of their loan modification application.

However, there is nothing in the latter letter that conflicts with the former.  Indeed, Seterus remained the servicer for the next 3 weeks so there is nothing improper about telling Plaintiffs that they could still contact Seterus to discuss the loan or make a payment. Further, there is nothing in this letter that conflicts with the December 12, 2018 letter—specifically, informing Plaintiffs that servicing would transfer **in the future** and that, after that transfer, further inquiries and payments should be directed at SN **after** that transfer.

/ / /

THE RYAN FIRM
A Professional Corporation

Stated simply, taken together, these letters stand for the idea that: (1) Seterus was informing Plaintiffs that there would be a **future** servicing transfer; (2) Seterus then denied Plaintiffs' loan modification application; (3) Plaintiffs were invited to continue to contact Seterus since they remained the loan servicer until January 7, 2019; and (4) Plaintiffs were informed that, subsequent to January 7, 2019, they should contact defendant SN regarding all loan servicing matters.

There is nothing contained in either of these letters that conflicts with the information provided in the other letter. They are wholly consistent. Even if Plaintiffs could have possibly been confused after receiving these letters (which, as they admit, they were not confused), subsequent events objectively alleviated any such confusion.

Specifically, on December 31, 2018, Plaintiffs called Seterus and were again advised that servicing of the Loan was being transferred on January 7, 2019.

Further, on or about January 14, 2019, Defendant SN Servicing sent Plaintiffs a letter, again explaining that the "servicing of [Plaintiffs'] mortgage loan has been assigned, sold, or transferred." Specifically, the letter explained, "You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Seterus, Inc. to SN Servicing Corporation . . . effective January 7, 2019." The letter went on to provide Plaintiffs the address and telephone number for Defendant SN Servicing and invited Plaintiffs to call Defendant SN Servicing if they had "any questions relating to the transfer of servicing" of the Loan. The letter closed by reminding Plaintiffs to "Send all payments on or after January 7, 2019" to Defendant SN Servicing.

Additionally, on or about January 14, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that the "servicing of [their] mortgage loan has been transferred from Seterus, Inc. to SN Servicing Corporation . . . effective January 7, 2019.

Likewise, on or about January 28, 2019, Defendant SN Servicing sent Plaintiffs another letter, again explaining that "SN Servicing Corporation . . . is responsible for servicing and collecting the debt" owed on the loan.

THE RYAN FIRM
A Professional Corporation

Stated simply, the "least sophisticated debtor" would not be misled or confused by the December 12 and/or December 17, 2018 letters based on the express language of the correspondence—and Plaintiffs were not actually confused.  The plain language of the letters clearly delineates the procedures to be followed, with clarity, should Plaintiffs have wanted to make a payment or inquire further about their failed loss mitigation.

### ii.  Plaintiffs Cannot Maintain Any Reinstatement-Related Allegations Against Seterus

Plaintiffs' Trial Brief attempts to support their Rosenthal Act claim by arguing that, in December 2018, they requested a reinstatement quote from Seterus on a "rush" basis but that Seterus—allegedly—did not timely respond to this request.  However:

- Plaintiffs' operative complaint does not allege any such allegations against Seterus and, this, this assertion is improper. *Williams v. Lorenz* (N.D. Cal. 2018) 2018 U.S. Dist. LEXIS 142967, *61-62 ("Plaintiff cannot pursue a claim not pled in her complaint"); *E. Washington State Univ.* (9th Cir. 2012) 485 F. App'x 169, 171.

- This Court already dismissed Plaintiffs' claim against Seterus related to Seterus' response to their request for a reinstatement quote.  ECF No. 35.

- In any event, Seterus responded to Plaintiffs' request for a reinstatement quote within just a matter of days on January 2, 2019 (prior to the servicing transfer). As a result, these allegations do not create any liability for Seterus.

### iii.  Plaintiffs' Miscellaneous Other Allegations Have No Merit

Plaintiffs' Trial Brief further asserts a number of scattershot arguments against Seterus related to its servicing of the loan—none of which have any merit.

First, Plaintiffs argue that Seterus purportedly sent them letters in 2017 that were allegedly confusing.  However, Plaintiffs have never raised any such issues in their prior pleadings or discovery responses.  *See* ECF 54.  As a result, these brand-new allegations cannot be considered. *Williams v. Lorenz* (N.D. Cal. 2018) 2018 U.S. Dist. LEXIS 142967, *61-62 ("Plaintiff cannot pursue a claim not pled in her complaint"); *E. Washington State Univ.* (9th Cir. 2012) 485 F. App'x 169, 171.

THE RYAN FIRM
A Professional Corporation

18

1    Second, Plaintiffs also complain that Seterus' 4 loan modification offers described

2    above were somehow unlawful because they would have allegedly put Plaintiffs in a

3    "worse position" had they been accepted.  On its face, this allegation defies logic.  Without

4    these offers, Plaintiffs were facing foreclosure and the complete loss of the Truckee

5    Property; with the offers, had they been accepted, Plaintiffs would have avoided

6    foreclosure, been brought current on the loan, and would have avoided this lawsuit.  Thus,

7    accepting any of Seterus' offers would have clearly been more advantageous to Plaintiffs.

8    Further, Plaintiffs have never raised any such allegations in their prior pleadings or

9    discovery responses.  *See* ECF 54.  As a result, these allegations cannot be considered, as

10   explained above.  In any event, Plaintiffs had no right to a loan modification, let alone one

11   on terms of their own choosing.  *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208,

12   214, 231; *Dooms v. Fed. Home Loan Mortg. Corp.* (E.D. Cal. 2011) 2011 WL 1303272, at

13   9; *Curtis v. Option One Mortg. Corp.* (E.D. Cal. 2010) 2010 WL 599816, at 12.

14   Third, Plaintiffs imply that Seterus violated various portions of the Home Owner's

15   Bill of Rights (Civil Code section 2924, et seq.) by not sending them letters acknowledging

16   receipt of Plaintiffs' loan modification application, purportedly recording foreclosure

17   notices while Plaintiffs were under review for a loan modification, and did not send them

18   a letter informing them of their right to appeal the denial of their loan modification

19   applications.  However, again, Plaintiffs have never raised any such allegations in their

20   prior pleadings or discovery responses.  *See* ECF 54.  Thus, these allegations cannot be

21   considered, as explained above.  In any event, the Home Owner's Bill of Rights does not

22   apply to the Loan as the Truckee Property was not Plaintiffs' principal residence; rather,

23   their principal residence was the San Francisco Property.  Civ. Code § 2924.15 (explaining

24   that HOBR only applies to loans secured by the borrower's "principal residence").

25   Fourth, relatedly, Plaintiffs complain about the manner in which they were reviewed

26   for a loan modification—alleging that Seterus did not conduct its review in accordance

27   with Fannie Mae's Servicing Guide.  However, once again, Plaintiffs have never raised

28   any such allegations in their prior pleadings or discovery responses.  *See* ECF 54.  Thus,

**THE RYAN FIRM**
A Professional Corporation

19

these allegations cannot be considered, as explained above.  In any event, since the Loan was not subject to HOBR, Plaintiffs had no right to even be reviewed for a loan modification.  *See* Civ. Code § 2923.5 (requiring a servicer to review a borrower for a loan modification in certain cases but only for loans described in section 2924.15);  Civ. Code § 2924.15 (only applies to loans secured by the borrower's "principal residence").

For all of the above reasons, Plaintiffs cannot prove any violation of the Rosenthal Act and/or the FDCPA.

**C.    Plaintiffs Have No Recoverable Damages**

Even if Plaintiffs could prove a violation of the Rosenthal Act and/or FDCPA, they cannot prove any recoverable damages.

If a plaintiff alleges and proves all of the required elements, the Rosenthal Act provides that any debt collector "shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation."  Civ. Code § 1788.30, subd. (a).  If the violation is done "willfully and knowingly," the debt collector shall also be liable to the "debtor" for a penalty in such amount as the court may allow, which shall not be less than $100 nor greater than $1,000.  *Id.* at subd. (b).

Here, Plaintiffs allege that, due to Seterus' alleged violation of the Rosenthal Act and/or FDCPA (i.e., issuance of the December 12 and December 17, 2018 letters), they were forced to file bankruptcy.  They further claim that this bankruptcy precluded their third party business entities from obtaining loans (since they would have to use their personal credit to guarantee those loans), which could have been used to increase those businesses' revenue, and Plaintiffs' resulting income.  However, this theory of damages fails for a multitude of reasons.

**i.    Plaintiffs Admit that the December 12 and December 17, 2018 Letters Did Not Cause Them Damages**

As an initial matter, and as explained above, Plaintiffs cannot demonstrate that the December 12 and December 17, 2018 letters that are the predicate for this cause of action

**THE RYAN FIRM**
A Professional Corporation

20

caused them any damages—and that is because Plaintiffs have admitted that these letters did not damage them.  Specifically, plaintiff Bostwick admitted that these letters "didn't damage [him]."  In other words, **he admitted that there is absolutely no merit to the lone claim under the Rosenthal Act.**

> ii.    **Seterus' Servicing Did Not Damage Plaintiffs**

Despite alleging that the December 12 and December 17, 2018 letters were the cause of their harm (and later admitting this was untrue), Plaintiffs are now contending that they were actually harmed (i.e., had to file bankruptcy) because Seterus allegedly "gave [them] no option to keep the property."  However, Seterus considered Plaintiffs for loss mitigation options on several occasions.  On many occasions, **Plaintiffs were offered but failed to accept a loss mitigation option that was offered to them**.  On others, they were deemed ineligible for the loss mitigation option(s) for which they were reviewed.  Stated simply, Plaintiffs' allegations are demonstrably false.

First, on July 24, 2017, Seterus sent Plaintiffs a letter, offering them a trial loan modification, which would require them to submit 3 monthly payments of $2,362.03 and, if they made those payments and otherwise complied with the terms of the trial loan modification plan, the Loan would be permanently modified.  To accept the trial loan modification, Plaintiffs were required to submit the first payment by August 7, 2017.  However, Plaintiffs never made any of the trial loan modification payments and, as a result, were denied a permanent loan modification.

Second, on August 9, 2017, Seterus sent Plaintiffs a letter, recounting the trial loan modification offer and Plaintiffs' failure to make the first required trial loan modification payment, as well as Plaintiffs' related failure to contact Defendant Seterus to indicate an intent to accept the trial loan modification.  Despite Plaintiffs' failure, Defendant Seterus offered to re-consider Plaintiffs for another trial loan modification if they submitted a monthly payment of $2,362.03 before September 30, 2017.  However, again, Plaintiffs never made any of the trial loan modification payments and, as a result, were denied a permanent loan modification.

**THE RYAN FIRM**
A Professional Corporation

21

Third, Defendant Seterus also considered Plaintiffs for a forbearance and another loan modification program.  However, Plaintiffs were deemed ineligible for each of these additional loss mitigation programs.  On October 10, 2017, Defendant Seterus sent Plaintiffs a letter, explaining that they "could not be approved" for either such program.

Fourth, on October 23, 2017, Seterus sent Plaintiffs a letter, offering them another trial loan modification, which would require them to submit 3 monthly payments of $2,417.51 and, if they made those payments and otherwise complied with the terms of the trial loan modification plan, the Loan would be permanently modified.  However, again, Plaintiffs never made any of the trial loan modification payments and, as a result, were denied a permanent loan modification.

Fifth, in November 2018, Plaintiffs applied for a loan modification—yet again.  However, Plaintiffs were deemed ineligible for a loan modification and were sent multiple letters informing them of this denial, including the December 17, 2018 letter.

Stated simply, Plaintiffs were given ample opportunities to avoid foreclosure (and bankruptcy), but failed to accept those offers (because they preferred to use their money to invest in their business rather than pay their mortgage).  Plaintiffs cannot now fault Seterus for their failure to accept any of the loan modification offers made to them—nor complain that such offers were never tendered to them.

iii.    **Plaintiffs Filed Bankruptcy to Stop the Foreclosure of The San Francisco Property (i.e., Their Principal Residence)**

Plaintiffs' damages stem from the idea that they filed bankruptcy on January 7, 2019 in order to stave off foreclosure on the Truckee Property—which was scheduled to occur on January 15, 2019.  However, this cannot be further from the truth.  At the time they filed bankruptcy, they were also in default on the loan secured by the San Francisco Property (i.e., their principal residence).  In fact, foreclosure proceedings had been initiated and a foreclosure sale was set for January 9, 2019.  Stated simply, when Plaintiffs filed bankruptcy, they were just 2 days away from losing their home to foreclosure.  Yet, they are claiming that is not why they filed bankruptcy—and that they, instead, filed bankruptcy

THE RYAN FIRM
A Professional Corporation

22

to avoid foreclosure on a rental property (which was still 8 days away). This contention lacks credulity based on the status of the foreclosure of their principal residence.

### iv.    Plaintiffs Did Not Suffer Any Damages to Their Personal Credit

Though it is unclear, Plaintiffs vaguely claim damage to their credit. However, particularly in the absence of any expert testimony, Plaintiffs cannot prove any such damages. Indeed, in 2013, when Plaintiffs obtained the Loan, their credit scores were 594 and 666. And in November 2018, after years of being in default on the Loan and the loan secured by the San Francisco Property, but before Seterus issued the allegedly troublesome December 12 and December 17, 2018 letters, Plaintiffs' scores were 588 and 595. Stated simply, Plaintiffs already had poor credit prior to any of the allegedly unlawful acts by Seterus in this action. Indeed, plaintiff Nessier admits that she had "minimal credit" prior to the allegedly unlawful acts of Seterus. As a result, Plaintiffs cannot credibly claim that Seterus caused their credit any damage.

### v.    Plaintiffs Cannot Recover Damages to their Business

As explained above, Plaintiffs' primary form of damages stems from their claim that Seterus' loan servicing harmed their personal credit and that, as a result, their business entities would not have been able to qualify for certain loans (since they would have to use their personal credit to guarantee those loans), which could have been used to increase those businesses' revenue, and Plaintiffs' resulting income. However, this theory of damages fails for a multitude of reasons. Indeed, as explained in detail in Seterus Motion in Limine No. 3, these alleged damages are not recoverable since: (1) damages to a separate business entity owned by a borrower are not recoverable under the Rosenthal Act; and (2) these alleges damages are far too speculative to be recoverable, particularly in the absence of any expert witness testimony regarding lending guidelines.

### vi.    Plaintiffs Cannot Recover Emotional Distress Damages

Plaintiffs also seek the recovery of emotional distress damages. However, such damages are not recoverable for the reasons set forth in SN's Motion in Limine No. 1.
/ / /

THE RYAN FIRM
A Professional Corporation

**4.      SETERUS DID NOT INTEND TO VIOLATE THE ROSENTHAL ACT**

Even if one could conclude that Seterus committed a technical violation of the Rosenthal Act, Seterus is not liable for any such alleged violation because any such violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation.  Civ. Code § 1788.30, subd. (e).

**5.      PLAINTIFFS ARE GUILTY OF UNCLEAN HANDS**

If the Court finds that the Loan is "consumer debt" (i.e., was obtained primarily for personal, family, or household purposes), then Plaintiffs are guilty of unclean hands by submitting false information to the contrary to BANA (i.e., Seterus' predecessor) when it applied for the loan and again to Seterus when it applied for a loan modification.

No one can take advantage of his or her own wrong.  Civ. Code § 3517; *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 844 – 45.  Thus, a plaintiff must come into court with clean hands, and keep them clean, or they will be denied relief, regardless of the merits of his or her claim.  *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 533; *DD Hair Lounge, LLC v. State Farm Gen. Ins. Co.* (2018) 20 Cal.App.5th 1238, 1246.

The misconduct that brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants. *Salas v. Sierra Chem. Co.* (2014) 59 Cal.4th 407, 432; *Ditzian v. Unger* (2019) 31 Cal.App.5th 738, 747.  The misconduct, however, need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine.  *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110; *Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979.

The doctrine of unclean hands is generally a defense available in both legal and equitable actions.  *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 533; *DD Hair Lounge, LLC v. State Farm Gen. Ins. Co.* (2018) 20 Cal.App.5th 1238, 1246.  It proven, the "unclean hands" defense provides a complete defense to an action.  *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446.

**THE RYAN FIRM**
A Professional Corporation

24

Here, for the Court to find that the Loan is "consumer debt" (i.e., was obtained primarily for personal, family, or household purposes), then the Court must find that Plaintiffs were not truthful when: (1) they applied for the Loan with BANA (wherein they represented that the Truckee Property was an "investment" or "rental" property; and (2) they applied for a loan modification with Seterus (wherein they made the same representations regarding their use of the Truckee Property).

Rather, the Court would be required to find that, at the very least, Plaintiffs were negligent in signing documents wherein such representations were made, without reading them, despite separately certifying that all such information was "true and correct," that BANA and its successors were entitled to rely on that information, and the documents were being signed subject to penalty of perjury.

This negligence constitutes unclean hands and warrants denial of relief. Indeed, Plaintiffs acknowledged that BANA and its successors were entitled to rely on the information provided in their loan application—wherein they led BANA and its successor to believe that the Truckee Property was "investment" or "rental" property (i.e., not subject to the Rosenthal Act or FDCPA). It would be manifestly inequitable to allow Plaintiffs to now claim that they did not mean those representations and that BANA and its successors were not so entitled, and that the Loan is subject to the Rosenthal Act and FDCPA.

## 6.    CONCLUSION

For all of these reasons and those presented at trial, Seterus is entitled to a judgment in its favor, together with an award of fees and costs.

DATED: October 24, 2023

THE RYAN FIRM
A Professional Corporation

By:_____
TIMOTHY M. RYAN
MICHAEL W. STOLTZMAN, JR.
Attorneys for Defendant Seterus, Inc.

THE RYAN FIRM
A Professional Corporation

25

THE RYAN FIRM
A Professional Corporation

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action.  I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On October 24, 2023, I served the within document(s) described as:  **DEFENDANT SETERUS, INC.'S TRIAL BRIEF** on the interested parties in this action:

☒        by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| Shapero Law Firm, P.C. 100 Pine Street, Ste 530 San Francisco, CA 94111 | Tel:  (415) 273-3504 Fax: (415) 358-4116 Email: sarah@shaperolawfirm.com | Attorney for Plaintiffs Timothy S. Bostwick and Michele L. Nessier |
| Michael R. Brooks, Esq. Hutchison & Steffen, PLLC Peccole Professional Park 10080 West Alta Drive, Suite 200 Las Vegas, Nevada 89145 | Tel: (702) 385-2500 Fax: *** Email: mbrooks@hutchlegal.com | Attorney for Plaintiffs Timothy S. Bostwick and Michele L. Nessier |
| Ghidotti Berger LLP Rachel Witcher 1920 Old Tustin Ave. Santa Ana, CA 92705 | Tel:  (949) 427-2010 Fax: (949) 427-2732 Email: rwitcher@ghidottiberger.com | Attorneys for Defendant SN Servicing Corporation and US Bank Trust National Association |

☒        **CM/ECF** (U.S. District Court, Northern District of California)—The NEF that is automatically generated by the Court's Electronic Filing System constitutes service of the filed document(s) on registered users.  All parties who are not registered, if any, were served in the manner set forth above.

☒        (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 24, 2023, at Irvine, California.

HEATHER MORRIS